UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-cv-20687-MARTINEZ/OTAZO-REYES

AT LAW AND IN ADMIRALTY

RICHARD BURGESS, individually, and
by and through DARREN HENZE
as Guardian of the Person and Estate
of Richard Burgess, incapacitated, and
as Agent under that certain durable power
of attorney dated November 20, 2006.

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian Corporation, d/b/a
ROYAL CARIBBEAN CRUISE LINE and/or
ROYAL CARIBBEAN INTERNATIONAL,
DR. JOAO PEREIRA, and DR. MICHIEL
ADRIAAN ETSEBETH.

Defendants.
______________________________________/

# **AMENDED COMPLAINT FOR DAMAGES**

The Plaintiff, RICHARD BURGESS, individually, and by and through DARREN HENZE as Guardian of the Person and Estate of Richard Burgess, and as Agent under that certain durable power of attorney dated November 20, 2006, hereby sues Defendants, and alleges as follows:

1. This is an action for damages in excess of $75,000, exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.**

a. **RICHARD BURGESS** is sui juris and a resident and citizen of York, Pennsylvania. At all times material hereto, Burgess was a passenger onboard the cruise ship RCCL *Harmony of the Seas* operated by the defendant cruise line. As the result of Defendants' negligence, Burgess suffered a stroke, locked-in syndrome, and has been deemed incapacitated.

At all times material hereto, Burgess received medical care and treatment from the defendant physicians and medical staff onboard the ship.

b. **DARREN HENZE** has been appointed by a court of competent jurisdiction in the state of Pennsylvania as Guardian of the Person and Estate of Richard Burgess, and as Agent under that certain durable power of attorney dated November 20, 2006.

3. **THE DEFENDANTS**.

a. **ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation, d/b/a ROYAL CARIBBEAN CRUISE LINE and/or ROYAL CARIBBEAN INTERNATIONAL** (hereinafter be referred to collectively as "RCCL," or the "cruise line") is a corporation registered and incorporated in Liberia. RCCL's principal place of business in Miami, Florida. RCCL is authorized to do business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. RCCL is a Florida citizen for the purposes of diversity of citizenship under 28 U.S.C. § 1332. At all times material hereto, RCCL owned and/or operated the cruise ship on which the subject negligence occurred.

b. **DR. JOAO PEREIRA** ("Dr. Pereira" and, together with Dr. Etsebeth, the "Defendant Doctors"), is a physician licensed outside the state of Florida. At all times material hereto, Dr. Pereira was an employee, agent, and/or apparent agent of RCCL. At all times material hereto, Dr. Pereira worked as one of the shipboard physicians on the cruise ship owned and/or operated by RCCL on which the subject negligence occurred, and provided negligent medical care to Burgess, which caused permanent injury to Burgess.

c. **DR. MICHIEL ADRIAAN ETSEBETH** ("Dr. Etsebeth" and, together with Dr. Pereira, the "Defendant Doctors"), is a physician licensed outside the state of Florida. At all times material hereto, Dr. Etsebeth was an employee, agent, and/or apparent agent of RCCL. At all times material hereto, Dr. Etsebeth worked as one of the shipboard physicians on the cruise

ship owned and/or operated by RCCL on which the subject negligence occurred, and provided negligent medical care to Burgess, which caused permanent injury to Burgess.

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

5. **PERSONAL JURISDICTION AND VENUE**. RCCL, at all times material hereto, through agents or representatives, in the District in which this Complaint is filed:

a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county;

b. Had an office or agency in this state and/or county;

c. Engaged in substantial activity within this state; and/or

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181, or 48.193.

Further, this action is being filed in federal court in Miami-Dade County, Florida, as required by the venue selection clause in the Passenger Ticket Contract issued by RCCL.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

7. **DATE OF THE INCIDENTS**. The incidents giving rise to this action occurred between February 18, 2019 and February 21, 2019.

8. **LOCATION OF THE INCIDENTS.** The incidents occurred onboard the vessel RCCL *Harmony of the Seas*, a ship in navigable waters while Burgess and Henze were passengers onboard. Accordingly, Plaintiff's claims are governed by general maritime law.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DUTY OWED.** RCCL owes its passengers a duty of reasonable care under the circumstances. The scope of RCCL's duty is informed by the facts and circumstances, including RCCL's voluntary undertaking to provide medical care to its passengers and its representations to its passengers concerning same. RCCL's duty of care in this case includes the duty to provide prompt and appropriate medical care to its passengers, including Plaintiff.

**RCCL'S VOLUNTARY UNDERTAKING TO PROVIDE MEDICAL CARE TO ITS PASSENGERS AND ITS REPRESENTATIONS TO THE PUBLIC REGARDING SAME**

11. RCCL deliberately chose to enter the business of medicine by providing medical services to its passengers and crew members aboard its ships. RCCL reaps the tangible benefits from providing such services as part of its business strategy. RCCL's voluntary undertaking to provide medical care to its passengers is evidenced by, *inter alia*, the fact that:

a. RCCL caters to U.S. citizens who are accustomed to and expect first-world medical care, knowing that its cruises, including the subject cruise, are on the open seas for extended periods of time, and thus the only medical care reasonably available to the passenger is onboard the ship.

b. RCCL profits from providing onboard medical care to its passengers. RCCL markets to the general public that the cruise line provides medical care for its passengers onboard its ships. And, RCCL derives revenue from its medical center by charging the passengers onboard for the provided by the cruise line.

c. RCCL markets its cruises as safe and secure—as demonstrated by the representations discussed below—even though it regularly takes its passengers to the waters

offshore of developing countries where the medical care is below the standard of medical care available in the United States and developed countries.

12. RCCL represents in its marketing materials that every ship in its fleet has a "dedicated medical facility," with the intent that passengers will rely on these representations. In those materials, RCCL refers to the ship's medical facility, as well as the shipboard physicians and medical personnel, in proprietary language, labelling them "***our*** medical facilities" and "***our*** doctors." For example, RCCL represented:

Royal Caribbean Cruises Ltd.

SAFETY, SECURITY & HEALTH

***Medical (Facilities Onboard, Training Staff)***

Every ship in the RCL fleet has a dedicated medical facility, staffed with contract medical doctors and nurses. Shipboard medical facilities are available to both guests and crew in the event medical treatment becomes necessary while they are onboard. The medical facilities are generally open six hours daily, but medical professionals are available 24 hours a day for acute guest or crew medical needs that may arise. There are procedures for emergency communications and deployment of the medical teams anywhere on the ship where services are needed. These teams are supplemented by personnel trained to carry equipment and stretchers if needed.

https://www.rclcorporate.com/safety-security-health/.

Q What licensed medical staff/doctor and services are available onboard a Royal Caribbean cruise ship?

A We have a minimum of one fully licensed doctor, and a minimum of two licensed nurses onboard every ship.

Our medical facilities are stocked with a variety of equipment, including cardiac monitors, automated external defibrillators, ventilators, x-ray machines and processors, laboratory equipment, a formulary of acute care medications and a variety of minor surgical and orthopedic supplies. Our doctors also have access to online informational sources and 24-hour support from shore side medical professionals for additional assistance. Royal Caribbean Cruises Ltd. also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, our goal is to first stabilize emergency patients and, where indicated, evacuate the patient to an appropriately equipped and staffed shore side medical facility as soon as practical.

*See* complete RCCL webpage at, https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations.

13. RCCL also represents in its marketing materials and on its website that its shipboard doctors, medical staff, and medical center offer regular clinic hours, and are available 24 hours for emergencies.

Depending on the size of the ship and number of passengers and Crew members, each RCL ship has one to three doctors and three-to-five Nurses, available to passengers and Crew members 24 hours a day, seven days a week.

*See* full RCCL webpage at https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations.

14. RCCL also represents that its shipboard physicians meet or exceed credentialing guidelines established by the cruise ship medicine section of the American College of Emergency Physicians and who are experienced in general medicine as well as emergency and critical care.

Every Royal Caribbean ship offers limited professional medical services through licensed (international or domestic) physicians and nurses. All Royal Caribbean Cruises Ltd. ships have shipboard medical facilities that are built, staffed, stocked and equipped to meet or exceed guidelines established by the American College of Emergency Physicians Cruise Ship & Maritime Medicine Section.

* * *

professionals for additional assistance. Royal Caribbean Cruises Ltd. also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In

*See* full RCCL webpage at https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations.

15. RCCL also represents that it investigates the education, licensing, and training of its shipboard doctors and medical staff prior to selecting and hiring them to serve aboard its ships. RCCL further represents that it ensures that, prior to serving aboard RCCL ships, its doctors and medical staff receive additional training in handling life-threatening medical emergencies. RCCL represents that its shipboard medical centers are equipped with medications and equipment needed to render appropriate treatment to passengers suffering life-threatening medical emergencies, including cardiac emergencies and strokes.

Each ship is staffed by one to three medical doctors and two to five nurses, generally depending on the size of the ship and the number of guests and crew. RCL follows strict requirements regarding the credentials of medical staff in our facilities. We confirm licenses and medical school graduation and closely examine post-graduate training for prospective medical personnel. Prior to serving onboard, medical personnel must also successfully complete Basic and Advanced Cardiac Life Support Training Courses. In addition to cardiac care skills, our medical staff are expected to be able to manage complex problems, such as respiratory and airway emergencies, sutures, orthopedic issues, interpret routine x-rays and perform and interpret basic, but comprehensive, laboratory analysis.

To meet the needs of our guests and crew, RCL medical facilities stock a variety of equipment, including cardiac monitors and defibrillators, ventilators, x-ray machines and processors, laboratory equipment for a variety of acutely needed tests, and minor surgical and orthopedic supplies. Each ship also has a well-stocked formulary of medications (including "clot-busting" thrombolytics), based upon ACEP-established, shipboard appropriate categories of pharmaceuticals.

*See* full RCCL webpage at https://www.rclcorporate.com/safety-security-health/.

16. RCCL also represents to its passengers that it has the capability to medically evacuate gravely ill or injured passengers from the ship while it is still at sea and/or divert the ship's course to expedite provision of appropriate emergency medical treatment.

> In emergency medical care situations, such as heart attacks, congestive heart failure and cardiac arrhythmias, our ships maintain special medications onboard to stabilize the patient until the patient is able to be medically evacuated to an appropriate shoreside medical facility. Evacuation of emergency medical patients from a ship may take place at a scheduled port-of-call, or may require a deviation from the ship's scheduled itinerary to the nearest appropriate port. Another alternative that may be available for use in life-threatening situations is evacuation via helicopter from a ship's helipad or via basket lift.

*See* full RCCL webpage at https://www.rclcorporate.com/safety-security-health/.

17. RCCL also makes representations in its marketing materials, online, and in its onboard video about the ease of travel for its primarily U.S. citizen passengers. Thus, even though RCCL ships regularly travel to ports in developing countries and in areas that have suffered significant damage due to natural disasters such as hurricanes and earthquakes, RCCL represents that its medical centers are staffed by qualified physicians and nurses capable of providing the highest quality of medical care to its passengers.

18. RCCL makes the above representations to induce prospective passengers to purchase RCCL cruises, even though those cruises travel to developing countries, with sub-standard medical care, and to isolated waters of the world.

19. These representations form part of the basis for RCCL's duty to provide medical care of a certain quality and capability onboard its ships.

20. Relying on RCCL's representations about the medical facilities and amenities aboard its cruise ships, Burgess and Henze boarded the RCCL *Harmony of the Seas* for a cruise that departed on February 17, 2019.

**THE FIRST MEDICAL EMERGENCY – FEBRUARY 18, 2019**

21. Burgess and Henze attended a comedy club onboard the ship on the evening of February 17, 2019, which was the first night of their cruise.

22. In the early-morning hours of February 18, 2019, Burgess fell inside his cabin, hitting his head.

23. Burgess awoke later on February 18, 2019, and discovered a 10-centimeter laceration (approximately 4 inches) across the back of his head.

24. Burgess went to the ship's medical center, where he was evaluated and treated by RCCL medical personnel, including Dr. Etsebeth and registered nurse Lilibeth Rivera.

25. Dr. Etsebeth stitched the wound shut and discharged Burgess. Despite the severity of the head injury, Dr. Etsebeth did not prescribe that Burgess undergo any radiological studies (such as a CT scan or MRI) to determine whether Burgess was suffering from any subdural injury, such as bleeding on or around the brain.

26. Despite the limitations of the ship's medical center, Dr. Etsebeth did not take steps to arrange for Burgess to be medically evacuated off the ship to a shoreside medical facility where Burgess could undergo additional radiological studies and receive advanced treatment that was not available aboard the ship.

**THE SECOND MEDICAL EMERGENCY – FEBRUARY 21, 2019**

27. The RCCL *Harmony of the Seas* docked in San Juan, Puerto Rico on the morning of February 21, 2019.

28. Early that morning, after the ship was already in port, Burgess began to suffer symptoms of a stroke, including the inability to move the fingers on his right hand, an unsteady gait, weakness in his right leg, and vision changes in his right eye.

29. Burgess called his family and sought assistance from an RCCL crew member, who summoned medical personnel. Burgess described his symptoms to responding RCCL personnel and told them he thought he was having a stroke. RCCL's medical personnel brought Burgess to the ship's medical center in a wheelchair.

30. RCCL's Nurse Mary Bremner electronically entered Mr. Burgess's triage notes at 9:25 a.m. RCCL's medical records document that Burgess's condition was "urgent" and that he was "to be seen by Dr in ICU" [intensive care unit], for "? CVA", which is an abbreviation for cerebrovascular accident or stroke. RCCL's shipboard doctor, Joao Pereira, diagnosed Burgess with acute cerebrovascular insufficiency priority level 4. Dr. Pereira knew or should have known from the ship's own records that Burgess had been treated for the head trauma three days before.

31. At approximately 9:55 a.m., Dr. Pereira prepared a medical shoreside referral that recommended Burgess be taken ashore in Puerto Rico for an evaluation "(including CT-scan if you see fit) and treat accordingly." The shoreside referral form did not indicate that Burgess was suffering from a medical emergency, did not request a medical evacuation, and did not provide a diagnosis.

32. Despite, Burgess's emergent and critical condition, RCCL failed to immediately disembark and/or medically evacuate him. Instead, Burgess was forced to remain onboard for several hours despite showing obvious signs of a stroke and/or other cerebrovascular emergency.

33. While Burgess's condition continued to deteriorate, RCCL personnel refused to medically evacuate him from the ship until after Henze tended to several trivial matters. Specifically, RCCL demanded that Henze go to his cabin and retrieve Burgess's insurance card and passport. Next, RCCL informed Henze that he would need to personally pack his and Burgess's luggage and take them along when they disembarked for the ambulance ride to the hospital in Puerto Rico. Finally, RCCL refused to allow Burgess and Henze off the ship until after Henze went to guest services to settle outstanding charges from the cruise. This despite the fact that RCCL already had their credit card information on file. Burgess's family members, who were also traveling with him, repeatedly offered to resolve the financial obligations and handle the luggage in order to expedite his evacuation from the ship, but RCCL refused those offers.

34. At no time did RCCL, its employees or agents act as though Burgess was suffering from a medical emergency.

35. At approximately 1 p.m. on February 21, 2019—about ***3½ hours*** after Burgess first arrived at the ship's medical center suffering from a stroke—RCCL finally allowed Burgess and Henze to disembark the ship, where they were met by an ambulance arranged for by RCCL.

36. RCCL arranged for and controlled which hospital Burgess would be taken to for treatment. RCCL instructed the ambulance to take Burgess to HIMA San Pablo Caguas Hospital, bypassing several other hospitals located much closer to the port in San Juan that were capable of providing proper treatment for Burgess's injuries. RCCL's selection of HIMA San Pablo Caguas further delayed Burgess's ability to receive medical treatment and care in a situation where time was of the essence.

37. The ambulance that transported Burgess did not use lights and sirens, further indicating that RCCL did not inform the ambulance crew that he was suffering from a medical emergency. RCCL, its medical personnel and/or doctors, including Dr. Pereira, knew or should have known there were several hospitals equipped to treat Burgess's emergent condition that were significantly closer to the port and could have treated Burgess significantly faster than HIMA San Pablo Caguas.

38. Burgess finally arrived at HIMA San Pablo Caguas at approximately 1:50 p.m., or about ***4½ hours*** after Burgess first told RCCL and its medical personnel at the ship's medical center he thought he was suffering a stroke.

39. At HIMA San Pablo Caguas, the medical staff immediately noted Burgess's history of head trauma three days before, and the fact Burgess was outside the window for doctors to administer medications and interventional procedures that would have materially improved Burgess's condition and prognosis.

40. The hospital's medical team was playing "catch up" due to the misdiagnosis and significant delays in providing the emergency care and treatment Burgess needed to prevent and/or minimize damage to his brain.

## PLAINTIFF'S INJURIES AND DAMAGES

41. As a result Defendants' negligence, Burgess suffered significant and permanent injuries.

42. RCCL, Dr. Etsebeth, Dr. Pereira, and RCCL's medical personnel misdiagnosed, mismanaged, and improperly monitored Burgess's injuries with respect to both the First Medical Emergency on February 18, 2019, and the Second Medical Emergency on February 21, 2019. Those acts, along with Defendants' failure to medically evacuate him from the ship, and the unreasonable delays in transporting him for shoreside medical treatment, caused Burgess to suffer severe and permanent damage to his cerebrovascular system and brain.

43. Had RCCL, RCCL's medical personnel, and the Defendant Doctors appropriately diagnosed and managed Burgess's medical emergency, and/or timely medically evacuated Burgess off RCCL's ship, he would have arrived at a medical facility in time to receive medical care and treatment that would have dramatically changed the outcome of his medical condition and/or prognosis.

44. As a result of Defendants' negligence, Burgess suffered basilar syndrome, blood clot, occlusion, vertebral dissection, and/or stroke. Burgess also suffered severe and permanent brain damage resulting in "locked-in syndrome," a permanent condition where the patient is aware of his surroundings but cannot move or communicate verbally due to complete paralysis of nearly all voluntary muscles in the body. Burgess also suffered other serious complications that could have been prevented with a proper timely diagnosis, monitoring, medical evacuation, and/or transport for treatment within the window of time during which he could have received medications to address what was a treatable condition.

45. **DAMAGES.** Plaintiff has incurred damages in the past and will continue to incur damages in the future, including:

a. Plaintiff has incurred economic damages in the past and is reasonably certain to continue incurring economic damages into the future. Henze has paid and will continue to pay significant medical expenses and costs of care on behalf of Burgess. Plaintiff's economic damages include, but are not limited to, medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity in the future.

b. Plaintiff also has incurred non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

46. **RCCL'S RELATIONSHIP WITH HIMA PABLO SAN CAGUAS**. Upon information and belief, RCCL directed that Burgess be transported to HIMA San Pablo Caguas based on a long-standing relationship between the hospital and RCCL and its subsidiary, Celebrity Cruises, Ltd.[1] For example, in *Hill v. Celebrity Cruises, Ltd.*, Case No. 03-23815-cv-Moreno (S.D. Fla.), a Celebrity cruise ship docked in San Juan, Puerto Rico, sent a critically-injured passenger to HIMA San Pablo Caguas, which delayed his treatment and aggravated his condition, leading to organ shutdown and hypoxic brain injury.

47. **PRIOR SIMILAR INCIDENTS**: RCCL knew or should have known about the dangers posed to passengers when its shipboard medical personnel provide negligent medical treatment and/or fail to timely disembark seriously injured or ill passengers for emergency shoreside medical care. Royal's knowledge is based on several prior similar incidents, including but not limited to the following:

---

[1] RCCL owns and jointly operates Celebrity, among other cruise brands. Accordingly, RCCL is responsible for all medical care decisions, including the staffing and supplying of medical centers aboard the ships, for all of its cruise brands.

a. Lewis Masotti: Case No. 1:19-cv-22078 (S.D. Fla.), involved RCCL's doctor, Defendant Dr. Etsebeth, who failed to timely recognize Masotti's progressive condition and rapidly deteriorating vital signs, bloodwork, and chemistry, and failed to timely disembark and/or medically evacuate Masotti on May 23, 2018, which resulted in severe and permanent injuries.

b. Christopher Pack: Case No. 1:15-cv-22828-GAYLES (S.D. Fla.), is a wrongful death case that involved RCCL's doctor, Defendant Dr. Pereira, who failed to render proper medical care to a passenger who had sustained a head injury while aboard an RCCL cruise ship and suffered a stroke the following day while still aboard the ship. Dr. Pereira and RCCL also negligently failed to order an emergency evacuation of the passenger to a shoreside medical facility. The defendants' negligence occurred between February 12, 2015, and February 15, 2015.

c. A.C. (a minor): Case No. 18-cv-21035 (S.D. Fla.), involved a passenger who broke her left hip and required emergency surgical repair. RCCL medical staff failed to properly diagnose A.C.'s displaced left hip fracture. RCCL's doctor told A.C.'s parents that there was nothing to worry about and discharged A.C. with a prescription for ibuprofen on April 11, 2017. RCCL also failed to emergently disembark and/or medically evacuate A.C., which delayed her care and treatment by four days. The delay caused permanent complications including permanent disability and disfigurement.

d. Marcia Wilcox: Case No. 19-cv-20641(S.D. Fla.), involved an RCCL doctor who failed to timely disembark a passenger who fell and broke her hip. By the time RCCL disembarked her two days later, Wilcox suffered severe and permanent injuries, including but not limited to significant internal bleeding on or about March 4, 2018.

e. Mitchell Allen: Case No. 19-cv-24061 (S.D. Fla.), involved an RCCL doctor who misdiagnosed a passenger's fractured ribs and vertebrae, which caused a delay in medical treatment that resulted in severe and permanent injury on or about January 2, 2019.

f. Allen Hill: Case No. 03-23815-cv-Moreno (S.D. Fla.), involved Celebrity Cruises Inc., which, as alleged above, is a corporate subsidiary of RCCL. In that case, just as here, the cruise line's doctor misdiagnosed the passenger's progressive and life-threatening condition. Just as here, the cruise line delayed in transporting the passenger to a medical center in Puerto Rico. Just as here, the cruise line arranged and recommended that the passenger be taken to a hospital in Puerto Rico that was not the closest hospital to the port, thus resulting in a delay in treatment. And, just as here, the delay in treating a life-threatening condition caused the passenger to suffer severe and permanent injuries.

**FACTS SHOWING DR. ETSEBETH, DR. PEREIRA, AND THE SHIPBOARD MEDICAL PERSONNEL WERE EMPLOYEES AND/OR ACTUAL AGENTS OF RCCL**

48. RCCL is vicariously liable and responsible for the negligent acts of its shipboard medical personnel to the extent that those persons were RCCL's employees and/or actual agents.

49. Dr. Etsebeth served as RCCL's employee, pursuant to a "Sign-On Employment Agreement." Dr. Etsebeth's Sign-On Employment Agreement with RCCL consistently refers to him in terms reflecting an employer-employee relationship, such as "seafarer," "crew member," and "employee," while referring to RCCL as the "employer."

50. Dr. Pereira served as RCCL's employee, pursuant to a "Sign on Employment Agreement." Dr. Pereira's Sign-On Employment Agreement with RCCL consistently refers to him in terms reflecting an employer-employee relationship, such as "seafarer," "crew member," and "employee," while referring to RCCL as the "employer."

51. Upon information and belief, the rest of the medical staff aboard the subject ship—including Nurse Lilibeth Rivera and Nurse Mary Bremner—also worked pursuant to similar Sign-On Employment Agreements.

52. RCCL employed the Defendant Doctors and the medical staff aboard the subject ship to provide medical and emergency medical treatment to its crew and passengers. At all times

material to this action, the Defendant Doctors and shipboard medical staff were acting within the scope of their employment with RCCL.

53. RCCL, as principal, acknowledged that the Defendant Doctors and its shipboard medical personnel would act for its benefit and on its behalf. The Defendant Doctors and shipboard medical personnel, as agents, manifested their acceptance of that undertaking. RCCL's acknowledgement and the agents' acceptance are evidenced by, *inter alia*:

a. The Sign-On Employment Agreement refers to RCCL as the "employer" and refers to each of the Defendant Doctors as a "seafarer," "crew member," and "employee";

b. RCCL provided the Defendant Doctors and medical personnel with uniforms bearing RCCL's name and logo;

c. RCCL referred to its shipboard doctors and medical personnel in proprietary language—such as "our doctors"—in its marketing materials and on its website;

d. RCCL directly paid the Defendant Doctors and its medical personnel for their work in the subject ship's medical center.

54. RCCL exercised control over the actions of the Defendant Doctors and its shipboard medical personnel. That control is evidenced by, *inter alia*:

a. The Defendant Doctors and medical personnel were RCCL's employees;

b. RCCL hired the Defendant Doctors and medical personnel to work in a medical facility that was owned and operated by RCCL;

c. The Defendant Doctors and medical personnel were paid directly by RCCL;

d. The Defendant Doctors and medical personnel were considered to be "seafarers," "crewmembers," and "employees," as evidenced by their Sign-On Employment Agreements;

e. The Defendant Doctors and medical personnel were required to wear uniforms furnished by RCCL;

f. RCCL dictates the hours of operation for its shipboard medical centers;

g. RCCL requires its shipboard doctors and medical personnel to be on-call 24 hours a day during cruises;

h. RCCL paid the Defendant Doctors' and medical personnel's salaries;

i. The Defendant Doctors' Sign-On Employment Agreements expressly provided that "any medical records generated in the course of employment by the doctor/physician shall be owned by the Employer/Cruise Line."

j. RCCL controlled the pricing of services provided in the shipboard medical center;

k. Passengers treated by the Defendant Doctors and medical personnel were billed directly by RCCL and not by the Defendant Doctors or shipboard medical personnel;

l. RCCL pays to stock the medical centers with all supplies, medications, and equipment necessary for the Defendant Doctors and medical personnel to treat passengers in the ship's medical center;

m. RCCL maintained the right to fire the Defendant Doctors and its medical personnel.

55. Accordingly, the Defendant Doctors and shipboard medical personnel were RCCL's actual agents. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236-1237 (11th Cir. 2014).

**FACTS SHOWING THAT DR. ETSEBETH, DR. PEREIRA, AND THE SHIPBOARD MEDICAL PERSONNEL WERE THE APPARENT AGENTS OF RCCL**

56. RCCL is vicariously liable and responsible for the negligent acts of its shipboard medical personnel to the extent that those persons were RCCL's apparent agents.

57. RCCL made a number of relevant representations to the general public and its passengers, including Plaintiff, such as:

a. RCCL referred to its shipboard doctors in proprietary language, calling them "our doctors," in its marketing materials and on its website;

b. RCCL referred to its shipboard medical facilities in proprietary language, referring to them as "our medical facilities," in its marketing materials and on its website;

c. RCCL provided the Defendant Doctors and medical personnel with uniforms bearing RCCL's name and logo;

d. RCCL billed passengers, including Plaintiff, directly for services provided in its shipboard medical center;

e. RCCL offered its passengers a "Royal Caribbean Travel Protection Plan" for reimbursement of medical expenses incurred aboard its ships.

58. Based on those representations, Plaintiff reasonably believed that the Defendant Doctors and shipboard medical personnel were authorized to render medical services for RCCL's benefit. RCCL encouraged that belief among its passengers by using the ship's medical center as a marketing tool to induce passengers to cruise aboard RCCL ships. Toward that end, RCCL represented in its marketing materials that every ship in its fleet has a "dedicated medical facility" staffed with licensed doctors and nurses, and that it provided medical care that complied with certain established standards, including those of the cruise ship medicine section of the American College of Emergency Physicians.

59. RCCL's representations induced Plaintiff to detrimentally and justifiably rely upon the appearance of an agency relationship between RCCL, as principal, and the Defendant Doctors and shipboard medical personnel, as agents. That detrimental, justifiable reliance is evidenced by, *inter alia*:

a. Plaintiff followed the advice of the Defendant Doctors and shipboard medical personnel by not requesting that he be immediately evacuated off the ship for imaging and treatment on February 18, 2019;

b. Plaintiff followed the advice of the Defendant Doctors and shipboard medical personnel by not requesting that he be immediately transported to the nearest hospital for treatment upon reporting to the medical clinic on the morning of February 21, 2019;

c. Plaintiff would not have blindly trusted the advice of unknown medical personnel if the Defendant Doctors and shipboard medical personnel had not borne the imprimatur of a well-known and trusted cruise line, RCCL;

d. Plaintiff would not have followed the advice of the Defendant Doctors and shipboard medical personnel had he suspected that they were not actually RCCL's agents.

60. Accordingly, the Defendant Doctors and shipboard medical personnel were RCCL's apparent agents. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1251-53 (11th Cir. 2014).

## <u>COUNT I:</u>
## NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE: ACTUAL AGENCY/RESPONDEAT SUPERIOR (FIRST MEDICAL EMERGENCY - FEB. 18, 2019)

61. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 55 above, as if set forth entirely herein.

62. This count seeks to hold RCCL vicariously liable, under principles of respondeat superior and actual agency, for the negligence of Dr. Etsebeth and other shipboard medical personnel in connection with the First Medical Emergency that occurred on February 18, 2019.

63. At all times material to this action, RCCL, as well as its employees and/or actual agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the head injury Burgess sustained aboard the subject ship on February 18, 2019.

64. Dr. Etsebeth and RCCL's shipboard medical personnel were the employees and/or actual agents of RCCL, as alleged in paragraphs 48 through 55 above.

65. Dr. Etsebeth and RCCL's shipboard medical personnel breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's head injury;

b. Failing to provide any further care, treatment, and/or follow up evaluations of Burgess's head injury, despite the significant trauma to the back of his head;

c. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

d. Failing to accurately describe, characterize, and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of passenger patients such as Burgess;

e. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility to undergo radiological studies (such as a CT scan or MRI) to determine whether he was suffering from any subdural injury, such as bleeding on or around his brain;

f. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility capable of providing necessary treatment and/or medications that were not available aboard the subject ship;

g. Failing to adequately investigate the circumstances and extent of Burgess's injury, including failing to ask either Burgess or Henze whether Burgess had lost consciousness after the fall that caused the laceration to his head.

66. Instead of rendering appropriate care, advising Burgess on the proper follow up care for a head injury, and/or ordering him evacuated off of the ship, RCCL investigated Burgess's fall by, among other things, dispatching crew members to his cabin and taking photographs.

67. As a direct and proximate result of the negligence of Dr. Etsebeth and the ship's medical personnel, Burgess suffered severe and permanent injuries. Specifically, Plaintiff's severe internal head injuries went undiagnosed, undetected, and untreated, which resulted in Plaintiff suffering multiple strokes beginning on February 21, 2019, and suffering severe and permanent injuries.

68. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT II:

## NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE: APPARENT AGENCY/AGENCY BY ESTOPPEL (FIRST MEDICAL EMERGENCY – FEB. 18, 2019)

69. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47, and paragraphs 56 through 60 above, as if set forth entirely herein.

70. This count seeks to hold RCCL vicariously liable, under principles of apparent agency, for the negligence of Dr. Etsebeth and other shipboard medical personnel in connection with the First Medical Emergency that occurred on February 18, 2019. It is asserted ***in the alternative to Count I***, which seeks to hold RCCL vicariously liable under principles of respondeat superior and actual agency.

71. At all times material to this action, RCCL, as well as its apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the head injury Burgess sustained aboard the subject ship on February 18, 2019.

72. Dr. Etsebeth and RCCL's shipboard medical personnel were the apparent agents of RCCL, as alleged in paragraphs 56 through 60 above.

73. Dr. Etsebeth and RCCL's shipboard medical personnel breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's head injury;

b. Failing to provide any further care, treatment, and/or follow up evaluations of Burgess's head injury, despite the significant trauma to the back of his head;

c. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

d. Failing to accurately describe, characterize and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers, and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of passenger patients such as Burgess;

e. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility to undergo radiological studies (such as a CT scan or MRI) to determine whether he was suffering from any subdural injury, such as bleeding on or around his brain;

f. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility capable of providing necessary treatment and/or medications that were not available aboard the subject ship;

g. Failing to adequately investigate the circumstances and extent of Burgess's injury, including failing to ask either Burgess or Henze whether Burgess had lost consciousness after the fall that caused the laceration to his head.

74. Instead of rendering appropriate care, advising Burgess on the proper follow up care for a head injury, and/or ordering him evacuated off of the ship, RCCL investigated Burgess's fall by, among other things, dispatching crew members to his cabin and taking photographs.

75. As a direct and proximate result of the negligence of Dr. Etsebeth and the ship's medical personnel, Burgess suffered severe and permanent injuries. Specifically, Plaintiff's severe internal head injuries went undiagnosed, undetected, and untreated, which resulted in Plaintiff suffering multiple strokes beginning on February 21, 2019, and suffering severe and permanent injuries.

76. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future, as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT III:

## NEGLIGENT MEDICAL CARE – DIRECT LIABILITY OF DOCTOR MICHIEL ADRIAAN ETSEBETH (FIRST MEDICAL EMERGENCY – FEB. 18, 2019)

77. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 46 above as if set forth entirely herein.

78. This count seeks to hold Dr. Etsebeth directly liable for his negligence in connection with the First Medical Emergency that occurred on February 18, 2019.

79. At all times material to this action, Dr. Etsebeth owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff medical services in accordance with a level of care and skill that is recognized as acceptable and appropriate by reasonably prudent healthcare providers under the same or similar circumstances.

80. Dr. Etsebeth breached his duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor, and/or follow Plaintiff's head injury;

b. Failing to provide any further care, treatment, and/or follow up evaluations of Burgess's head injury, despite the significant trauma to the back of his head;

c. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

d. Failing to accurately describe, characterize, and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers, and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of passenger patients such as Burgess;

e. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility to undergo radiological studies (such as a CT scan or MRI) to determine whether he was suffering from any subdural injury, such as bleeding on or around his brain;

f. Failing to prescribe that Burgess be immediately evacuated off of the subject ship and transported to a shoreside medical facility capable of providing necessary treatment and/or medications that were not available aboard the subject ship;

g. Failing to adequately investigate the circumstances and extent of Burgess's injury, including failing to ask either Burgess or Henze whether Burgess had lost consciousness after the fall that caused the laceration to his head.

81. As a direct and proximate result of the negligence of Dr. Etsebeth, Burgess suffered severe and permanent injuries. Specifically, Plaintiff's severe internal head injuries went undiagnosed, undetected, and untreated, which resulted in Plaintiff suffering multiple strokes beginning on February 21, 2019, and suffering severe and permanent injuries.

82. As a direct and proximate result of the negligence of Dr. Etsebeth, Plaintiff has suffered damages in the past that will continue into the future, as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against Dr. Etsebeth for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT IV:

## NEGLIGENT FAILURE TO EVACUATE PASSENGER AND/OR EVACUATE PASSENGER APPROPRIATELY – DIRECT LIABILITY OF THE CRUISE LINE (FIRST MEDICAL EMERGENCY – FEB. 18, 2019)

83. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47 above as if set forth entirely herein.

84. This Count seeks to hold RCCL directly liable for its negligence in failing to evacuate Plaintiff off of its cruise ship on February 18, 2019.

85. At all times material to this action, RCCL, as well as its employees, agents, and/or apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That

duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the head injury he sustained aboard the subject ship on February 18, 2019.

86. RCCL knew or should have known that Plaintiff's head injury was severe, time-sensitive and progressive in nature. RCCL was advised of Plaintiff's severe condition through Dr. Etsebeth, who called and emailed RCCL's on-call shoreside physicians and medical personnel to advise them of same. Once RCCL learned of the severity of Plaintiff's condition it should have taken measures to evacuate him off of the ship and/or divert the ship's course to secure prompt, appropriate medical care that would have prevented the devastating injuries he ultimately suffered.

87. RCCL, acting through the commanding officers aboard the subject ship and RCCL's shoreside medical "care team," breached its duty of care by, *inter alia*:

a. Failing to make the arrangements necessary to have Burgess immediately evacuated off of the subject ship on February 18, 2019, and transported to a shoreside medical facility capable of providing necessary treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

b. Failing to divert the course of the subject ship to ensure that it was in port sooner so that Plaintiff could be taken to a shoreside medical facility capable of providing necessary treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

c. Failing to advise Plaintiff that such an evacuation or course diversion was available and necessary in order for him to receive adequate medical treatment for his head injury.

88. As a direct and proximate result of RCCL's negligence, Burgess suffered severe and permanent injuries. Specifically, Plaintiff's severe internal head injuries went undiagnosed, undetected, and untreated, which resulted in Plaintiff suffering multiple strokes beginning on February 21, 2019, and suffering severe and permanent injuries.

89. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future, as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT V:

## NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE: ACTUAL AGENCY/RESPONDEAT SUPERIOR (SECOND MEDICAL EMERGENCY - FEB. 21, 2019)

90. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 55 above, as if set forth entirely herein.

91. This count seeks to hold RCCL vicariously liable, under principles of respondeat superior and actual agency, for the negligence of Dr. Pereira and other shipboard medical personnel in connection with the Second Medical Emergency that occurred on February 21, 2019.

92. At all times material to this action, RCCL, as well as its employees and/or actual agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the stroke event that Plaintiff suffered aboard the subject ship on February 21, 2019.

93. Dr. Pereira and RCCL's shipboard medical personnel were the employees and/or actual agents of RCCL, as alleged in paragraphs 48 through 55 above.

94. Dr. Pereira and RCCL's shipboard medical personnel breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's stroke event;

b. Failing to provide adequate care, treatment, and/or follow up evaluations of Burgess's stroke event;

c. Failing to immediately administer medications capable of preventing or minimizing the damage to Plaintiff's cerebrovascular system;

d. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

e. Failing to accurately describe, characterize and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers, and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of Plaintiff;

f. Failing to prescribe that Plaintiff be evacuated off the subject ship immediately upon his being diagnosed with a stroke and, instead, allowing RCCL personnel to delay his removal off the ship by approximately 3½ hours;

g. Failing to accurately describe, characterize and/or advise the ambulance crew in San Juan, Puerto Rico of the grave and time-sensitive nature of Plaintiff's condition, which resulted in further delaying his treatment;

h. Failing to instruct the ambulance crew in San Juan, Puerto Rico, to transport Plaintiff to the nearest hospital capable of treating Plaintiff's grave and quickly-deteriorating condition and, instead, directing or allowing Plaintiff to be transported to HIMA San Pablo Caguas, where he arrived 4½ hours after he first advised RCCL that he was suffering from a stroke.

95. As a direct and proximate result of the negligence of Dr. Pereira and the ship's medical personnel, Burgess suffered severe and permanent injuries. Specifically, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and he arrived at the hospital outside of the window of time during which doctors could have administered

medications or performed interventional treatments that would have prevented or drastically reduced the severity of his injuries.

96. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future, as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT VI:

## NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE: APPARENT AGENCY (SECOND MEDICAL EMERGENCY - FEB. 21, 2019)

97. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47, and paragraphs 56 through 60 above, as if set forth entirely herein.

98. This count seeks to hold RCCL vicariously liable, under principles of apparent agency, for the negligence of Dr. Pereira and other shipboard medical personnel in connection with the Second Medical Emergency that occurred on February 21, 2019. It is asserted ***in the alternative to Count V***, which seeks to hold RCCL vicariously liable under principles of respondeat superior and actual agency.

99. At all times material to this action, RCCL, as well as its apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the stroke event that Plaintiff suffered aboard the subject ship on February 21, 2019.

100. Dr. Pereira and RCCL's shipboard medical personnel were the apparent agents of RCCL, as alleged in paragraphs 56 through 60 above.

101. Dr. Pereira and RCCL's shipboard medical personnel breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's stroke event;

b. Failing to provide adequate care, treatment, and/or follow up evaluations of Burgess's stroke event;

c. Failing to immediately administer medications capable of preventing or minimizing the damage to Plaintiff's cerebrovascular system;

d. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

e. Failing to accurately describe, characterize, and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of Plaintiff;

f. Failing to prescribe that Plaintiff be evacuated off the subject ship immediately upon his being diagnosed with a stroke and, instead, allowing RCCL personnel to delay his removal off the ship by approximately 3½ hours;

g. Failing to accurately describe, characterize, and/or advise the ambulance crew in San Juan, Puerto Rico, of the grave and time-sensitive nature of Plaintiff's condition, which resulted in further delaying his treatment;

h. Failing to instruct the ambulance crew in San Juan, Puerto Rico, to transport Plaintiff to the nearest hospital capable of treating Plaintiff's grave and quickly-deteriorating condition and, instead, directing or allowing Plaintiff to be transported to HIMA San Pablo Caguas, where he arrived 4½ hours after he first advised RCCL that he was suffering from a stroke.

102. As a direct and proximate result of the negligence of Dr. Pereira's and the ship's medical personnel, Plaintiff suffered severe and permanent injuries. Specifically, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and he arrived at the hospital outside of the window of time during which doctors could have administered medications or performed interventional treatments that would have prevented or drastically reduced the severity of his injuries.

103. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT VII:

## NEGLIGENT MEDICAL CARE – DIRECT LIABILITY OF DOCTOR JOAO PEREIRA (SECOND MEDICAL EMERGENCY – FEB. 21, 2019)

104. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 46 above as if set forth entirely herein.

105. This count seeks to hold Dr. Pereira directly liable for his negligence in connection with the Second Medical Emergency that occurred on February 21, 2019.

106. At all times material to this action, Dr. Pereira owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff medical services in accordance with a level of care and skill that is recognized as acceptable and appropriate by reasonably prudent healthcare providers under the same or similar circumstances.

107. Dr. Pereira breached his duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor, and/or follow Plaintiff's stroke event;

b. Failing to provide adequate care, treatment, and/or follow up evaluations of Burgess's stroke event;

c. Failing to immediately administer medications capable of preventing or minimizing the damage to Plaintiff's cerebrovascular system;

d. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Burgess's progressive condition;

e. Failing to accurately describe, characterize, and/or advise RCCL's shoreside on-call physician, captain, staff captain, officers and/or the RCCL personnel who assist, approve and/or participate in the treatment and care of Plaintiff;

f. Failing to prescribe that Plaintiff be evacuated off the subject ship immediately upon his being diagnosed with a stroke and, instead, allowing RCCL personnel to delay his removal off the ship by approximately 3½ hours;

g. Failing to accurately describe, characterize and/or advise the ambulance crew in San Juan, Puerto Rico, of the grave and time-sensitive nature of Plaintiff's condition, which resulted in further delaying his treatment;

h. Failing to instruct the ambulance crew in San Juan, Puerto Rico, to transport Plaintiff to the nearest hospital capable of treating Plaintiff's grave and quickly-deteriorating condition and, instead, directing or allowing Plaintiff to be transported to HIMA San Pablo Caguas, where he arrived 4½ hours after he first advised RCCL that he was suffering from a stroke.

108. As a direct and proximate result of the negligence of Dr. Pereira, Plaintiff suffered severe and permanent injuries. Specifically, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and he arrived at the hospital outside of the window of time during which doctors could have administered medications or performed interventional treatments that would have prevented or drastically reduced the severity of his injuries.

109. As a direct and proximate result of the negligence of Dr. Pereira, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against Dr. Pereira for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT VIII:

## NEGLIGENT FAILURE TO ARRANGE FOR EMERGENCY TRANSPORT TO CLOSEST MEDICAL FACILITY– DIRECT LIABILITY OF THE CRUISE LINE (SECOND MEDICAL EMERGENCY – FEB. 21, 2019)

110. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47 above as if set forth entirely herein.

111. This Count seeks to hold RCCL directly liable for its negligence based on its unjustified delay in transporting Plaintiff to the nearest medical facility capable of rendering emergency medical treatment for Plaintiff's stroke episode on February 21, 2019.

112. At all times material to this action, RCCL, as well as its employees, agents, and/or apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That

duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the stroke episode he suffered on February 21, 2019.

113. RCCL knew or should have known that Plaintiff's stroke was severe, time-sensitive, and progressive in nature. RCCL was advised of Plaintiff's severe and time-sensitive condition through Dr. Pereira, who called and emailed RCCL's on-call shoreside physicians and personnel. Once RCCL learned about the severity of Plaintiff's condition, it should have taken immediate measures to secure prompt, appropriate medical care that would have prevented the devastating injuries he ultimately suffered.

114. RCCL, acting through the commanding officers aboard the subject ship and RCCL's shoreside medical "care team," breached its duty of care by, *inter alia*:

a. Failing to immediately evacuate Plaintiff off the subject ship and, instead, allowing RCCL personnel to delay his removal off the ship by approximately ***3½ hours***;

b. Failing to accurately describe, characterize, and/or advise the ambulance crew in San Juan, Puerto Rico, of the grave and time-sensitive nature of Plaintiff's condition, which resulted in further delaying his treatment;

c. Failing to instruct the ambulance crew in San Juan, Puerto Rico, to transport Plaintiff to the nearest hospital capable of treating Plaintiff's grave and quickly-deteriorating condition and, instead, directing or allowing Plaintiff to be transported to HIMA San Pablo Caguas, where he arrived ***4½ hours*** after he first advised RCCL that he was suffering from a stroke.

115. Upon information and belief, RCCL directed or allowed Plaintiff to be transported to HIMA San Pablo Caguas based on a pre-existing business or contractual arrangement, despite the fact that there were other hospitals significantly closer to the port that were capable of treating Plaintiff's stroke. Thus, RCCL placed its own business and financial interests above Plaintiff's critical medical needs.

116. As a direct and proximate result of RCCL's negligence, Plaintiff suffered severe and permanent injuries. Specifically, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and he arrived at the hospital outside of the window of time during which doctors could have administered medications or performed interventional treatments that would have prevented or drastically reduced the severity of his injuries.

117. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

**COUNT IX:**

**NEGLIGENT HIRING AND SELECTION OF ONBOARD MEDICAL STAFF – DIRECT LIABILITY OF THE CRUISE LINE**

118. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47 above as if set forth entirely herein.

119. This Count seeks to hold RCCL directly liable for negligently hiring and/or selecting Dr. Etsebeth and Dr. Pereira to serve as shipboard physicians on the subject cruise during which they provided negligent medical care to Plaintiff.

120. At all times material to this action, RCCL owed Plaintiff a duty to exercise reasonable care under the circumstances. RCCL's duty includes the duty to staff its shipboard medical centers with competent doctors, nurses, and medical personnel.

121. To comply with its duty of reasonable care, RCCL was required to make an appropriate investigation into the qualifications and background of its shipboard doctors, nurses,

and medical personnel to ensure that they were competent and fit to perform their duties in the medical centers aboard RCCL's ships. Such investigation should have included, *inter alia*:

a. contacting medical boards or equivalent medical regulatory bodies, medical schools, and/or medical facilities where the Defendant Doctors had previously practiced, studied, and/or worked;

b. contacting other cruise lines that had previously employed and/or contracted with the Defendant Doctors;

c. inquiring of the Defendant Doctors, prior to hiring them, about their experience and training in the field of emergency medicine and obtaining proof of their qualifications and competence to practice emergency medicine.

122. RCCL breached its duty by hiring Dr. Etsebeth when it knew or should have known that he was incompetent or unfit. Specifically, as to ***Dr. Etsebeth***:

a. Prior to the subject cruise that departed on February 17, 2019, RCCL hired Dr. Etsebeth by entering into a Sign-On Employment Agreement with him.

b. On September 10, 2015, Dr. Etsebeth was named as a defendant in a wrongful death lawsuit alleging that he provided negligent medical care to a passenger aboard the *Norwegian Getaway* cruise ship. *See Cordani v. NCL (Bahamas) Ltd., et. al.*, No. 1:15-cv-23414-FAM (S.D. Fla.). The suit alleged that Dr. Etsebeth and other ship doctors provided negligent medical treatment to a sick passenger and also refused to evacuate him from the ship for several days, which caused the passenger to die shortly after reaching its next port-of-call in the Bahamas. (*See Cordani* Complaint, D.E. 1). Pursuant to publicly-available court records, the plaintiffs in that case settled their claims against the defendants, including Dr. Etsebeth, in or about March 2016. (*See*

*Cordani* Notice of Settlement, D.E. 61).[2] Those records were publicly-available to anyone, including RCCL, *before* RCCL hired Dr. Etsebeth to serve on the subject cruise.

c. Dr. Etsebeth is also the subject of an ongoing lawsuit against RCCL premised on his allegedly negligent medical treatment of a passenger. *Masotti v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-22078-KMW (S.D. Fla.). The plaintiff in that suit alleged that Dr. Etsebeth—despite having access to the passenger's vital signs and blood test results repeatedly taken over a 24-hour period—failed to recognize signs that the passenger was suffering internal bleeding. (*See Masotti*, Amended Complaint, D.E. 11).[3] As a result, the passenger went into septic shock and required an emergency blood transfusion. (*Id.*). In addition to the negligent medical treatment, the *Masotti* complaint alleged that the passenger was negligently "allowed to remain on the ship for three days from presentation with clear signs of sepsis, dehydration and internal bleeding." (*Id.* at ¶ 22). Dr. Etsebeth's negligent treatment of the patient in *Masotti* occurred between May 23, 2018 and May 24, 2018, which was *before* RCCL hired him to serve on the subject cruise.

d. Accordingly, RCCL knew or should have known that Dr. Etsebeth was incompetent or unfit to perform his duties when it hired him to serve as a shipboard physician on the subject cruise during which he provided negligent medical care to Plaintiff Burgess.

123. RCCL breached its duty by hiring Dr. Pereira when it knew or should have known that he was incompetent or unfit. Specifically, as to ***Dr. Pereira***:

a. Prior to the subject cruise that departed on February 17, 2019, RCCL hired Dr. Pereira by entering into a Sign-On Employment Agreement with him.

---

[2] The Notice of Settlement asserts that "all pending claims against Plaintiff and Defendants have been settled," noting that one of the defendants, Dr. Cherryll LeBlanc, had been previously dismissed with prejudice.

[3] Dr. Etsebeth is not named as a defendant in *Masotti*. Instead, the plaintiff seeks to hold RCCL vicariously liable for the negligent acts of Dr. Etsebeth. (*See Masotti* Amd. Compl., D.E. 11). The *Masotti* case remains pending as of the date of filing this amended complaint.

b. Dr. Pereira was the subject of a wrongful death lawsuit against RCCL premised on his allegedly negligent medical treatment of a passenger. *Pack v. Royal Caribbean Cruises, Ltd.*, No. 1:15-cv-22828-GAYLES (S.D. Fla.). The plaintiff in that suit alleged that Dr. Pereira and his fellow shipboard medical staff failed to render proper medical care to a passenger who suffered a head injury while aboard an RCCL cruise ship and then suffered a stroke the following day while aboard the ship. (*See Pack*, Amended Complaint, D.E. 22).[4] In addition to the negligent medical treatment, the *Pack* complaint alleged that Dr. Pereira and RCCL negligently failed to timely order an emergency evacuation of the passenger to a shoreside medical facility. Pursuant to publicly-available court records, the plaintiffs in *Pack* settled their claims against RCCL. (*See Pack*, Notice of Settlement, D.E. 54). Dr. Pereira's negligent treatment of the patient in *Pack* occurred between February 12, 2015 and February 15, 2015, which was *before* RCCL hired him to serve on the subject cruise.

c. Accordingly, RCCL knew or should have known that Dr. Pereira was incompetent or unfit to perform his duties when it hired him to serve as a shipboard physician on the subject cruise during which he provided negligent medical care to Plaintiff Burgess.

124. Based on the above, RCCL knew or should have known that the Defendant Doctors lacked the necessary education, training, and experience to handle emergent and progressive medical conditions of the sort they were reasonably certain to encounter in a shipboard medical center.

125. The incompetence or unfitness of Dr. Etsebeth proximately caused Plaintiff's injuries. Specifically, Plaintiff's severe internal head injuries went undiagnosed, undetected, and

[4] Dr. Pereira is not named as a defendant in *Pack*. Instead, the plaintiff sought to hold RCCL vicariously liable for the negligent acts of Dr. Pereira and other shipboard medical personnel. (*See Pack* Amd. Compl., D.E. 22 at ¶¶ 14, 84-106).

untreated, which resulted in Plaintiff suffering multiple strokes beginning on February 21, 2019, and suffering severe and permanent injuries.

126. The incompetence or unfitness of Dr. Pereira proximately caused Plaintiff's injuries. Specifically, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and he arrived at the hospital outside of the window of time during which doctors could have administered medications or performed interventional treatments that would have prevented or drastically reduced the severity of his injuries.

127. As a direct and proximate result of RCCL's negligent hiring and selection of the Defendant Doctors, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

## COUNT X:
## NEGLIGENT PROVISIONING AND EQUIPPING OF MEDICAL FACILITY – DIRECT LIABILITY OF THE CRUISE LINE

128. Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1 through 47 above as if set forth entirely herein.

129. This Count seeks to hold RCCL directly liable for negligently provisioning and equipping the medical facility aboard the RCCL *Harmony of the Seas*, where Plaintiff received medical treatment during the subject cruise.

130. At all times material to this action, RCCL owed Plaintiff a duty to exercise reasonable care under the circumstances. That included the duty to properly staff the ship's medical

facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the ship's medical facility.

131. RCCL breached its duty of reasonable care by, *inter alia*:

a. Failing to supply its shipboard medical center with adequate diagnostic testing equipment, including CT scans and/or MRIs, to enable its physicians and medical staff to properly diagnose, treat, and care for its passengers;

b. Failing to supply its shipboard medical center with adequate medications to enable its physicians and medical staff to properly diagnose, treat, and care for its passengers;

c. Failing to supply its shipboard medical center with necessary manuals, treatises, and reasonable procedures for contacting medical professionals in the United States for consultation about the care and treatment of significant emergency medical conditions afflicting its passengers, including Plaintiff;

d. Failing to staff its shipboard medical center with competent and qualified doctors and medical staff capable of diagnosing, treating, and caring for its passengers, particularly those suffering from significant emergency medical conditions, such as Plaintiff.

132. RCCL's breaches are aggravated by the fact that it knew that its shipboard medical center was the only source of medical care for its thousands of passengers sailing aboard the subject cruise, and it knew that the ship would be sailing for significant periods of time hundreds of miles from shore-based hospitals, and off the shores of underdeveloped countries offering sub-standard medical care.

133. As a direct and proximate result of RCCL's negligence, Plaintiff suffered severe and permanent injuries.

a. Due to RCCL's negligent provisioning and equipping of its shipboard medical center on February 18, 2019, Plaintiff's severe internal head injuries went undiagnosed, undetected, and untreated, which resulted in Plaintiff suffering multiple strokes.

b. Due to RCCL's negligent provisioning and equipping of its shipboard medical center on February 21, 2019, Plaintiff's stroke went untreated for several hours during a period when time was of the essence. Accordingly, Plaintiff's condition was allowed to deteriorate during a critical period when he should have been receiving medications and/or interventional treatments that would have prevented or drastically reduced the severity of his injuries.

134. As a direct and proximate result of RCCL's negligence, Plaintiff has suffered damages in the past that will continue into the future as described more fully in paragraph 45 above.

WHEREFORE, Plaintiff demands Judgment against RCCL for all damages recoverable under the general maritime law and state law; all court costs; all interest due under the applicable law, including interest from the date of the subject incident; and any other damages the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby requests and demands a trial by jury on all claims so triable.

By: *__/s/Sarah Anne Lobel__*
**JOHN H. HICKEY (FBN 305081)**
Email: hickey@hickeylawfirm.com
**SARAH A. LOBEL, ESQ. (FBN 88716)**
Email: slobel@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542

-and-

**ELIZABETH K. RUSSO (FBN 260657)**
Email: ekr@russoappeals.com
**PAULO R. LIMA (FBN 0064364)**

Email: prl@russoappeals.com
**RUSSO APPELLATE FIRM, P.A.**
7300 North Kendall Drive, Suite 600
Miami, Florida 33156
Telephone: (305) 666-4660
Facsimile: (305) 666-4470

**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified in the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/Sarah Anne Lobel*

## SERVICE LIST

| | |
|---|---|
| Michael J. Drahos, Esq.<br>GRAYROBINSON, P.A.<br>Northbridge Centre<br>515 North Flagler Drive<br>West Palm Beach, Florida 33401<br>Telephone: (561) 268-5727<br>Email: michael.drahos@gray-borinson.com<br><br>Randy S. Ginsberg, Esq.<br>ROYAL CARIBBEAN CRUISES, LTD.<br>1080 Caribbean Way<br>Miami, Florida 33132<br>Email: rginsberg@rccl.com<br>Telephone: (305) 539-6327<br>Alt. Tel.: (305) 539-4457<br>Fax: (305) 539-6561<br><br>***Counsel for Defendants*** | JOHN H. HICKEY (FBN 305081)<br>Email: hickey@hickeylawfirm.com<br>SARAH A. LOBEL, ESQ. (FBN 88716)<br>Email: slobel@hickeylawfirm.com<br>HICKEY LAW FIRM, P.A.<br>1401 Brickell Avenue, Ste. 510<br>Miami, Florida 33131-3504<br>Telephone: (305) 371-8000<br>Facsimile: (305) 371-3542<br><br>Elizabeth K. Russo<br>Paulo R. Lima<br>RUSSO APPELLATE FIRM, P.A.<br>7300 North Kendall Drive, Suite 600<br>Miami, Florida 33156<br>Telephone: (305) 666-4660<br>Facsimile: (305) 666-4470<br>Email: ekr@russoappeals.com<br>Email: prl@russoappeals.com<br><br>***Co-Counsel for Plaintiff*** |