UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:20-cv-20687-AOR

RICHARD BURGESS individually and
by and through DARREN HENZE
as Guardian of the Person and Estate
of Richard Burgess, incapacitated and
as agent under that certain durable power
of attorney dated November 20, 2006,

Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian Corporation, d/b/a
ROYAL CARIBBEAN CRUISE LINE and/or
ROYAL CARIBBEAN INTERNATIONAL,

Defendant.
___________________________________/

**DEFENDANT ROYAL CARIBBEAN CRUISE, LTD.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, ROYAL CARIBBEAN CRUISES, LTD., (hereinafter "RCCL") by and through its undersigned counsel and pursuant to S.D. Fla. L.R. 56.1(a)(1), hereby files this Statement of Material Facts in support of its contemporaneously filed motion for summary judgment and states as follows:

**Cruise Days 1-2: February 17-18, 2019**

1. On February 17, 2019, Plaintiff Richard Burgess, who was 61 years old, boarded the *Harmony of the Seas* in Port Everglades, Fort Lauderdale. *See* RCCL Gangway Activity Report attached as **Exhibit A**.

2. On the first night of the cruise, Mr. Burgess consumed thirteen alcoholic beverages until he eventually retired to his cabin in the early morning hours of February 18th. *See* Sign/Sail Account and drink receipts attached as **Composite Exhibit B**; Dep. Darren Henze at 115:9-15 (Sept. 16, 2021) attached **Exhibit C**.

3. Mr. Burgess entered his cabin at approximately 3:00 AM and fell in the foyer and struck the back of his head due to being intoxicated. *See* Guest Injury Statement at PG 2 attached as **Exhibit D**.

4. Mr. Burgess's husband, Mr. Henze, was asleep at the time and did not witness the fall. *See* Dep. Henze at 119:8-10 and 121:17-21.

5. After his cousin, Susan Hiatt, recommended that he get medical attention for the cut, Mr. Burgess visited the ship's medical center at 11:00 AM on the same day. *See* RCCL Medical Chart dated February 19, 2019 attached as **Exhibit E**; Dep. Henze at 139:21 - 140:6; Dep. Susan Hiatt at 56:2-12 (June 6, 2022) attached as **Exhibit F**; *id.* at 62:21-25.

6. The *Harmony* was at sea at the time, with the next scheduled port of call in St. Maarten on February 20th. Dep. Henze at 169:11-17; see also Ship Itinerary attached as **Exhibit G**.

7. Mr. Burgess denied losing consciousness and was seen by ship physician Dr. Michiel Etsebeth, who noted a normal examination without complaint of headache or neurologic deficits. *See* **Ex. E**; *see also* Dep. Henze at 146:1-18.

8. Dr. Etsebeth described a "10cm laceration through full depth of scalp across occiput [back of the head]." *See* **Ex. E**.

9. Mr. Burgess received stitches for the wound and a tetanus injection before being discharged from the ship's medical center. *See id*.

**Cruise Days 3-4: February 19-20**

10. Mr. Burgess remained in his usual state of health and did not demonstrate any unusual signs or symptoms over the course of the next two days following his discharge from the ship's medical center. *See* Dep. Henze at 164:2-10; *id.* at 169:21 – 170:10; *id.* at 173:18-174: 3; *id.* at 183:14 – 184:14; Dep. Joseph Hiatt at 73:19 – 74:10 (June 6, 2022) attached as **Exhibit H**; *id.* at 78:13-20; *id.* at 79:2-7; *id.* at 92:16 – 93:5; *id.* at 101:14-22; Dep. Susan Hiatt at 64:10 – 66:9; *id.* at 73:15-25; Dep. Jimmie Landrum at 89:14-18 (June 7, 2022) attached as **Exhibit I**; *id.* at 89:23 – 90:12; *id.* at 92:6-20; *id.* at 93:17-21; Dep. Ilene Landrum at 59:20 – 61:25 (June 7, 2022) attached as **Exhibit J**; *id.* at 67:24 – 68:4.

11. On February 20, 2019, Mr. Burgess debarked from the vessel to visit the St. Maarten area at 11:49 AM and returned to the vessel at 2:43 PM. *See* **Ex. A**.

12. Mr. Burgess' visit in St. Maarten was without incident as he appeared in his usual state of health. *See* Dep. Henze at 178:14 – 179:1; Dep. Ilene Landrum at 71:5-19.

13. When the Landrums ate dinner with Mr. Burgess and Mr. Henze on February 20th, Mr. Burgess appeared to be in his usual state of health. Dep. Jimmie Landrum at 110:12 – 111:7;

Dep. Ilene Landrum at 75:15 – 76:2.

**Cruise Day 5: February 21**

14. Ms. Jennifer Robles, the boarding agent from Continental Shipping (hereinafter "Continental"), the port agent for RCCL, was at the port at 6:30 AM (AST)[1] in anticipation of the ship's scheduled 7:00 AM (AST) arrival in San Juan, Puerto Rico. DE 87-4 at 40:11-15.

15. On February 21 at 8:59 AM (EST)/9:59 AM (AST), because Mr. Henze was asleep and did not hear his cell phone ring, Mr. Burgess called his cousin, Susan Hiatt, to state that he thought he was having a stroke. Dep. of Susan Hiatt at 84:2-15; *id.* at 85:7-15; *id.* at 86:5-9; Verizon Cell Phone Records attached as **Exhibit K**; Dep. Henze at 185:7-18; *id.* at 188:14 – 189:2; *id.* at 195:14-17; Dep. Joseph Hiatt at 95:24 – 96:6; *id.* at 97:10-14; *id.* at 98:10-12.

16. Mrs. Hiatt went to get Mr. Henze and Mr. Hiatt, who had just walked into the cabin, went to find Mr. Burgess. Dep. Susan Hiatt at 86:19-25.

17. Mr. Hiatt found Mr. Burgess sitting alone in a booth in the restaurant at approximately 9:10 AM (EST)/10:10 AM (AST). *See* Dep. Joseph Hiatt at 107:16 – 108:3.

18. Mr. Hiatt does not know how long Mr. Burgess had been sitting in the booth, or how long he had been feeling unwell before calling Mrs. Hiatt. See Dep. Joseph Hiatt at 108:11-16.

19. Mr. Burgess advised Mr. Hiatt that he could not walk and "couldn't see good." *See* Dep. Joseph Hiatt at 108:5-6.

20. Aside from recalling that he was "scared to death," Mr. Hiatt did not recall Mr. Burgess reporting any other symptoms. *See* Dep. Joseph Hiatt at 109:22 – 110:9; *id.* at 112:18.

21. When Mr. Henze arrived at the restaurant a short time later, Mr. Burgess was able to able to engage in small talk with him. *See* Dep. Henze at 199:12-21.

22. Within five to ten minutes of Mr. Hiatt's request for assistance, a wheelchair attendant arrived at the restaurant and delivered Mr. Burgess to the ship's medical center without incident by 9:25 AM (EST)/10:25 AM (AST). Dep. Joseph Hiatt at 111:13 – 112:5; *id.* at 129:5-12.

---

[1] AST is an abbreviation for Atlantic Standard Time and is the time zone used by Puerto Rico. At this time of year, AST time was one hour ahead of EST or Eastern Standard Time.

23. At 9:25 AM (EST)/10:25 AM (AST), Mr. Burgess reported to RCCL Nurse Mary Bremner an inability to move fingers on his right hand and an unstable gait. *See RCCL Medical Chart dated February 21, 2019* attached as **Exhibit L**; Dep. Henze at 201:11-16.

24. Ship physician, Dr. Joao Pereira, evaluated Mr. Burgess and recorded in the chart at approximately 9:55 AM (EST)/10:55 (AST):

> [P]atient says that this morning around 9:15 had sudden onset of weakness in right lower limb plus vision changes in right eye. Was asymptomatic when he woke up. No other complaints. Had fall with head trauma in occipital area, 3 days ago. No loss of consciousness, no amnesia, no neurological deficits at the time. Oriented, normal vitals, normal color, no obvious asymmetry in tonus, strength, or sensibility (tactile, proprioceptive, nociceptive). Blurriness in right eye. No pain anywhere. Normal ECG. For immediate neurological/ neurosurgical evaluation (including CT-scan if you see fit). Referral done.

*See* **Ex. L**.

25. Dr. Pereira diagnosed Mr. Burgess with acute cerebrovascular insufficiency and completed a shore-side referral form by 9:56 AM (EST)/10:55 (AST). *See* **Ex.L**; Dep Henze at 235:4-18.

26. Continental is responsible for facilitating emergency medical transportation, including specifically coordinating ground ambulance services as requested by RCCL. See DE Dep Threadgill at DE 87-4 at PG 16 LN 15-PG 17 LN6; *see also* Port Agent Agreement attached as **Exhibit M**.

27. Article 9 of the Port Agent Agreement between Continental and RCCL states:

> **Relationship of the Parties**
>
> The relationship of the parties to this Agreement shall be and at all times shall remain one of an independent contractor and the parties agree that this Agreement does not in any way create a partnership or joint venture relationship between RCL and the Port Agent. Except as may be specifically provided herein, RCL reserves no control over Port Agent, or any Port Agent's employees, subordinates or associates as to how the Services to be rendered by Port Agent hereunder should be performed.
>
> Port Agent shall be solely responsible for all salaries, employee benefits, social security taxes, federal and state unemployment insurance and any and all expenses or taxes relating to Port Agent or its employees or agents. Neither Port Agent not its employees or agents shall be entitled to participate in, or to receive any benefits from RCL employee benefit or welfare plans, specifically including but not limited to coverage under RCL workers' compensation program. Neither Port Agent nor any of its employees or agents are employees of RCL.

*id*. at PG 16, ¶9.

28. At 9:59 AM (EST)/10:59 AM (AST), RCCL staff emailed Continental requesting ambulance service for Mr. Burgess due to a possible stroke. *See* DE 87-4 at 42:18 – 44:14; Email (attached as **Exhibit N**).

29. At 9:59 AM (EST)/10:59 (AST), Continental received the ship's email requesting a medical transfer for a suspected stroke patient. *See* DE 87-4 at 42:18-22.

30. Mr. Threadgill, the corporate representative for Continental, testified that the request from RCCL was clearly conveyed and that Continental was aware of the time-sensitive medical urgency of the situation. *See* DE 87-4 at 45:10 – 47:5.

31. In order to facilitate the transfer, Continental's representative, Ms. Robles, who was already on the ship, *see* ¶ 14, *supra*, first spoke to Dr. Pereira to obtain details and then contacted a "general line" to speak to a hospital facilitator at HIMA San Pablo Caguas Hospital (hereinafter "HIMA Caguas") to secure approval to transfer Mr. Burgess to HIMA Caguas which was Continental's recommended shore-side care provider for his care needs and the highest-rated stroke treatment facility in Puerto Rico. *See* DE 87-4 at 52:18 – 55:7.

32. The HIMA Caguas facilitator obtained information regarding Mr. Burgess and then contacted the appropriate care providers at HIMA Caguas to confirm availability. *See* DE 87-4 at 55:8-20; *id.* at 56:21 – 57:10.

33. Continental could not order an ambulance or advance the shore-side referral process until HIMA Caguas confirmed its availability to accept Mr. Burgess for treatment. *See* DE 87-4 at 56:14-20; *id.* at 51:6-10.

34. Continental was entirely dependent upon the speed and efficiency of the HIMA Caguas facilitator in securing the patient transfer approval, and this required confirmation was not secured until at least 11:21 AM (EST)/12:21 PM (AST), when the Sunny Ambulance Service was dispatched to the Port of San Juan (a total of 1 hour and 22 minutes from the time the RCCL transfer request was received). *See* DE 87-4 at 55:15-21; *id.* at 50:17 – 51:3.

35. Mr. Burgess remained in the RCCL medical center under continued observation until a shore-side referral could be completed. *See* **Exhibit L**.

36. The Sunny Ambulance paramedics arrived at the port at 11:40 AM (EST)/12:40 PM (AST). *See* Sunny Ambulance Run Report attached as **Exhibit O**.

37. Mr. Burgess was medically debarked from the vessel by the Sunny Ambulance paramedics twenty-two minutes later at 12:02 PM (EST)/1:02 PM (AST). *See* **Ex. O**.

38. The ambulance exited the Port at 12:08 PM (EST)/1:08 PM (AST) and arrived at HIMA San Caguas at 12:50 PM (EST)/1:50 PM (AST). *See* **Ex. O**.

39. At 1:59 PM (AST), Dr. Ulises Nobo, one of two board-certified vascular neurologists in Puerto Rico, evaluated Mr. Burgess. DE 87-5 at 18:5-7; *id.* at 21:5-8; see also HIMA Caguas Acute Stroke Neurology Consultation Record as **Exhibit P**.

40. Dr. Nobo documented a last known well-time of 9:30 AM (AST) when Mr. Burgess "developed visual loss over the right side and right-side weakness, worse in the leg." See **Ex P**.

41. Dr. Nobo sent Mr. Burgess for a brain CT Scan on an emergency basis ("Stat") that showed a fully-developed left posterior cerebral artery (PCA) stroke, with a left PCA hyperdense sign, and a small, left-sided subarachnoid[2] hemorrhage (SAH) possibly due to trauma. See **Ex. P**.

42. Evidence of hemorrhage on a brain CT scan is an absolute contraindication to administering the clot busting drug, tissue-plasminogen activator ("t-PA"). Dep. Gomez, 90:8-15; see also Expert Report of Dr. Alexander Merkler at pg. 4, ¶ 3 attached as **Exhibit Q**.

43. Mr. Burgess would not have received t-PA at HIMA Caguas regardless of the time he arrived based upon Dr. Nobo's impression of the CT images that were taken of his brain. In particular, Dr. Nobo testified that once he saw the CT findings on Mr. Burgess' brain that he believed to be evidence of internal bleeding, he was not going to administer t-PA to him, even if he saw him an hour, two hours or three hours from the onset of his symptoms. Dep. Nobo PG 66 LN 5-20.

44. Approximately 12-14 hours later, Mr. Burgess suddenly progressed with new symptoms, including left hemiparesis, vomiting, and an inability to speak. HIMA Caguas Discharge Summary attached as **Exhibit R**. A follow up CT angiogram of Mr. Burgess' brain revealed a total occlusion of the basilar artery. *id.* Mr. Burgess was intubated and taken for emergency surgery, which was unsuccessful. *id.*

[2] The subarachnoid denotes the fluid-filled space around the brain between the arachnoid membrane and the pia matter, through which major blood vessels pass. *See* MERRIAM-WEBSTER'S MEDICAL DESK DICTIONARY 776 (1996).

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Michael Drahos*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
Jack R. Reiter
Florida Bar No. 0028304
jack.reiter@gray-robinson.com
Robert C. Weill
Florida Bar No. 0009962
Robert.weill@gray-robinson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Michael Drahos*

**SERVICE LIST**
**CASE NO.: 1:20-CV-20687-AOR**

John H. Hickey, Esq.
Sarah A. Lobel, Esq.
Hickey Law Firm, P.A.
1401 Brickell Avenue, Suite 510
Miami, FL 33131
Telephone: (305)371-8000
Facsimile: (305) 371-3542
hickey@hickeylawfirm.com
slobel@hickeylawfirm.com