EXHIBIT M

# PORT AGENT AGREEMENT

**Port Agent:** Continental Shipping Inc.
960 San Francisco St.
San Juan, Puerto Rico 00901

**RCL:** Royal Caribbean Cruises Ltd.
1050 Caribbean Way
Miami, Florida 33132

**Agreement:** This Port Agent Agreement dated as of the Commencement Date (the "Agreement") is made by and between Continental Shipping, Inc., Puerto Rico] ("Port Agent") and Royal Caribbean Cruises Ltd., a Liberian corporation ("RCL").

**Term:** The term of this Agreement ("Term") shall begin on the Commencement Date and shall expire on the Expiration Date, unless sooner terminated in accordance with the terms of this Agreement. In addition, so long as Port Agent is not in default hereunder, the parties hereby agree that the Term shall automatically renew for additional one (1) year terms unless RCL or Port Agent provides the other party with a written notice of termination prior to the end of the applicable Term.

Commencement Date is February 1, 2019.

Expiration Date is January 31, 2020.

**Port Cities:** Ponce, San Juan with such other Port Cities as may be added by amendment or supplement to this Port Agent Agreement from time to time.

K3

**Scope of Services:** RCL, through its cruise lines Royal Caribbean International, Celebrity Cruises Inc., Azamara Club Cruises, and any other passenger cruise line now or hereafter acquired by or affiliated with RCL, offers cruises to guests throughout the world, excluding Pullmantur, S.A. In connection with those cruise services, Port Agent agrees to provide, in the port cities specified above (the "Port City" or "Port Cities"), Port Agent services specified in Article 1 of Exhibit A attached hereto and incorporated herein (collectively, the "Services"). Port Agent agrees that it will, during the Term (as defined above), maintain the applicable staffing levels specified in Exhibit A, and otherwise comply with the personnel requirements of this Agreement.

**Compensation:** As compensation for the Services provided hereunder, RCL will pay Port Agent (i) a Basic Service Fee (as defined in Exhibit A) for all of the Basic Services (as defined in Exhibit A) in accordance with the rates and terms set forth in Section 1.2 of Exhibit A, and (ii) when applicable, the Other Services Rates (as defined in Exhibit A) in accordance with the terms set forth in Section 1.4 of Exhibit A.

**Standard Terms and Conditions:** This Agreement is subject to the Standard Terms and Conditions attached hereto as Exhibit B, and such Standard Terms and Conditions shall be considered an integral part of this Agreement.

[Signature Page to Follow]

EXHIBIT
D-Comp. A
1/27/22
PENGAD 800-631-6989



[illegible]

GR000115

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date written below.

**ROYAL CARIBBEAN CRUISES LTD.,**
**a Liberian corporation**

By: ______________________

Name: Hernan Zini

Title: Vice President, Port Services

Date: 2/26, 2019

LEGAL

**Continental Shipping Inc.,**

By: ______________________

Name: Kristian Busto

Title: President

Date: February 25, 2019

# EXHIBIT A

## *PORT AGENT SERVICES DESCRIPTION*

Port Agent is RCL's representative in the Port Cities. As more specifically described herein, Port Agent shall act to protect the interests of RCL in all matters involving the safety of any RCL vessel (the "Vessel") calling at a Port City, as well as the safety of RCL guests and crew.

**Article 1. Services and Compensation**

*Section 1.1 Description of Basic Port Agent Services*

Port Agent shall provide the basic services set forth below (collectively, the "Basic Services") for the Basic Service Fee described in Section 1.2 of this Exhibit A. As defined herein, "arrange" is defined as, but not limited to, provide, obtain, handle, coordinate, inform, advise, submit, supply, support, sustain, order, prepare, adapt, accommodate, perform, aid, assist, avail, furnish, help, give, and oblige, from beginning to end. Basic Services provided may vary from port to port, call to call, or otherwise.

| | | | |
|---|---|---|---|
| 1.1.1 | Ship Husbandry | Berthing | Arrange for safe berthing for vessels, ensuring berthing is in accordance with RCL preferences (berthing at approved berths only unless cleared in advance with Marine Operations) regarding vessel size and berth dimension. |
| 1.1.2 | Ship Husbandry | Berthing | Upon notice from RCL, request berth reservation from the local port authority, or official entity that administers berthing on behalf of the port authority, and confirm berth reservation to RCL upon receipt of same from the local port authority. In cases where confirmed berthing is changed, Agent shall notify RCL immediately and will assist with sourcing and resolving alternative berthing as needed. |
| 1.1.3 | Ship Husbandry | Reporting | Inform, give notice to (as required), handle, and arrange vessel clearance with local Customs, Immigration, Agriculture (including USDA if domestic), Health, Sanitation and any other governmental authorities needed upon vessel entry/exit. This includes Port Agent's time to process all documents needed and arranging for local authorities (Customs, Immigration, Agriculture, etc.) to board the vessel on arrival for clearance procedures. Provide Customs bond (if required). Fee includes any service charges for processing forms, including all documentation required to obtain the vessel's clearance (arrival, departure and in route) for each ship call. |
| 1.1.4 | Ship Husbandry | Reporting | Provide to the local port authority, vessel arrival and departure reports as needed or required. For U.S. calls, includes US Coast Guard 24 hour Notice of Arrival or equivalent. |
| 1.1.5 | Ship Husbandry | Reporting | Obtain passenger and crew counts from vessels and notify counts to stevedoring company, port authority, terminal operator, or any other entity as directed by RCL, as applicable, in the format requested by RCL. |
| 1.1.6 | Ship Husbandry | Reporting | For non-U.S. sailing, fee includes facilitating, completing filing, and any other action required to satisfy any government or quasi-governmental agency as required.<br><br>For U.S. sailings, fee includes facilitating, completing, filing and any other action required to satisfy U.S. Government Regulations as required by the following documents (as Agent if applicable):<br>• CBP Form 1-92 (Vessel Arrival)<br>• CBP Form 1-94 (Vessel Departure)<br>• CBP Form 1-94A (Arrival/Departure Record)<br>• CBP Form 1-95 (Conditional Landing Permit)<br>• CBP Form 1-259 (Notice to Detain, Remove, or Present Alien (Depart Foreign under Safeguard)<br>• CBP Form 1-408 (Application to Payoff of Discharge Alien Crew)<br>• CBP Form 1-409 (Report of Deserting Crewman)<br>• CBP Form 1-418 (Crew List – Arrival/Departure)<br>• CBP Form 1-510 (Guarantee of Payment)<br>• Form 1-184 (Alien Crewman Landing Permit and Identification Card) |

| | | | |
|---|---|---|---|
| | | | • DHS Form I-193 (Application for Waiver of Passport and/or Visa) |
| 1.1.7 | Ship Husbandry | Vessel Guidance | Advise the Vessel, prior to its arrival, of all necessary documents (Customs, Immigration, Agriculture, Health, Sanitation and any other governmental authorities) required in order to minimize delays. Provide guidance to the vessel's officers, crew, and guests regarding disembarking clearance procedures with local Customs and Immigration. |
| 1.1.8 | Ship Husbandry | Waste Removal Coordination | For domestic calls, arrange appointment(s) between Customs Border Protection (CBP)/USDA inspector and vessel during the off-loading of any waste, including without limitation APHIS waste. |
| 1.1.9 | Ship Husbandry | Agent Attendance | Vessel attendance, including making a Port Agent representative available, and remaining, on-site at the pier upon the arrival of the vessel, and at any time throughout the day until the vessel's departure to handle service requests of the Master, Captain, Hotel Director, Vessel Officers or other RCL representatives. |
| 1.1.10 | Ship Husbandry | Arranging Services | Fee includes service charges for arranging needed ship services. As defined herein, "arranging" is defined as, but not limited to, provide, obtain, handle, coordinate, inform, advise, submit, supply, support, sustain, order, prepare, adapt, accommodate, perform, aid, assist, avail, furnish, help, give, and oblige, from beginning to end.<br><br>Fee includes arranging services such as pilots, tugs (only if requested or compulsory), line handlers, waste removal (all types), security services, stevedoring labor and equipment, potable water, repair technicians, etc. Only compulsory port services can be arranged by the port agent without obtaining prior authorization from RCL. Additional expenses (for example: port adviser, signalling station, port interpreter, ship agent association fees, etc.) not approved in advance and not documented as compulsory will not be reimbursed.<br><br>Fee includes arranging other miscellaneous items and services, such arranging visitor's lists, early disembarkation of luggage, cash on board formalities, and any other service as may be requested by RCL for its Vessels.<br><br>Services charges that are incremental, or in addition to the cost of providing a service, must be disclosed, presented, discussed, and agreed to by an approved requestor of the service prior to service delivery. Requestor shall not be obligated to accept the cost of service or service fee(s) quoted by Agent. Requestor retains the right to negotiate any and all service fees prior to the rendering of services. |
| 1.1.11 | Ship Husbandry | Fuel Bunkering | Fee includes service charges for arranging and coordinating all aspects related to fuel bunkering, including arranging permitting if necessary. Arranging the collection and courier or samples is not covered by the Basic Services Fee and should be arranged directly with the proper department. Costs related to sending samples shall be covered in Section 1.4 Other Services. |
| 1.1.12 | Ship Husbandry | Arranging Services | Services or products requested by RCL (vessel or shore) that are not governed or covered by a previously agreed upon fee structure or contract (if unsure if one exists, please ask requestor or contact Port Operations) require a cost quote and approval prior to rendering service. Services must be requested via ERS, RCCL's electronic requisition system. ERS replaces the manual request process using the Port Agent Request Form (known as a "PARF"). The process for providing services and obtaining reimbursement is:<br>1. Requester (ship or shore) initiates request for service via RCL's electronic requisition system – ERS, which is used to request products or services. Request is sent electronically to Agent.<br>2. Agent obtains quote or approximate expected cost, including taxes that may apply, and provides back to requestor via ERS system.<br>3. If quote is accepted, requestor obtains proper approval (signature). Ship approvers are Master, Staff Captain, Hotel Director, and Chief Engineer. Shoreside approvers are designated department approvers.<br>4. Agent renders services at cost without any service fee.<br>5. Requestor (person or department requesting the service or product), via ERS system, acknowledges receipt of product or service. Unless acknowledged, invoice cannot be processed for payment.<br>6. Agent generates request for reimbursement via IMS by submitting supporting documentation, which is routed to requesting department for review and processing for payment.<br>7. RCL validates and pays invoice. |

KB

| | | | |
|---|---|---|---|
| 1.1.13 | Ship Husbandry | Local Representation | Agent shall maintain in good standing the relationship between RCL and the local authorities, and any other Governmental or Statutory authority as required by National and/or Local regulation or Law, at all times, and coordinate and assist ship's officers during any inspection performed by governmental and quasi-governmental agencies before, during and after the port call, providing support as needed and according to the situation. An example of such service could be PSC Inspection, Registry visits, etc. |
| 1.1.14 | Ship Husbandry | Local Representation | Serve as advocate on all local, state, regional, national governmental or private authority matters that potentially impact the vessel, RCL, our guests. The Agent is expected to proactively serve the best interests of RCL and its vessels at all times. |
| 1.1.15 | Ship Husbandry | Reporting | At Port Operation's direction and instruction, complete and submit to Port Operations a vessel call report upon ship's departure. Failure to provide report may result in withholding of agency fee for call, and possible termination of contract. |
| 1.1.16 | Ship Husbandry | Agent Travel, En-route Clearance, and No Local Agent | Fee includes travel expenses, including meals, time, transportation (air, land or sea) and lodging for Agent or Contractor to reach the ship's berth, terminal, any other office, authority, building and or facility involved with the ship's call. This includes relocating a Port Agent to attend the vessel at any contracted port where the Agency has no local representation, or there is no subagent, or in cases where agent must join the vessel in a previous port (domestic or foreign) to perform or oversee en-route clearance) Fee includes ENS/EXS formalities, and all costs will be reimbursed based on actual expenses supported by receipts. |
| 1.1.17 | Ship Husbandry | Permitting | If agreed to in advance and support by a rate structure, assist and arrange any special work that is extraordinary and unusual, such as welding works (hot works), mechanical works and any other similar work that is provided through the port agent. Includes arranging and granting access on board the ship of RCL staff, technicians, vendors and clients (any third party cost will be reimbursed by the third party or as arranged by RCL). |
| 1.1.18 | Ship Husbandry | Tariffs Changes | Advise RCL of all potential or declared port tariff increases as they occur and work individually or with an association to mitigate the increase for RCL's benefit. |
| 1.1.19 | Ship Husbandry | Supporting Documentation | Agent shall provide all supporting documentation for expenses submitted regardless of vendor. |
| 1.1.20 | Ship Husbandry | Compliance | At RCL's direction, Agent shall assist RCL's Compliance and Audit Departments in cases where additional clarification is needed on expenses, transactions, tariffs and cost calculations. |
| 1.1.21 | Ship Husbandry | Operations Planning | Participate in advance planning with vessel staff/corporate office prior to first call and periodically during season as requested. |
| 1.1.22 | Ship Husbandry | Visa, Work Letter, and Other Documents | Fee includes coordination of any documentation arrangements (as needed), including (but not limited to): documents, stamps, applications, work letters, immigrations documents, safeguarding, embassy letters, guarantee letter, letter of invitation, letter of invitation no show, LOE Letter of Employment, LOI, no shows; OTB - Ok To Board letter; shore passes for crew subject to visa, without limitation to the number of passes issued. For documentation pertaining to crew, unless separately arranged with Crew Department for specific services, documentation services contained herein shall be included in cost of agency fee. |
| 1.1.23 | Ship Husbandry | Communication Costs | Fee includes all communication costs (fax, e-mail, cell phone, courier fees, postage, etc.). |
| 1.1.24 | Ship Husbandry | Bank Fees | Fee includes bank fees (e.g., wire transfer fee, etc.) to process money received from RCL, or other party on behalf of RCL. Fee also includes full processing, customs clearance and delivery of cash to master to the ship as requested by RCL or vessel's officers. Inclusive of security guards where requested/compulsory (security costs are reimbursed when utilized). Fee does not include government tax or tariff on foreign exchange transactions. Such fee must be noted in advance and detailed on invoices submitted for reimbursement, including supporting government documentation which governs the tax, and rate it is calculated. |

| | | | |
|---|---|---|---|
| 1.1.25 | Ship Husbandry | Payments To 3rd Parties | Make and/or facilitate all legal payments required or authorized by the vessel and RCL with respect to:<br>i) Payment in full regarding all port services in the time frame set by the applicable port and local authorities and other port service providers;<br>ii) Payment for special services as requested by the Vessel or RCL not related to the Other Services (as set for in Section 1.3 Description of Other Port Agent Services), such as fines, emergency repairs or provisions, etc.<br>So long as RCL has paid Port Agent within required timeframe for services rendered, Port Agency shall be liable for any charges related to late payments of RCL invoices to third parties.<br>No payments for fines shall be reimbursed unless such payment was approved in advance by RCL. No Port Agent commission shall be added to RCL fines paid by Port Agent. |
| 1.1.26 | Ship Husbandry | Prefunding | Agents shall notify RCL of expenses that require advance funding as per law or tariff, and provide RCL with supporting documentation of said requirements; or as mutually agreed upon between Agent and RCL. |
| 1.1.27 | Ship Husbandry | Use of RCL Funds | Agent shall only use RCL funds paid by Port Operations for port services incurred or arranged on behalf of RCL by the Agent. Agent shall track all payment amount(s) and date of payment(s) made to vendors or 3rd parties servicing RCL vessels or providing services to RCL. RCL reserves the right to audit payments to 3rd parties made by the Agent on RCL's behalf. Agent shall not use Port Operations funds to pay for any other monies owed by other RCL Department's. Any unauthorized use of RCL Port Operations department funds may result in immediate termination. |
| 1.1.28 | Ship Husbandry | Discounts, Rebates, Refunds | Agent shall notify RCL of rebates, refunds, discounts, or any other financial benefit RCL has earned or is entitled to as a result of vessel or company operations, including those yielded by Port Agent's individual efforts (all rebates, refunds, and discounts received by Port Agent shall be provided to RCL). Agent shall return any earned financial benefit without delay. Agent shall not withhold for any reason funds or monies due or owed to RCL, and Agent shall not net monies owed to Agent for services rendered and owed by RCL unless agreed upon with RCL in advance. Withholding of funds may result in termination and legal action against Agent. |
| 1.1.29 | Ship Husbandry | DA Expense Submission | Fee includes all courier and/or postage fees necessary to send RCL call invoices to RCL, including any resubmission of copies of invoices or documentation. |
| 1.1.30 | Ship Husbandry | DA Submission | Port Agent shall utilize (RCL will train Agent) RCL's Invoice Management System (IMS) to submit ALL invoices for products and services rendered or arranged for any and all RCCL departments, unless otherwise agreed upon in advance with Port Operations. Invoices for services described in *Section 1.3 Other Services*, including crew movement, crew/guest medical, logistics, direct ship or shore requests shall be made directly to the department or entity initiating the request (*Refer to Section 1.4 Other Services Rates).* Failure to utilize IMS will result in delay of payment. Failure to submit any and all invoices for services rendered to RCCL, regardless of department, may result in immediate termination. |
| 1.1.31 | Ship Husbandry | DA Submission | Port Agent shall invoice RCL for all services rendered by Agent or 3rd parties, or vessel expenses incurred, as promptly as possible after they are rendered, but no later than thirty (30) days after each <u>ship call date</u> where such services were rendered. Agents are encouraged to submit expenses as soon as they are received from third parties to avoid payment delays. <u>IMPORTANT: RCL will not be required to pay services and products not invoiced via IMS to RCL within twelve (12) months after the date such services and products are performed.</u> |
| 1.1.32 | Ship Husbandry | Payment Currency and Rate of Exchange | RCL will settle all invoices in the currency invoiced, unless otherwise agreed upon in advance, and as documented in Section 1.2. Agent understands and accepts that arranging and providing services, and receiving payments in other currencies other than the one submitted, can result in exchange rates risk. For all invoices submitted through RCCL's Invoice Management System (IMS), the market exchange rate for the call date (if multiple days in port, the exchange rate for the first day in port will be used) will be applied as provided by <u>www.XE.com</u>, an independent 3rd party provider of global currency rates. In the event that the exchange rate within IMS is not used and Port Agent uses a non-agreed upon exchange rate to convert local charges to payment currency to be paid by RCL, Port Agent may be subject to termination unless agreed upon in advance. Port Agent shall repay RCL for any overpayments due to use of unauthorized exchange rate(s). If required by national or bank law that Agent must use the central bank rate, or other required official rate, Agent shall covert expense from local currency to invoice currency (as agreed upon in |

| | | | |
|---|---|---|---|
| | | | advance) using the official rate required by law, and shall include with the submission official bank documentation or tariff that evidences the exchange rate from local currency to USD for the date(s) in which the expense was incurred, if other than the call date. For multi-call days in port, Agent shall apply the official exchange rate as it occurred on the first day of the call. Agent must also provide RCL with the central bank, or exchange rate source bank, website URL that provides the official rate of exchange (ROE) from local currency to USD for the date of the call, or incurrence of the expense being submitted for reimbursement. |
| 1.1.33 | Guest and Crew Medical | CARE Team | Agent shall understand the role and responsibilities of the Royal Caribbean Cruise Lines, CARE Team. The CARE team is a group of professionals, under medical direction, who are able to support guests and crew members who are in the process of being disembarked from the vessel due to a medical emergency or other crisis, such as a psychiatric emergency or sexual assault. Agent shall ensure that they have current 24 hour contact information (please refer to *Exhibit C– General Operations Contact List*) for the RCL CARE Team. |
| 1.1.34 | Guest and Crew Medical | Coordination of Services | From time to time as needed, unless otherwise agreed upon and documented separately, agent shall at no extra charge, and as part of agency fee:<br><br>• Coordinate medical appointment with specialist per ship request (crew or guest medical referral)<br>• Coordinate transportation to/from medical appointment<br>• Procure/obtain prescription of medication not available onboard (pick-up/ purchase/delivery)<br>• Coordinate ground ambulance as requested by ship medical facility/crew medical / Care Team<br>• Coordinate hotel accommodations for crew, guests, relatives or Care Team Associates (CTAs), if applicable<br>• Coordinate ground transfers between hotel and hospital for crew, relatives of guests or CTAs<br>• Coordinate with Crew Medical or Care Team in arranging transfer home or to rejoin ship in other port<br>• Secure and submit medical records/reports to ship, Crew medical department or Care Team<br>• Provide phone card / pre-paid phone at rate specified by Crew Medical department or Care Team (Phone card at cost)<br>• Assistance with luggage and fees as approved by Crew Medical department or Care Team (pick-up/delivery-transportation at cost).<br>• Arrange emergency medical transportation (see Section 1.1.34)<br>• Coordinate medical parole / re-parole / customs and immigration clearance of disembarking crew, guest, relatives and/or Care Team Associates (CTAs)<br>• Assist/Communicate with Crew Medical or Care Team with coordination of medical air ambulance (RCL will order, quote, negotiate rates for air ambulance)<br>• Where necessary and appropriate, obtain the sanction/approval of the local port health physician or public health agency, where the medical reason for disembarkation may involve a disease or illness of public health concern. Such sanction/approval may require the involvement of the RCL Medical & Public Health Department and so the port agent should retain the 24 hour contact information for the Medical Operations Department: +001-305-539-4957.<br>• Assist with deceased crew or guest (funeral home, local authorities, clearance and/or repatriation of remains). |
| 1.1.35 | | Guest/Crew Attendance/Support | Unless otherwise agreed upon and documented separately, accompany or meet guest/crew at hospital or clinic:<br><br>• If hospitalized, attend/visit/support through one visit to the patient or crew member at the hospital or clinic on the day (day 1) of disembarkation and the day after (day 2) for a total of two (2 days) of attendance. Agent shall ensure and coordinate local hotel accommodation, as needed or directed, (any incremental or additional costs shall be disclosed, discussed, and agreed upon with CARE Team, if a guest, or with Crew Medical Team, if a crew member) for family member or traveling companions.<br>• Ensure crew/guest family has the contact information for the appropriate CARE Team member and/or the number for the insurance/assistance company, who will be following up their case.<br>• If necessary, assist the patient's family with contacting the CARE team.<br>• In the event there are additional third party expenses incurred, the Medical department or |

KW

| | | | |
|---|---|---|---|
| | | | CARE team shall agree on the fee prior to the service being rendered.<br>• Assist with repatriating or returning the guest, crew, vendor, and their travel companions or family that is accompanying them, to the point of origin, or other designated gateway. |
| 1.1.36 | Guest and Crew Medical | Medical Emergencies | Agent shall assist, without condition, with medical emergencies as instructed. Agent must assist the vessel with obtaining medical assistance, whether such medical service or need exists at the Port City or not. Agent is expected to assist any and all RCL guests, crewmembers or vendors experiencing a medical emergency, and who remains after the vessel departs. Any anticipated incremental expenses incurred by the Agent in connection with the medical event shall be disclosed and discussed with RCL and crew/guest/vendor, and arrangements for paying these incremental costs shall be agreed upon in advance.<br><br>Port Agent shall use best efforts to minimize medical costs and prevent price gouging. |
| 1.1.37 | Guest and Crew Medical | Translation Services | Where needed and/or required, provide translation services and additional support, beyond that normally offered to the guests or crew member undergoing medical care. If additional professional translation is needed beyond, Agent shall discuss with RCL prior to incurring any expense, and all incremental costs shall be agreed upon prior to rendering service. |
| 1.1.38 | Crew Movement | Assisting Crew | Respond timely to requests by Crew HR and Crew Assist for assistance (regardless of whether contract exists between Crew HR and Agent). If assistance or services required are not governed by a previously agreed upon fee structure or provided for elsewhere within these scope of services, Agent shall disclose the total anticipated cost for providing the service prior to the service being delivered. Service must be requested via procurement process (ERS), or as directed by RCL. If services are non-contracted or rate for service has not been previously agreed on, Port Agent shall invoice the requesting department directly, or via IMS for reimbursement. Agent shall not charge any service fee in connection with providing the requested service. |
| 1.1.39 | Logistics | Logistics | As directed by RCL, provide support or intercede, on matters related to container movement, and deliveries and supplies to/from the vessel. As requested, play supporting role to designated logistics provider, and as needed, collaborate with provider to resolve problems. Unless Agent is contracted as the designated logistics provider, defer handling of landed goods (LGA) to designated logistics provider unless directed otherwise by vessel or Supply Chain. In the event that significant incremental effort is needed with handling matters related to logistics, Agent shall directly contact RCL Logistics representative to discuss and agree to any incremental service charges that may apply. Charges not agreed upon in advance will result in non-payment. |
| 1.1.40 | Safety and Security | Security Services | Provide or arrange all security services required by RCL at the Port City. Address any security staffing shortages with security supervisor and vessel Security Officer when detected. |
| 1.1.41 | Safety and Security | Security Plan | Become familiar with and assist with implementation of port security plan (as devised by RCL) to RCL security standards; participate in RCL security drills, exercises and training. The RCL security plan is devised and managed by RCL's Global Security Department and may include security and safety measures beyond those provided, implemented, considered or executed by the port or terminal operator. |
| 1.1.42 | Safety and Security | Assisting Law Enforcement | Cooperate with RCL, U.S. Coast Guard and other applicable government and law enforcement authorities in matters relating to the Maritime Transportation Security Act |
| 1.1.43 | Safety and Security | Security Notifications | Immediately notify RCL Global Security Department (via telephone or e-mail) whenever there is a significant change in the safety or security environment of any port-of-call for which the Port Agent is responsible. This notification will be made without regard to whether or not an RCL ship is imminently scheduled to visit that port-of-call. Examples of significant changes in the safety or security environment of a port-of-call include, but are not limited to, the following:<br>-Higher than average incidence of serious crime such as murder, shootings, robbery, rape, assault, or theft;<br>-Work stoppages, slowdowns, or strikes that may impact ship operations or tourist activities;<br>-Serious accidents impacting tourists, whether cruise related or not.<br>-Infrastructure problems that may impact ship operations or tourist activities. For example, interruptions in electrical service; disruption of communications networks; prolonged breakdowns in the transportation sector; significant road closures; shortages of basic supplies; etc. |

K3

| | | | |
|---|---|---|---|
| | | | -Medical outbreaks or environmental hazards that might affect ship operations or tourist activities.<br>-New Government warnings concerning any increased risk of terrorist activity. |
| 1.1.44 | Safety and Security | Emergency Support | Port Agent agrees to render assistance to RCL crew, guests, vendors and affiliates as needed during emergencies, regardless of their nature or duration. Port Agent will render all necessary operational, technical, manual, technological, logistical, transportation, and labor assistance needed by RCL to safely and effectively manage emergencies or contingencies that may occur. Port Agent will also interface and liaise with all government authorities to ensure emergencies are managed accordingly and they will act on the best interest of RCL and its guests and crew. Additionally, Port Agent will source and provide food and shelter for RCL guests and crew, on a best efforts basis, during any crisis requiring to. Any valid and reasonable expenses incurred as a result of providing assistance shall be reimbursed but must include detailed supporting documentation. Where possible, requesting department or entity shall request cost in advance for services or products Port Agent will supply or arrange. Invoices shall be submitted to RCL for reimbursement via IMS unless otherwise directed or agree to by RCL. |
| 1.1.45 | Safety and Security | Assisting Law Enforcement | Unless restricted or prohibited by law, Port Agent agrees that upon the request of the Ship's Master, Staff Captain, or Security Officer; Port Agent will report an alleged security incident to the appropriate local law enforcement agencies and/or Governmental authorities. |
| 1.1.46 | Safety and Security | Assisting Law Enforcement | Cooperate with RCL (including its on board security staff) and any other applicable government and law enforcement authorities in matters relating to the investigation of incidents or alleged criminal acts on RCL vessels. |
| 1.1.47 | Dry Dock | Providing Dry Dock Services | Agent shall engage RCL to discuss, plan, and provide a quote for all relevant services requested by RCL in connection with planned or unplanned dry-docks. In the event products and services are not negotiated and mutually agreed upon in advance, the terms and conditions herein shall govern until such a time that an agreed upon rate schedule is established, with automatic caps on total cost once agent provides the same service or transaction ten (10) times in a twenty four (24) hour period. Products and services rendered before such a rate agreement is in place shall be retroactively billed according to the new rate schedule. |

KB

*Section 1.2* *Basic Service Fee*

For the Basic Services described herein (*Section 1.1*), RCL shall pay a fee (the "Basic Service Fee") to Port Agent per ship call as follows:

| PORT AGENT BASIC SERVICES COST | | | |
|---|---|---|---|
| Call Type | Port Name and Country | Basic Service Fee per ship call[1] | Payment Currency |
| Turnaround Call | San Juan, Puerto Rico | 800.00 | USD |
| Transit Call | San Juan, Puerto Rico | 800.00 | USD |
| Transit Call | Ponce, Puerto Rico | 800.00[2] | USD |

[1] Second day or overnight additional fee for each ship call for San Juan or Ponce: $800.00 flat fee.
[2] Ponce attendance additional fee per ship call: $250.00 flat fee.

As new Port Cities are added to this Agreement from time to time, the above chart will be amended or supplemented to include the rates for the Basic Services agreed upon by the parties for such Port Cities.

Port Agent and RCL agree that the above rates for the Basic Service Fee are effective throughout the Term of this Agreement, including any extension.

The Basic Service Fee shall be invoiced and paid in the currency specified above and may not be adjusted during the Term (or any subsequent renewals) of this Agreement unless the parties agree to do so in writing. The Basic Service Fee is a flat fee that includes compensation for all of the Basic Services identified in this Agreement, inclusive of items specified in Section 1.1 of this Agreement, and includes any and all applicable taxes.

In connection with the invoicing of all fees under this Agreement, Port agent must follow the guidelines set forth in Exhibit D attached hereto and incorporated herein. Failure to do so will delay reimbursement of all or some of the disbursement account (DA) Port Agent submits, and may result in rejection of the submission.

*Section 1.3 Other Port Agent Services ("Other Services")*

| ROYAL CARIBBEAN CRUISES LTD. LUGGAGE | | | |
|---|---|---|---|
| Cost For Handling Piece of Luggage | | | |
| Port Name | Currency | Cost Per Piece of Luggage | Maximum Applicable Per Call Date |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| Cost For Transportation of Luggage | | | |
| Port Name | Distance To Airport (KM) | Cost Per Delivery of Luggage (See note below) | Maximum Applicable Per Call Date |
| N/A | N/A | N/A | N/A |

*Notes:*

1. The transportation of lost luggage should be optimized, charging the fewest number of transportation moves/trips possible by gathering as many pieces of luggage as possible. Transportation cost is only applicable when not paid for by airline.

2. If additional space to list port names is needed, please provide on a separate sheet and include cost per each piece of luggage and maximum cost.

KB

Port Agent shall also provide other services (collectively, the "Other Services") when requested, the actual cost of which shall, if applicable, be reimbursed by RCL to Port Agent as provided in Section 1.4 of this Exhibit A. The Other Services shall be provided directly by Port Agent or through subcontractors or subagents pursuant to written contracts or other agreements approved by RCL as provided in Section 1.11 below.

All rates and charges for Other Services shall be agreed upon by RCL and Port Agent in advance, whether such Other Services are provided by Port Agent directly or through a subcontractor or subagent. **The costs for Other Services are not covered by the Basic Service Fee and should be tracked, billed and invoiced separately as provided in Section 1.4 of this Exhibit A.** Port Agent must deal directly with the department requesting such Other Services to discuss the total cost of the service, arrange disbursement, invoice and payment procedures. Any questions regarding payment and disbursements for such Other Services must be addressed directly to the department requesting such Other Services. Attached as Exhibit C to this Agreement is a contact list for the departments that may request Other Services from Port Agent.

*Section 1.4 Other Services Rates*

For Other Services requested by RCL to Port Agent, Port Agent shall supply RCL with the total cost of providing the Other Service prior to providing the service, unless the cost for the service has been agreed upon in advance in writing between RCL and Port Agent. RCL must acknowledge and declare in writing that such rate has been accepted, and that Port Agent shall charge RCL the rate as agreed upon. Services arranged by Agent shall not incur any services fees, as stated in Section 1.1.10 Arranging Services. In the unlikely, unusual, or extraordinary event that the service requested requires a significant and uncommon level of effort or resources to provide the service, a one-time service fee may be discussed and agreed to in writing between RCL and Agent prior to the service being provided, when



GR000124

possible; otherwise, Port Agent shall not charge a service fee for performing the Other Services. Any service fee charged by Port Agent that has not been previously acknowledged and agreed upon in writing with RCL will be disputed and not paid. Rates not agreed upon in advance of the service request and not previously acknowledged and agreed upon in writing with RCL shall be subject to RCL's approval process, require a requisition via ERS to disclose all costs, obtain authorized approvals, and shall be submitted for payment with all supporting documentation related to the transaction. RCL reserves the right to contest and negotiate the price quote provided by the Agent for requested services, and RCL is not obligated to accept the services quoted by the Agent, Sub-Agent, or any other vendor. For more information on the requisition process, please refer to Section 1.1.12 (Arranging Services) of this Agreement.

Port Agent shall make all payments due to the service providers providing Other Services under Service Contracts directly. RCL shall reimburse Port Agent for the cost of all Other Services (collectively, the "Other Service Rates"), whether provided by Port Agent directly or service providers under Service Contracts. Port Agent shall invoice RCL for the Other Service Charges as promptly as possible after the Other Services are rendered, but no later than thirty (30) days after each ship call date where such services were rendered.

In connection with invoices generated pursuant to this Agreement for Other Services, Port Agent shall:

a) Follow RCL service delivery protocols for services not contracted in advance by obtaining a requisition for each service requested (For example, a request to transport a crew member from the ship to a clinic, and to also pick up medication for the crew member, would require two requisitions – one for each service if a mutually agreed upon rate structure or schedule for the type of service proposed has not been established in advance of rendering the service. Agent must submit all actual or anticipated cost information, inclusive of any incremental service fees (excluding any service fees that are covered as part of the scope of services included in Section 1.1 Description of Basic Port Agent Services, Subsection 1.1.10 Arranging Services), via ERS to the requestor for review. Requester reserves the right to accept, negotiate or reject the proposed cost of the service directly with Agent, if needed. Requestor shall obtain authorized RCL approval (approvers are limited to Master, Staff Captain, Hotel Director, Chief Engineer, and designated shoreside approver) before the Agent shall fulfill the service request(s). Requestor must acknowledge receipt of service prior to Agent submission for reimbursement via IMS. It is strongly recommended that Port Agent obtain from the requesting department the exact supporting documentation and detail needed and required by paying department to process the request for payment without delay. Failure to provide required expense details needed and required will result in a delay to process payment. RCL shall not be responsible to pay any late fees or interest on invoices delayed due to lack of required documentation.
b) Directly provide the applicable RCL department with separate disbursements (port, medical, guests/crew, etc) as instructed. The Port Operations department shall be responsible only for port expenses. Port Agent is responsible for establishing direct communication with the individual departments to address specific questions regarding any Other Services (refer to Exhibit C).
c) Maintain a statement of account for RCL invoices by disbursement type (port, medical, guest/crew, etc) to reconcile any outstanding amounts with each specific department.
d) Provide appropriate and reasonably detailed back-up documentation for any disbursements.
e) Have direct contact with individual departments within RCL to discuss invoice settlement.
f) Be paid in U.S. Dollars (USD) for crew and guest medical costs submitted for reimbursement, unless otherwise agreed upon, or arranged, in advance with RCL Medical Department.

KB

RCL shall pay the Other Service Rates reflected in such invoice within forty-five (45) days following receipt by RCL. RCL will not be required to pay Other Services Rates for any Other Services (including services performed by third party providers) that (i) exceed the cost, fees and/or charges for such Other Services approved in advance by RCL pursuant to the terms of this Agreement, (ii) were not approved in advance by RCL as required herein, or (ii) are invoiced to RCL more than twelve (12) months after the date such Other Service is performed.

Port Agent from time to time may be asked by the Vessel to purchase or arrange personal items/services for the Vessel's officers and crew. Port Agent is not obligated to provide these services and will not be reimbursed by RCL for such services (or for any overtime or travel costs associated with same). Port Agent shall not be responsible for coordinating and/or shipping personal mail, packages or belongings for RCL employees and crewmembers unless Port

Agent receives sufficient money in advance from such employee or crewmember to cover the costs of shipping said items. Port Agent acknowledges and agrees that none of the foregoing personal services described in this provision shall be reimbursed by RCL under any circumstances.

*Section 1.5 Most Favored Rates*

In no event will RCL pay a greater amount for any Services rendered to RCL by Port Agent in a particular Port City than that charged by Port Agent for similar services rendered to any other cruise line generating a similar amount of volume in said Port City to Port Agent. Adjustments in the Basic Service Fee and Other Service Charges and other RCL payments necessitated by this provision shall be coordinated and implemented as reasonably requested by RCL.

*Section 1.6 Scope of Authority; Responsibility*

Port Agent shall be authorized to provide the required Services listed in Sections 1.1 through 1.4 above and use its discretion while acting in the best interests of RCL. Port Agent's scope of authority is limited to providing the Services expressly set forth in this Agreement, and representing RCL only in matters that protect the interests of RCL, its Vessels, guests and crew at all times with other local authorities and other service providers. Port Agent shall at all times act within the scope of its authority provided in this Agreement. Port Agent shall indemnify RCL for any loss of or damage to such items while such items are under Port Agent's control resulting from Port Agent's negligence or fault.

*Section 1.7 Staffing Levels and Requirements; Port Agent Personnel*

Port Agent will provide (and will cause each service provider under a Service Contract to provide) sufficient and qualified personnel to perform the Services in accordance with the terms and conditions of this Agreement. All such personnel shall be fully conversant in English and the core language of the applicable Port City, and shall be sufficiently trained in their duties and shall otherwise be fully qualified to perform Port Agent's obligations hereunder in a professional, courteous and efficient manner in accordance with RCL expectations and standards. Should an Agent not meet these specification, Agency may be required to replace said Agent with another meeting the qualifications set herein.

Port Agent at all times has the right and obligation to control all of the personnel engaged by Port Agent to perform its obligations hereunder, and the personnel are solely the employees of Port Agent. Port Agent is solely responsible for the payment of all wages, overtime and vacation pay, benefits and repatriation expenses for each of its personnel.

It shall be Port Agent's sole responsibility to assure that its personnel and the personnel of anyone at the port operating by, through or under Port Agent (including its subcontractors) have all permits required by any governmental authority in order to provide the Services.

*Section 1.8 Financial Responsibilities*

Port Agent shall be required to facilitate all payments required by the Vessel and RCL with respect to:

a) Payment in full regarding all port services in the time frame set by the applicable port and local authorities and other port service providers.
b) Payment for other services requested by the Vessel NOT related to medical and transportation services for the guests, officers and crew (for example fines, emergency repairs or provisions).

Port Agent shall obtain the least cost provider of services when bidding out services between two or more providers that offer the same level of service.

*Section 1.9* *Hours of Operation*

Port Agent will be open for business during ship calls and at all other times agreed upon between the parties in writing from time to time, consistent with the hours permitted by local authorities. Agent will provide 24 hours emergency attendance 365 days per year, and contact information for after-hours contact with designated Port Agent personnel must be provided to RCL.

*Section 1.10* *Port Agent Financial Interest in Service Providers*

Port Agent shall be held responsible to declare upon request by RCL any ownership interests in service providers that provide services to any RCL Vessels.

*Section 1.11* *Subcontracts for Additional Services or Franchising of Services*

If Port Agent intends to enter into a contract or agreement with other providers of port services for any of the Other Services (a "Service Contract" or "Service Contracts"), the following provisions shall apply:

a) Port Agent shall not engage any service provider without the prior written approval of RCL, and each Service Contract shall likewise be subject to the prior written approval of RCL. Without limiting the generality of the foregoing, Port Agent shall submit to RCL evidence of the ownership, qualifications and financial wherewithal of each service provider prior to or contemporaneously with any request for approval hereunder.

b) Each Service Contract shall be in the name and at the expense of Port Agent, shall have a term not in excess of one year (whenever possible) and shall include a provision for cancellation by Port Agent with thirty (30) days written notice, without payment of a penalty or premium. Fees for services shall be agreed upon by RCL and Port Agent in advance. The Service Contracts shall not be binding on RCL unless otherwise agreed to in writing by RCL.

c) Each Service Contract shall require the service provider to transition services to the subsequent service provider in a cooperative, professional and orderly manner in the event that the Service Contract is terminated for any reason.

d) All service providers shall be required to perform the Other Services in a manner and level that meets or exceeds the quality and level of port services provided at other first class Port Cities and RCL's standards for such Additional Services.

e) All service providers shall be required to conduct the Other Services strictly in compliance with all applicable present and future laws, rules, orders, ordinances, regulations (including EU Regulation 1177/2010), statutes, requirements, decisions, codes and executive orders, extraordinary as well as ordinary (collectively, "Legal Requirements"), of all governmental and quasi-governmental authorities (including all federal; state and local authorities, and any agency, department, commission, board, bureau or other subdivision of the foregoing) with jurisdiction over the service provider or Service. All service providers shall also be required to conduct the Additional Services strictly in compliance with RCL's environmental policies and requirements.

f) Port Agent and RCL shall have the right from time to time, with or without notice, to observe and inspect service providers in the performance of the Additional Services to confirm and/or determine compliance with Legal Requirements as required herein. In addition, Port Agent and RCL shall have the further right, upon reasonable advance notice to the service provider, to audit and inspect all books, records and other information related to the Other Services provided at the Port City, including without limitation all such books, records and other information (including any information stored electronically) relating to compliance with and/or reporting requirements under Legal Requirements, and costs, expenses and other charges passed through to Port Agent under the Service Contract.

g) RCL shall be named as a third party beneficiary in all Service Contracts with the express right to enforce the provisions thereof and to exercise the inspection and audit rights provided herein. Port Agent agrees that it shall terminate any Service Contract upon RCL's request to do so, subject to the terms and conditions of such Service Contract.

h) Each Service Contract shall incorporate provisions comparable to and consistent with the "Standard Terms and Conditions" attached to this Agreement as Exhibit B.

j) Violation of RCL's compliance and ethics policies or applicable anti-corruption laws.

**EXHIBIT B**

***STANDARD TERMS AND CONDITIONS***

**Article 1. Audit Rights**

Port Agent or Contractor shall retain all books and records relating to this Agreement and the Services provided hereunder for at least two (2) years from the date of expiration or termination of this Agreement. RCL shall have the right to audit such books and records at any time during the Term of this Agreement and for a period of two (2) years after expiration or termination of this Agreement. RCL shall retain this right to audit notwithstanding any assignment of this Agreement by RCL.

**Article 2. Termination**

*Section 2.1* Either party may terminate this Agreement upon thirty (30) days prior written notice if the other party has failed to perform or observe any material term or condition of this Agreement, unless such default or breach can be and has been cured within that notice period.

*Section 2.2* Any of the following acts or omissions by Port Agent shall be considered a material breach of this Agreement and grounds for immediate termination by RCL pursuant to the provisions of this Section 2.2:

a) Withholding payment of funds for port and government fees unless instructed by RCL.
b) Withholding funds for expenses related to port service providers unless instructed by RCL.
c) Use of RCL's funds for purposes not in the best interest of RCL.
d) Application of RCL's funds to any liability or obligation other than the specific liability or obligation for which RCL has earmarked such funds.
e) Service level below RCL standards.
f) Not providing timely invoices to RCL in accordance with the terms of this Agreement
g) Abuse of the scope of authority to act in RCL's best interest when dealing with local authorities and service providers.
h) Port Agent's financial condition is such that RCL believes, in its sole discretion, that Port Agent is no longer able to effectively perform its obligations hereunder.
i) Making arrangements with third-party vendors to boost fees in vendor's invoices to RCL, or any other type of similar arrangements designed to "pad" charges paid or reimbursed by RCL for the benefit of Port Agent or other vendors.

KB

*Section 2.3* Either party may terminate this Agreement immediately upon written notice to the other party if:

a) The non-terminating party shall admit in writing its inability to pay its debts or shall make a general assignment for the benefit of creditors,
b) Any proceeding shall be instituted by the non-terminating party, or shall be instituted against the non-terminating party, seeking to adjudicate the non-terminating party a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or recomposition of it, or its debts under any law relating to bankruptcy, insolvency, or reorganization, or relief of debtors, or seeking appointment of a receiver, trustee, or other similar official for it, or for any substantial part of its properties; or
c) The non-terminating party shall take any corporate action to authorize any of the actions set forth in this subparagraph.

*Section 2.4* . RCL shall have the right to terminate this Agreement for convenience upon thirty (30) days prior written notice to Port Agent.

*Section 2.5* In the event that this Agreement is terminated for any reason, Port Agent shall transition the Services to the subsequent port agent and/or service provider(s) in a cooperative, professional and orderly manner to enable a smooth transition of all such services without interruption or hindrance to RCL's business.

*Section 2.6* Upon any termination set forth above, RCL shall have no further obligations under this Agreement.

**Article 3. Vessels**

Port Agent acknowledges that RCL, in its sole discretion and without liability to Port Agent, may change the itineraries of any of its vessels or remove any of them from service at any time. RCL may sell or charter any vessel to bona fide unaffiliated third parties, or otherwise remove the vessels from the cruise trade. Upon such removal, this Agreement shall terminate with respect to any of RCL's rights or obligations relating to that vessel. Reimbursement of the service fees incurred by the Port Agent before the notification of the removal of the vessels are owed by RCL.

**Article 4. Insurance**

*Section 4.1* Port Agent shall maintain, during the term of this Agreement and at its own expense, the following types of insurance bearing the characteristics and in the amounts specified below with insurers of recognized responsibility, licensed to do business in the applicable state/country, and having at least an AM Best's rating of A 8, a Standard & Poor's rating of A, or a Moody's rating of A2. If any work provided for or to be performed under this Agreement is subcontracted, Port Agent shall require the subcontractor(s) to maintain and furnish it with insurance equivalent to that which is required hereunder from Port Agent by RCL.

a) General liability insurance on a comprehensive basis, including contractual and marine liability, in an amount not less than $5,000,000 combined single limit.
b) Business automobile liability insurance that includes coverage for owned, hired, leased, rented and non-owned vehicles for a minimum of $1,000,000 combined single limit per accident.
c) Crime Insurance which covers at a minimum employee dishonesty with a minimum of $50,000 per occurrence, and/or Port Agent (and any permitted subcontractor(s)) agrees to indemnify RCL for any theft or loss of property (for which they are legally liable) which occurs while such property is in Port Agent's (or subcontractor's) care, custody or control.
d) Worker's Compensation and Employer's Liability Insurance. The coverage provide shall meet the following minimum standards:

    i. Workers' Compensation - Statutory limits
    ii. Employers' Liability:
        Bodily Injury by Accident: $100,000 each accident
        Bodily Injury by Disease: $500,000 policy limit
        Bodily Injury by Disease: $100,000 each employee; and/or proof of government-funded coverage for work-related accidents.

e) Protection and Indemnity coverage if Port Agent or any of its subcontractors is operating any vessels or other watercraft.
f) U.S. Longshoremen and Harbor Workers coverage, and Maritime Employer's Liability coverage.
g) D&O coverage.

*Section 4.2* Port Agent will submit to RCL a standard "Acord" insurance certificate (or such other form as may be acceptable to RCL) signed by an authorized representative of such insurance company(ies), certifying that the insurance coverage(s) required hereunder is (are) in effect for the purposes of this Agreement. Said insurance certificate shall certify that prior to any cancellation or termination of such coverage(s) the insurance company will endeavor to provide at least thirty (30) days advance written notice to RCL.

*Section 4.3* All policies of Port Agent (and any permitted subcontractors, if applicable), except for Workers' Compensation Insurance, shall name RCL and its subsidiaries and affiliates as Additional Insured as respects work

performed under this Agreement. Furthermore, all policies of Port Agent (and any permitted subcontractors, if applicable) shall provide a waiver of subrogation in favor of RCL and its subsidiaries and affiliates.

**Article 5. Indemnity**

Each party agrees to hold harmless and indemnify the other party, and its subsidiaries, affiliates, shareholders, directors, officers, agents and employees against any loss, liabilities and expenses (including attorneys' fees and costs) arising from any third party claims, suits or proceedings which arise out of, or in the course of the performance under this Agreement, or the failure of the other party to carry out its obligations under this Agreement, or rising out of the acts or omissions of the other party, its respective employees, other agents or invitees in any way relating to the Services. The indemnifying party shall defend all suits brought upon such claims and bear all costs and expenses incidental thereto (including attorney's fees); but the indemnified party shall have the right, at its option, to participate at its own expense in the defense of any such suit without relieving the indemnifying party of any obligation hereunder. This provision shall survive the termination of this Agreement.

**Article 6. Limitation of Liability**

The parties agree that in the event either breaches this Agreement, no party will be entitled to recover consequential, indirect or special damages.

**Article 7. Liens**

Port Agent agrees that neither Port Agent nor its employees nor any subcontractors or third party service providers shall have the right to assert maritime liens on, or actions *in rem* against any RCL vessel for any matter arising in connection with this Agreement, including actions under the Jones Act. In consideration of Port Agent's waiver of this lien, RCL shall promptly settle all outstanding balances due agent upon receipt of account renderings (i.e. invoices) within forty-five (45) days of receipt, except as otherwise provided in Exhibit A. Any items in dispute must be advised within seven (7) business days and shall not inhibit remittance of sums not in dispute. It is the desire of both parties to have all port call accounts fully settled within ninety (90) days of sailing, subject to the terms of Exhibit A.

**Article 8. Subagents/ Third Party Vendors**

In the event Port Agent subcontracts any of the Services to a subagent or other third party vendor, Port Agent shall contract directly with such subagents and vendors and shall at all times be solely responsible for the obligations and fees incurred thereunder (including after the termination of this Agreement). Port Agent agrees to hold harmless and indemnify RCL against any loss, liabilities and expenses (including attorneys' fees and costs) arising from any third party claims, suits or proceedings which arise out of, or in the course of the performance of, any subagent or vendor contract. This provision shall survive the termination of this Agreement.

**Article 9. Relationship of the Parties**

The relationship of the parties to this Agreement shall be and at all times shall remain one of an independent contractor and the parties agree that this Agreement does not in any way create a partnership or joint venture relationship between RCL and the Port Agent. Except as may be specifically provided herein, RCL reserves no control over Port Agent, or any of Port Agent's employees, subordinates or associates as to how the Services to be rendered by Port Agent hereunder should be performed.

Port Agent shall be solely responsible for all salaries, employee benefits, social security taxes, federal and state unemployment insurance and any and all similar expenses or taxes relating to Port Agent or its employees or agents. Neither Port Agent nor its employees or agents shall be entitled to participate in, or to receive any benefits from RCL employee benefit or welfare plans, specifically including but not limited to coverage under RCL's workers' compensation program. Neither Port Agent nor any of its employees or agents are employees of RCL.

**Article 10. Representations**

*Section 10.1* Each party warrants and represents that:

a) It is duly organized, validly existing and in good standing.
b) It has all necessary power and authority to execute and deliver this Agreement, and to perform its obligations under this Agreement.
c) This Agreement constitutes a valid, legal and binding obligation, enforceable against it, in accordance with its terms.
d) The execution, delivery and performance of this Agreement will not constitute a violation of any law, rule, regulation or court order applicable to it.
e) It is adequately financed to meet any financial obligation it may be required to incur hereunder.
f) It has obtained all licenses and permits as may be required by any competent governmental or administrative authority (collectively, the "Licenses") to observe and perform the terms, covenants, conditions and other provisions on its part to be observed or performed under this Agreement.
g) It shall maintain the Licenses throughout the Term of this Agreement.
h) It has obtained all necessary consents, permissions or releases, and will timely make all payments to third parties that may be required to provide the Services as contemplated by the terms of this Agreement.

*Section 10.2* Port Agent hereby warrants and represents to RCL that:

a) It has the experience, staff, skill and authority to perform the Services;
b) It is adequately financed to meet any financial obligation it may be required to incur hereunder;
c) It has obtained all licenses and permits as may be required by any competent governmental or administrative authority (collectively, the "Licenses") to observe and perform the terms, covenants, conditions and other provisions on its part to be observed or performed under this Agreement;
d) It shall maintain the Licenses throughout the Term of this Agreement;
e) It has obtained all necessary consents, permissions or releases, and will timely make all payments to third parties that may be required to provide the Services;
f) There is no actual or potential conflict of interest between the Services to be performed by Port Agent under this Agreement and Port Agent's family, business, financial or other interests, and Port Agent shall immediately notify RCL of any actual or potential conflict of interest of which Port Agent becomes aware during the Term of this Agreement;
g) It will not engage any employee of RCL or any RCL affiliate to perform any part of the Services; and
h) It has no commitment, express or implied, with any other person, firm or corporation that is in conflict with the terms, conditions and understandings contained in this Agreement.

**Article 11. Confidentiality; Privacy**

*Section 11.1* Confidentiality. The terms and conditions of this Agreement and any information and data of any nature including, but not limited to, proprietary, technical, business plans, customer lists, pricing information, operating plans and all record-bearing media containing or disclosing such information and techniques furnished by RCL to Port Agent in connection with this Agreement shall be deemed confidential information and shall not be disclosed by Port Agent to any third party without RCL's prior written consent. This provision shall survive the termination of this Agreement.

*Section 11.2* Privacy.

a) Port Agent shall comply with all privacy and security laws, including without limitation any data protection laws and regulations, applicable to Port Agent in the processing of Personal Data under this Agreement. The term "Personal Data" means any information relating to an identified or identifiable natural person, in any form, format or media (including paper, electronic and other records) that Port Agent has access to, obtains, uses, maintains, or otherwise handles in connection with the performance of the Agreement. Examples of Personal Data include, but are not limited to, an individual's name, address, email address, date of birth, IP

address, bank and payment details, preferences as well as sensitive personal data including, but not limited to, disability, sexual orientation, political affiliation and personal preferences. If RCL provides to Port Agent any Personal Data relating to an individual, RCL shall at all times be the owner of that Personal Data and Port Agent may only process such Personal Data for the purpose(s) set forth in the Agreement.

b) Port Agent shall at all times during the term of this Agreement utilize and maintain appropriate technical, organizational and security measures to ensure the safety and security of such Personal Data. Port Agent shall not share, sell, publish, or give away such Personal Data to any third parties (including subcontractors or sub-processors) without RCL's express written consent. Unless RCL indicates otherwise, Port Agent shall destroy or return all records of such Personal Data on demand by RCL, on completion of any services and/or earlier termination of this Agreement. If Port Agent fails to adhere to the requirements in this Section 11.2, Port Agent shall defend, indemnify, and hold RCL harmless from and against any Losses (as defined herein) that RCL may incur arising out of or related to Port Agent's failure to adhere with these conditions. The term "Losses" means fines, penalties, charges, costs, expenses, compensation, damages, and fees (including attorneys' fees).

*Section 11.3* <u>Data Protection</u>. The parties recognize that Personal Data may be Transferred (as defined in Exhibit E) for the provision of services under this Agreement. The parties further recognize the data protection requirements for Personal Data in the European Union (EU) General Data Protection Regulation 2016/679 (the "GDPR") may apply to the Processing of Personal Data under this Agreement. Accordingly, the parties agree to the terms and conditions set forth in the Processor Addendum, attached to this Agreement as Exhibit E.

**Article 12. Miscellaneous**

*Section 12.1* <u>Governing Law; Arbitration</u>. Any disagreement regarding the interpretation or the operation of this Agreement shall be determined by final and binding arbitration under the rules of the American Arbitration Association ("AAA"). The arbitration shall be conducted in Miami, Florida before a panel of three arbitrators. One arbitrator shall be selected by each of the parties and the third arbitrator shall be selected by the two arbitrators designated by the parties. Each Party shall bear its own costs and expenses in preparing for and participating in the arbitration hearing except that each Party shall pay one-half of the compensation payable to the arbitrators, one-half of any fees to the AAA and one-half of any other costs related to the hearing proceedings. The arbitration award shall be in accordance and consistent with applicable and governing laws of the State of Florida, and shall be final and binding on the parties, and judgment on the award may be entered in any court having jurisdiction.

*Section 12.2* <u>Assignment</u>. Port Agent shall not assign or otherwise transfer, either explicitly or by operation of law, any right or interest in this Agreement nor delegate any duty owed hereunder without the express written consent of RCL. Any such attempted assignment or delegation shall be wholly void and totally ineffective for all purposes. Any change in control of Port Agent, whether by merger, stock or asset acquisition, or otherwise, will be deemed to be an attempted assignment of this Agreement and will be grounds for termination. Any attempted assignment or transfer by Port Agent without RCL's prior written consent, whether voluntary or involuntary, is void and grounds for termination of this Agreement with immediate effect. RCL may, however, without Port Agent's consent, transfer or assign this Agreement.

*Section 12.3* <u>Compliance with Laws and Regulations</u>. Port Agent shall comply with all laws, regulations (including EU Regulation 1177/2010), codes or ordinances established by the governmental and administrative authorities that govern or apply to Port Agent's performance under the Agreement.

*Section 12.4* <u>Invalidity of Provision</u>. If any provision of this Agreement is invalidated or voided by operation of law, all remaining terms and conditions will remain binding and the Agreement enforceable, unless such change materially alters this Agreement. If such material alteration occurs, the parties hereto may either terminate this Agreement and be excused from all remaining responsibilities and obligations, or enter into a new agreement.



[illegible]

GR000132

*Section 12.5* Waiver. A failure or delay by any party to require strict performance or enforcement of any provision of this Agreement or a previous waiver or forbearance by such party to any performance or provision shall in no way constitute or be construed as a waiver or continuing waiver of any provision of this Agreement by such party.

*Section 12.6* Headings. The headings in this Agreement are for purposes of reference only and shall not in any way limit or otherwise affect the meaning or interpretation of any of the terms of this Agreement.

*Section 12.7* Notices. All notices, request, demands or other communications hereunder will be deemed given upon delivery and will be delivered personally or sent by overnight mail, facsimile or certified mail, return receipt request, to the parties at the addresses for each party set forth in the preamble to this Agreement. For notices sent to RCL, a copy shall be sent to:

General Counsel
1050 Caribbean Way
6th Floor
Miami, FL 33132-2096
Fax: 305.539.0562

Any of the above addresses may be changed on written notice. Any notice given by facsimile or teletype which is received after 4:45pm local time of the recipient shall be deemed given the following business day.

*Section 12.8* Entire Agreement; Modification. This written Agreement, including any Exhibits hereto, constitutes the entire Agreement between the parties. All prior negotiations, agreements, proposals, statements, understandings and communications, whether written or oral, are merged in this Agreement and superseded by it. There are no representations, warranties or obligations by any party to the other except those set forth in this Agreement. Except as expressly provided herein, the terms of this Agreement may not be waived, altered, modified, amended or supplemented in any manner whatsoever except by a written document duly executed by both RCL and Port Agent.

K3

*Section 12.9* Supplier Management System; Fee(s). Port Agent consents to registration with, and monitoring on, RCL's third-party supplier management system. In connection therewith, RCL may require Port Agent to incur an annual fee. Port Agent will incur the fee upon registering with the supplier management system and annually thereafter. If the fee cannot be collected from Port Agent within a reasonable time, RCL, in its sole discretion and without prior notice to Port Agent, may deduct the fee from any invoice issued by Port Agent pursuant to, or any amount due Port Agent under, this Agreement. The fee is non-refundable; Port Agent will not be reimbursed the fee, or any portion thereof, if its business relationship with RCL ceases, including by termination by RCL.

*Article 13.* **Anti-Bribery Provision.**

Port Agent represents, warrants and agrees that it, its subcontractors and agents: (a) will comply with all anti-corruption laws applicable to its business operations; (b) has not and will not offer, promise, give or authorize the payment of anything of value (e.g. cash or cash equivalents, gifts, travel and entertainment, stock, offers of employment, etc.), directly or indirectly, to any Government Official with the intention of inducing him or her to engage in improper or unlawful conduct or to secure an improper business advantage; (c) has not and will not make facilitation payments or "grease payments" to Government Officials or others in a position of authority to expedite routine non-discretionary government or lawful actions (e.g. processing permits, visas and licenses, scheduling inspections, clearing customs, etc.); and (d) has not and will not offer, promise, give, request, receive or accept anything of value, directly or indirectly, to or from any person for the purpose of influencing, inducing or rewarding the improper performance of an act or decision. For purposes of this clause, the term "Government Official" means any (a) officer or employee of government, department, agency, or instrumentality of a government (government-controlled enterprise); (b) officer or employee of a public international organization; (c) political party or party official; (d) candidate for political office; or (e) other person acting in an official capacity. Port Agent agrees that failure to comply with this section will constitute a material breach of this Agreement.

Port Agent hereby agrees to complete and submit to RCL on a biennial basis RCL's Anti-Bribery Compliance Certification Form, upon request by RCL.

If Port Agent subcontracts any of the Services to a subagent pursuant to Article 8, Port Agent will notify, in writing, the subagent of the above Anti-Bribery Provision and obtain a written assent of the subagent of such provision. Where a written agreement exists between Port Agent and the subagent, Port Agent will include similar anti-bribery representations as a material term of that agreement.

**Article 14. Fair Labor Practices.**

RCL is committed to ensuring that its workers and employees and those of its contractors and suppliers be treated with dignity and respect, and in accordance with fundamental fair labor principles as recognized by the International Labor Organization core conventions on Labor Rights. Accordingly, Port Agent agrees that it: (i) shall not use forced labor, whether in the form of prison labor, indentured labor, bonded labor or otherwise; (ii) shall not use any child labor; (iii) should treat its employees with respect and dignity and shall not subject them to any physical, sexual, psychological or verbal harassment or abuse; (iv) shall not discriminate in respect of employment and occupation and shall be committed to attracting and developing a diverse, motivated and dedicated workforce without regard to race, color, age, religion, gender, sexual orientation and disability; (v) shall provide its employees safe and healthy working environment with opportunities to express their opinions without fear of retaliation; (vi) shall recognize and respect the right of its employees to freedom of association and collective bargaining; (vii) shall guarantee that its employees receive fair compensation and benefits in accordance with applicable law and/or union negotiated agreements; and, (viii) shall not require its employees to work more than legally permitted limits.

**Article 15. OFAC/ Export Control**

K3

Port Agent represents, warrants, and agrees that neither it, nor any person that Port Agent engages to provide services for or on behalf of RCL, will present business to RCL, or otherwise provide services or engage in transactions on RCL's behalf that (i) involve persons, countries or dealings targeted by Economic Sanctions, or (ii) cause RCL to be in violation of Economic Sanctions.

For purposes of this provision, "Economic Sanctions" means (i) prohibitions and asset-blocking requirements implemented pursuant to the U.S. International Emergency Economic Powers Act and related executive orders and regulations, including prohibitions against commercial and financial transactions with Cuba, Iran, Sudan, North Korea and Syria and with any person or entity named on the U.S. Department of the Treasury's Office of Foreign Assets Control List of Specially Designated Nationals and Blocked Persons, and (ii) prohibitions and asset-blocking requirements authorized under regulations or measures implemented by the European Union and its Member States.

**Article 16. Due Diligence**

RCL conducts appropriate due diligence of RCL port agents. Port Agent shall comply with RCL's due diligence procedures as instructed by RCL. All information provided by Port Agent in connection with the due diligence procedures shall be complete, truthful and accurate, and Port Agent agrees to inform RCL if any responses to RCL's due diligence inquiries change during the term of this Agreement. Port Agent shall require its subagents performing Services in connection with this Agreement to comply with and complete RCL's due diligence procedures or other similar vetting process chosen by Port Agent that is previously approved by RCL. Port Agent shall notify RCL of any red flags identified during the due diligence process.

If, through the due diligence process or through performance of the subcontracted services, Port Agent knows, reasonably suspects or has reason to believe that the subagent is being or has been investigated, charged, prosecuted or convicted for bribery, corruption, or fraud or violation of applicable anti-bribery laws and regulations, including, but not limited to the U.S. Foreign Corrupt Practices Act and the U.K. Bribery Act, Port Agent shall immediately notify RCL and discontinue use of the subagent.

**EXHIBIT C**

*GENERAL OPERATIONS CONTACT LIST*

**RCL Contract Contacts**

Hernan Zini (hzini@rccl.com) – Vice President, Port Operations – (305) 982-2394
Jaime Castillo (jaimecastillo@rccl.com) – Director, Worldwide Port Operations – (954) 539-6000

**Tariff notifications should be sent to the following:**

- Matthew Isaacs (portoperationstariffupdates@rccl.com)

**Department Contacts**

1. **Port Operations**
   - Matthew Isaacs (misaacs@rccl.com) – Analyst, Port Operations – (305) 982 -2851
2. **Guest Port Service (Guest transportation and guest check-in)**
   - Erika De Cardenas (edecardenas@rccl.com) – Manager, GPS – (305) 539-4441, (Cellular) (786) 395-6909 (Cellular)
3. **CBP and Law Enforcement**
   - Ofir Bar (obar@rccl.com) – (Cellular) (305) 539-6236 Manager, Global Security
4. **Logistics or Supply Chain**
   - Doris Miranda (dmiranda@rccl.com) – Director, Global Logistics – (Cargo Handling) – (954) 517-6735
   - Robert Del Pozo (rdelpozo@rccl.com) – Logistics Manager- (Transportation) (954) 517-6730, (Cellular) 786-295-6730
   - Eric Bokobza (ebokobza@rccl.com) – Logistics Finance Manager (Invoice) – (954) 517-6734
5. **Crew Medical**
   - Carlos Martinez (carlosmartinez@rccl.com) – Manager, Risk Management – (305) 539-4241, (Cellular) (305) 389-0221
   - Lashawn Knight (lknight@rccl.com) – Manager, Crew and Guest Medical – (305) 539-6645, (305) 987-2326
   - Fabio Acevedo ((facevedo@rccl.com) – Team Leader, Crew and Guest Medical – (305) 982-4766
   - General Email – (crewmedical@rccl.com) – https://my.rccllms.com
6. **Guest Medical (Care Team)**
   - Nancy Hertlein (nhertlein@rccl.com) – Manager, Medical and Public Health – (305) 539-4076, (954) 451-6022

- Joseph Duenas (jduenas@rccl.com) – Care Team Specialist
- General Email – (careteaminvoices@rccl.com)

7. **Crew Transportation and Lodging (Travel) Services)**

- Carla Arnedo (carlaarnedo@rcclapac.com) – CAM Invoicing Lead – (954) 517-3668
- Calle Rodriguez (callerodriguez@rccl.com) – Shipboard Services Analyst – (305) 539-4574
- Matthew Pereda (mpereda@rccl.com) – Lead, Global Logistic & Vendor Management (305) 982-2038, (Cellular) (786) 757-8491
- Tanay Alonso (talonso@rccl.com) – Director, HR Operations Employees – (305) 982-4926

8. **Medical Supply**

- Jun Oishi (joishi@rccl.com) 305-539-5378- Analyst, Sr. Security, Environmental & Health

9. **Crew Lost Luggage**

- Donna Brown- (donnabrown1@rccl.com) – Lost & Found Lead – (954) 628-9260

10. **Marine Operations**

- Royal Caribbean – Leonardo Esquea (lesquea@rccl.com) – Port Manager, Global Marine (305) 539-6844, (786) 440-1642
- Royal Caribbean – Chantal Moise (cmoise@rccl.com) – Executive Secretary – (305)982-4843
- Celebrity and Azamara Cruises – Manolis Alevropoulos – AVP, Marine Operations (malevropoulos@celebrity.com) – (305) 982-2907 or (Cellular) (954) 278-1122
- Celebrity- Anna Danzig-Flowers – (adanzig@celebritycruises.com) – Executive Secretary – (305) 982-2720

11. **Hotel Operations**

- Royal Caribbean- Richard Nentwich (rnentwich@rccl.com) – Director, Hotel Operations 305-982-2508, (Cellular) 954-904-4404
- Royal Caribbean – Jacqueline Aguayo – (jaguayo@rccl.com) – Executive Administrator – (305) 982-2242
- Royal Caribbean- Michele Nyakas-Cepero – (mnyakas@rccl.com ) Executive Secretary – (305) 539-6782, (Cellular) (954) 670-9192
- Celebrity – Jason Montes DeOca (jmontesdeoca@celebrity.com) – Manger, Hotel Operations – (305) 539-6881
- Celebrity - Thomas Brady – (tbrady@celebrity.com) - Director, Hospitality- 305-420-7749, (Cellular) (954) 937-8563
- Celebrity – Alina Ocampo - (aocampo@rccl.com) – Sr. Executive Secretary – (305) 539-4167

- Azamara - Martha Owen- Vourtsis – (mowen-vourtsis@azamaraclubcruises.com) – Sr. Executive Administrator – (305) 982-2029

**Continental Shipping Inc.**

| Name | Job Title | Office Phone | Cellular Phone | Email |
|---|---|---|---|---|
| Kristian Busto | President | (787) 725-2532 | (787) 565-0922 | kbusto@continentalshipping.com |
| Daniel Threadgill | Operations Manager | (787) 725-2532 | (787) 565-0924 | operations@continentalshipping.com |
| Elizabeth Ortiz | Lead, Accounting | (787) 725-2532 | | eortiz@continentalshipping.com |

**EXHIBIT D**

*SUPPORTING DOCUMENTATION GUIDELINES*

For reimbursement of Port Operations expenses, Port Agent must follow the below guidelines. Failure to do so will delay reimbursement of all or some of the disbursement account (DA) Port Agent submits, and may result in rejection of the submission.

RCL strongly recommends that Port Agent contact its designated Port Operations point of contact to obtain guidance on documentation requirements, and what may or may not be acceptable, prior to submission of DA with the expense(s) in question. Doing so will help avoid unnecessary delays in reimbursement of submitted expenses.

For each expense, an invoice must be submitted:

1. Each invoice line item must be fairly and accurately described with a clear and legible description of the service and expense/charge.
2. The description and amount of the expense/charge must match what is on the service provider invoice/receipt.
3. If the invoice and/or supporting documentation are not made available in English, the Port Agent must provide a translation.
4. All invoice line items and supporting documentation must be reviewed by the Port Agent for "red flags" such as cash payments, facilitation payments, etc. to ensure compliance with RCL anti-bribery policies, UK Bribery Act, FCPA and other existing anti-bribery laws.
5. All expenses must be supported with an invoice or receipt from the original service provider.
6. The invoice should provide a detailed description of the services rendered and a calculation of charges for such services.
7. All expenses must be supported by law, regulation, rule, order, rate sheet, other official documentation, or documented steps taken to validate the charge directly with the service provider.
8. Invoices, vouchers, receipts and other documentation should contain the service provider's letterhead, or address and other contact information for the original service provider.
9. Invoices for Government expenses may contain a stamp from the government agency to help validate the charge/expense and distinguish it from charges/expenses originating from the Port Agent.
10. Invoices, receipts and other documentation created by the Port Agent are not acceptable as support for reimbursement of expenses paid if the services were not provided by the Port Agent.
11. All charges and expenses related to transportation, lodging and/or meals must be supported by invoices/receipts from the service provider (e.g., hotel, airline, restaurant, etc.).
12. Fees for services performed by the Port Agent must be supported by an agency invoice/receipt, including a detailed description of the services rendered and a calculation of the expenses charged for such services.
13. Quality of the invoice and supporting documents should be checked to ensure they are legible.

## EXHIBIT E

### *PROCESSOR ADDENDUM*

In connection with the Agreement, the parties acknowledge that RCL shall be the Controller of Personal Data and Port Agent shall be the Processor of Personal Data, as the terms "Controller" and "Processor" are defined in Article 4 of the GDPR.

1. **Definitions.** Any term not defined below or within this Addendum shall carry the meaning as described in Article 4 of the GDPR.

(a) **"Affiliate"** means, with respect to any entity, any other entity Controlling, Controlled by, or under common Control with such entity.

(b)**"Controller Group"** means the Controller and its Affiliates.

(c) **"Personal Data"** means any information relating to an identified or identifiable natural person (data subject) owned or provided by Controller, in any form, format or media (including paper, electronic, or other record) that Processor has access to, obtains, uses, maintains or otherwise handles in connection with the performance of the Agreement. For purposes of this definition, an "identifiable natural person" is a person who can be identified, directly or indirectly, by reference to an identifier such as name, an identification number, location data, an online identifier, or one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person.

(d) **"Personal Data Breach"** means any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data transmitted, stored, or otherwise Processed.

KB

(e)**"Processing"** means any operation or set of operations which is performed on Personal Data or on sets of Personal Data, whether or not by automated means, such as collection, recording, organization, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction, and in relation to this Agreement, as more particularly described in <u>Annex 1</u>, which is attached and incorporated herein.

(f) **"Sub-processor"** means any natural or legal person, public authority, agency or other body that Processes the Personal Data on Processor's behalf (including any Affiliate of Processor).

(g) **"Transfer"** means to disclose or otherwise make Personal Data available to a third party (including to any Sub-processor), either by physical movement of the Personal Data to such third party, or by enabling access to the Personal Data by other means.

2. **Limitation on Use.** Processor shall Process the Personal Data only (i) as needed to provide the services; (ii) in accordance with the Agreement or other documented instructions from the Controller, including with regard to any Transfers; and (iii) as needed to comply with law (in which case, Processor shall provide prior notice to Controller of such legal requirement, unless that law prohibits this disclosure). Processor shall inform Controller if Processor believes that any instructions of Controller regarding the Processing of Personal Data may not comply with the GDPR or other applicable EU protection provisions.

3. **Scope.** The duration of the Processing shall be the same as the duration of the Agreement, except as otherwise agreed to in writing by the Parties.

4. **Confidentiality.** Processor shall ensure that persons authorized to Process the Personal Data have agreed in writing to an obligation of confidentiality to maintain the privacy and security of the Personal Data, or are under an appropriate statutory obligation of confidentiality.

5. **Security.** Processor shall implement appropriate technical and organizational measures to ensure a level of security appropriate to the risk presented by the Personal Data Processing. Such technical and organizational measures shall include, as appropriate: (a) the pseudonymization and encryption of Personal Data; (b) the ability to ensure ongoing confidentiality, integrity, availability, and resilience of processing systems and services; (c) the ability to restore the availability and access to Personal Data in a timely manner in the event of a physical or technical incident; and (d) a process for regularly testing, assessing, and evaluating the effectiveness of technical and organizational measures for ensuring the security of the Processing.

6. **Personal Data Breaches.** Processor shall notify Controller in writing without undue delay whenever Processor reasonably believes that there has been a Personal Data Breach. After providing notice, Processor shall investigate the Personal Data Breach, take all necessary steps to eliminate or contain the exposure of the Personal Data, and keep Controller informed of the status of the Personal Data Breach and all related matters. Processor further agrees to provide reasonable assistance and cooperation requested by Controller in the furtherance of any correction or remediation of any Personal Data Breach, and the mitigation of any potential damage, including any notification that Controller may determine appropriate to send to affected individuals, regulators, or third parties. Taking into account the nature of Processing and the information available to Processor, Processor shall comply with, and shall assist Controller in complying with the obligations regarding Personal Data Breaches as set forth in GDPR Articles 33 and 34.

7. **Return or Disposal.** At Controller's discretion, Processor shall destroy or return all Personal Data to Controller after the end of the provision of services relating to Processing and shall destroy existing copies unless applicable European Economic Area member state law requires storage of the Personal Data. If Processor has such a legal obligation to retain Personal Data beyond the period otherwise specified by this Section 7, Processor shall notify Controller in writing of that obligation, to the extent permitted by applicable law, and shall return or destroy the Personal Data in accordance with this Section 7 as soon as possible after that legally required retention period has ended.

KB

8. **Documentation.** Processor shall maintain all records required under the GDPR, and to the extent they are applicable to Processor's activities for Controller, Processor shall make them available to Controller upon request.

9. **Audits.** Processor shall make available to Controller all information necessary to demonstrate compliance with this Addendum and the Agreement, and allow for and contribute to audits, including inspections, conducted by the internal and external auditors and personnel of Controller and regulators at Controller's cost. In the event that the Processor is found to be non-compliant with this Addendum, the Processor shall reimburse any costs and expenses incurred by Controller in connection with this audit, and any fees or costs that may be imposed as a result of the non-compliance.

10. **Sub-processors.** Processor shall not Transfer Personal Data to any Sub-processor without Controller's express prior written consent; provided, however, that Processor may Transfer Personal Data to the Sub-processor for purposes of providing the services, subject to the following conditions: (a) Processor shall maintain a list of the Sub-processors to which it makes the Transfers and shall provide this list to Controller upon request; (b) Processor shall provide Controller at least 30 days' prior notice of the addition of any Sub-processor to this list and the opportunity to object to such addition(s); and (c) if Controller makes such an objection on reasonable grounds and Processor is unable to modify the services to prevent the Personal Data Transfer to the additional Sub-processor, Controller shall have the right to terminate the relevant Processing. Processor shall, prior to any Transfer, enter into an agreement with such Sub-processor that is at least as restrictive as the Agreement, including this Addendum, which shall be provided to Controller promptly upon request. Processor shall be liable for the acts and omissions of such Sub-processor to the same extent Processor would be liable if performing the services of each Sub-processor directly under the terms of this Addendum.

**11. Processor Assistance.** Processor shall assist Controller by appropriate technical and organizational measures, taking into account the nature of the Processing with Controller's obligation to respond to data subjects' requests to exercise their rights, including their rights of access, correction, objection, erasure and data portability. Taking into account the nature of the Processing and the information available to the Processor, Processor shall assist Controller in meeting its compliance obligations regarding: (i) ensuring the security of the Personal Data; and (ii) carrying out privacy and data protection impact assessments and related consultations of data protection authorities.

**12. Cross-Border Data Transfers.** Processor shall ensure that Personal Data is not Transferred to any country other than those specified in the Agreement unless Controller agrees in writing. Processor shall comply with the applicable cross-border data transfer requirements set forth in the GDPR.

**13. Survival.** Processor's obligations under this Addendum shall continue for so long as Processor continues to have access to, is in possession of, or acquires Personal Data, even if the Agreement between Processor and Controller has expired or has been terminated.

**14. Controller Group.** In addition to the Controller, any member of the Controller Group that benefits from the provision of services under the Agreement may enforce the terms of this Addendum against the Processor as if it were a Party to this Addendum. The Controller may assign any of its rights under this Addendum to any such member of the Controller Group.

**15. Other.** In the event any provision of this Addendum is held to be invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision of the Addendum or any other contract between Processor and Controller. Unless a provision in the Agreement is more protective of Controller, this Addendum shall control in the event of any inconsistency between the Agreement and this Addendum.

**16. Indemnification.** Port Agent shall indemnify RCL against all liabilities, costs, expenses, damages and losses (including but not limited to any direct, indirect or consequential losses, loss of profit, loss of reputation and all interest, penalties and legal costs (calculated on a full indemnity basis) and all other reasonable professional costs and expenses) suffered or incurred by RCL arising out of or in connection with the breach of the Data Protection Legislation by Port Agent, its employees or agents, provided that RCL gives Port Agent prompt notice of such claim, full information about the circumstances giving rise to it, reasonable assistance in dealing with the claim and sole authority to manage, defend and/or settle it.

**Annex 1 – Data Processing Details**

**Data Subjects.** The Personal Data relates or may related to the following data subjects:

| | Data Subject | Description |
|---|---|---|
| X | Controller employees | Employees of the Controller |
| X | Affiliate employees | Employees of an Affiliate of the Controller |
| X | Guests | Persons who booked a cruise or travel service with Controller |
| ☐ | Others | [Please specify] |

**Data Categories.** The Personal Data that is Processed or may be Processed includes the following data categories:

| | Data Categories | Description |
|---|---|---|
| X | Job related data | Surname, given name, sex, address, email address, phone number, mobile phone number, group company, area, department, cost center, portrait photo, career, tasks, etc. |
| ☐ | IT usage data | User ID, roles, rights, log-in-times, PC name, IP address, etc. |
| X | Private data | Private contact details or email address, phone number, mobile phone number, date/place of birth, identification numbers, nationality, family status, etc. |
| ☐ | Contract data | Purchased products, (financial) services, date of contract, purchase price, extras, warranties, etc. |
| ☐ | Payment and time management data | Wage group, payroll accounting, special payments, daily attendance times, absence reasons, etc. |
| X | Financial data | Payment behavior, balance sheets, scorings, bank account, credit card number, etc. |
| X | Sensitive personal data | Racial and ethnic origin, political opinions, religious or philosophical convictions, trade union membership, genetic data, biometric data for the purpose of uniquely identifying a natural person data, data concerning health or data concerning a natural person's sex life or sexual orientation, data which refer to criminal actions or the suspicion of it. |
| ☐ | Other | [Please define] |