**EXPERT REPORT**

**of**

**RICHARD BURGESS' Incident**

RICHARD BURGESS, Individually, and by and through DARREN HENZE as Guardian of the Person and Estate of Richard Burgess, incapacitated and as agent under that certain durable power of attorney dated November 20, 2006,

Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES LTD., a Liberian Corporation d/b/a ROYAL CARIBBEAN CRUISE LINE and/or ROYAL CARIBBEAN INTERNATIONAL.

Defendants.

RFI # 21SS0297

By:

**Captain Hendrik J. Keijer**

August 25, 2022

THE EXPERTS Robson Forensic

## 1.0 INTRODUCTION

Richard Wayne Burgess (BURGESS) and his spouse, Darren Lee Henze (HENZE), were passengers on board a cruise ship named *HARMONY OF THE SEAS.* ROYAL CARIBBEAN CRUISES LTD. (RCCL) managed the *HARMONY OF THE SEAS*. [1]

BURGESS sustained personal injury in the early morning hours of February 18, 2019, when he fell in his stateroom.[2] BURGESS visited the cruise ship's medical center, and following treatment, was released.[3]

The *HARMONY OF THE SEAS* docked in the port of San Juan, Puerto Rico, on February 21, when BURGESS suspected he had a stroke. The on-board 911 emergency number was called and a RCCL employee escorted BURGESS to the onboard medical center.[4] The port agent, RCCL's representative, arranged BURGESS' ambulance transport to a local hospital in San Juan.[5] BURGESS was discharged from the shore-based hospital 5 days later and flown back to home.[6]

I, Captain Hendrik J. Keijer of Robson Forensic, Inc., was retained to analyze and determine, if possible, whether the actions/inactions of ROYAL CARIBBEAN CRUISES LTD., regarding the evacuation of Plaintiff, were reasonable and to provide an analysis to the timeline of events.

I may use the following materials as exhibits to illustrate testimony: all items listed below (2.0) as available information and all items cited and footnoted in this report.

I am an associate at Robson Forensic Inc. where I am employed as a Marine Expert. Robson Forensic invoices the work associated with my investigation at a rate of $455.00 per hour. I obtained a Bachelor of Science degree as a Maritime Officer from the Amsterdam University of Applied Sciences in the Netherlands. I have approximately 25 years' professional experience in the commercial maritime industry, both at sea as Mariner and as Captain. I have worked on cruise ships and possess specialized training, skill, education, experience and knowledge regarding the on-board organization, responsibilities, and duties as well as interactions with shore-based parties including, but not limited to port agents.

---

[1] DNV classification society records for the Harmony of the Seas

[2] RCCL Documents – Initial Disclosures – Guest Injury Statement – page 24, GS000024-25

[3] Medical Consent Form; Deposition transcript of Darren Henze page 147

[4] Med Recs -5.Hospital HIMA San Pablo Caguas, Harmony of the Seas medical Center Case Summary, page 298; Deposition transcript of Darren Henze pages 187,190,197,199

[5] RCCL emails and communications re Richard Burgess, page 1, GS000087, Guest landed report page 3-4, GS000089-90

[6] Med Recs -5.Hospital HIMA San Pablo Caguas, Summary Sheet, page 8

My expertise includes working and corresponding via email with parties located in different time zones and analyzing time stamps. I have been trained in limited medical care and overseen medical centers and their personnel aboard cruise ships. I have worked closely with ship Physicians and Medical Staff. I have reconstructed and analyzed medical disembarkation processes. My seagoing career was augmented with a shore side office position as Commodore/ Director of Stability and Damage Control. As Commodore I managed and visited Captains and their teams and provided operational oversight and guidance, including, but not limited to, medical evacuations. I have collaborated with relevant shore-based cruise line departments, port agents and authorities globally in varying time zones.

In my role as Commodore, I visited and sailed aboard ships and assessed Captains and their teams on procedures including, but not limited to medical emergency response timelines.

My expertise consists of specialized cruise industry knowledge, education, and training with regards to vessel safety, industry guidelines, standards, regulations, and requirements. A copy of my curriculum vitae is attached (Exhibit A) outlining my qualifications and, in accordance with Federal Rule 26, a listing of the past 4 years of testimony (Exhibit B) with this report.

## 2.0 AVAILABLE MATERIALS

2.1 Deposition transcript of Darren Henze and Exhibits, dated September 16, 2021
2.2. Deposition transcript of Richard Burgess, dated September 16, 2021
2.3 Deposition transcript of Dr. Ben Shore, dated November 05, 2021
2.4 Deposition transcript of Dr. Joao Pereira, dated November 14, 2021
2.5 Deposition transcript of Daniel Threadgill - Colon, dated January 27, 2022
2.6 Deposition transcript of Ilene Landrum, dated June 07, 2022
2.7 Deposition transcript of Jimmie Landrum, dated June 07, 2022
2.8 Deposition transcript of Jimmie Landrum and Exhibits, dated June 07, 2022
2.9 Deposition transcript of Susan Hiatt, dated June 06, 2022
2.10 Plaintiff's answers to initial interrogatories
2.11 Second Amended Complaint for Damages
2.12 Complaint and Demand for Jury Trial Pack Et Al. v. Royal Caribbean Cruises
2.13 Job description of Royal Caribbean's Medical Director
2.14 Royal Caribbean's initial disclosures GS 1-80
2.15 Defendant Royal Caribbean Cruises Ltd. Notice of Service of Answers to Plaintiff's Initial Interrogatories
2.16 Defendant Royal Caribbean Cruises Ltd. Notice of Service of Answers to Plaintiff's Second Interrogatories
2.17 Defendant Royal Caribbean Cruises Ltd. Notice of Service of Supplemental Answer to Plaintiff's Interrogatory no.5 per Court Order [DE51]
2.18 Defendant Royal Caribbean Cruises Ltd. Response to Plaintiff's Initial Request for Production
2.19 Defendant Royal Caribbean Cruises Ltd. Response to Plaintiff's Request for Admissions

2.20 Defendant Royal Caribbean Cruises Ltd. Response to Plaintiff's Second Request for Production
2.21 Defendant Royal Caribbean Cruises Ltd. Second Supplemental Response to Plaintiff's Request for Production
2.22 Royal Caribbean's Second Supplemental Responsive Documents GR000455 – 465
2.23 Royal Caribbean Cruises Ltd Responsive Documents to Plaintiff's Initial Request for Production GR81-444
2.24 Royal Caribbean's Supp Prod to Request for Production #42 GR000447 – 454
2.25 Royal Caribbean's Supplemental Document Production GR466-545
2.26 Defendant Royal Caribbean Cruises Ltd. Supplemental Response to Plaintiff's Request for Production #42
2.27 Defendant Royal Caribbean Cruises Ltd. Supplemental Response to Plaintiff's Request for Production Pursuant to Court Order [DE51]
2.28 Defendant Request for Production to Plaintiff
2.29 Defendant's Rule 26 Disclosures
2.30 DE 63 Second Amended Scheduling Order
2.31 Photographs of the Harmony of the Seas, her medical center and the HIMA hospital
2.32 Email and communications
2.33 Harmony of the Seas Medical Center records
2.34 Ambulance records
2.35 Hospital HIMA San Pablo Caguas Medical records
2.36 Royal Caribbean Medical Center & Shipboard career videos
2.37 Royal Caribbean Doctor's Job Posting
2.38 Royal Caribbean website information - CLIA Passenger Bill of Rights, FAQ's, Guest Request for Medical Records form, Safety, Security, Health, Shipboard careers, medical career information.
2.39 United States Securities and Exchange Commission Form 10-K Royal Caribbean Cruises
2.40 Hospitals and Medical Centers in the Region of Port of San Juan
2.41 Maps with hospitals in San Juan Puerto Rico
2.42 Port Agent agreement between Continental Shipping and ROYAL CARIBBEAN CRUISES LTD.
2.43 Various emails, Guest Landed Report, passports, Guest complaint extracts

## 3.0 BACKGROUND AND DESCRIPTION OF THE INCIDENT

### 3.1 The *HARMONY OF THE SEAS* [7]

The *HARMONY OF THE SEAS* is a cruise ship built on May 13, 2016. The vessel is managed by RCCL and capable of carrying 6687 passengers and 2200 crew members. [8]

The *HARMONY OF THE SEAS* is 1181 feet long, 154 feet wide, propelled by 3 Azipod units, four bow thrusters and capable of reaching a twenty-two knot (25 mph) cruising speed. The vessel comes equipped with a medical center staffed with doctors and nurses.

The medical facility on the *HARMONY OF THE SEAS* offered limited professional medical services through licensed physicians and nurses. When a patient required treatment beyond what could be provided onboard, a patient would be considered for evacuation to an appropriately equipped and staffed shore side medical facility as soon as practical. RCCL addressed shore-based hospital care:

> *"In responding to medical emergencies, our goal is to first stabilize emergency patients and, where indicated, evacuate the patient to an appropriately equipped and staffed shore side medical facility as soon as practical."*[9]




*Figure 1: HARMONY OF THE SEAS [10]*

---

[7] USCG PSIX; DNV Harmony of the Seas, RCCL's Harmony of the Seas ship fact sheets

[8] DNV classification society records for the Harmony of the Seas

[9] File:RCCL website-Licensed medical staff and services available.pdf, frequently asked questions, page 1-2

[10] Photograph provided by Plaintiff's counsel

**Vessel particulars** [11]

| | |
|---|---|
| Name | : Harmony of the Seas |
| Type | : Passenger vessel |
| IMO number | : 9682875 |
| Official number | : 7000798 |
| Call sign | : C6BX8 |
| Registration | : The Bahamas |
| Keel laid | : May 09, 2014 |
| Year of build | : May 13, 2016 |
| Length over all | : 1181’ |
| Breadth | : 154.2’ |
| Draft | : 36’ 9” |
| Gross Tonnage | : 226963 |
| Manager | : Royal Caribbean Cruises, Ltd. |
| Owner | : Harmony of the Seas Inc. |
| Classification society | : Det Norske Veritas (DNV) |
| Propulsion type | : 3 x Azipod |
| Bow thrusters | : 4 |

### 3.2 ***HARMONY OF THE SEAS’* itinerary**[12]

| Day | Date | Ports-of-call | Dock or Tender | Arrive | Depart |
|---|---|---|---|---|---|
| SUN | 17 Feb,2019 | Fort Lauderdale, Florida | D | | 4:30 pm. |
| MON | 18 Feb,2019 | At Sea, cruising | - | | |
| TUE | 19 Feb,2019 | At Sea, cruising | - | | |
| WED | 20 Feb,2019 | Philipsburg, St Maarten | D | 8:00 am | 5:00 pm |
| THU | 21 Feb,2019 | San Juan, Puerto Rico | D | 7:00 am | 2:00 pm |
| FRI | 22 Feb,2019 | Labadee, Haiti | D | 9:30 am | 6:00 pm |
| SAT | 23 Feb,2019 | At Sea, cruising | - | | |
| SUN | 24 Feb,2019 | Fort Lauderdale, Florida | D | | |

### 3.3 **Description of BURGESS’ incidents**

Note: Relevant times noted in this paragraph have been converted to San Juan, Puerto Rico local time.

The cruise ship *HARMONY OF THE SEAS,* carrying passengers BURGESS and his spouse, HENZE, departed Port Everglades, Florida on February 17, 2019.

[11] Sources: United States Coast Guard Port State Information Exchange; DNV classification society records

[12] Royal Caribbean’s Travel Summary : GS000007

The vessel spent two days at sea with subsequent port calls to St Maarten and San Juan, Puerto Rico. The vessel arrived in San Juan on February 21, 2019.[13]

On February 21, 2019, while the *HARMONY OF THE SEAS* was docked in the port of San Juan, BURGESS suspected he had a stroke. BURGESS called a family member (Hiatt) at 9:59 am and told her he believed he was suffering a stroke.[14] Hiatt informed a family member of BURGESS' condition around 10 am.[15] The on-board 911 emergency number was notified and a RCCL employee transported BURGESS to the ship's medical center in a wheelchair.[16] BURGESS was admitted to the vessel's medical center at 10:25 am.[17]

RCCL determined at 10:55 am that BURGESS required medical care beyond what could be provided onboard. [18] RCL requested an ambulance for BURGESS at 10:59 am.[19] The ambulance arrived at the pier at 12:54 pm and departed with BURGESS at 1:08 pm.[20] BURGESS received shore-based medical care at 1:59:02 pm.

BURGESS was discharged from the San Juan hospital 4 days later, on February 25. His spouse, Denze, made their own travel arrangements and flew BURGESS back home via air ambulance.[21] [22]

## 4.0 ANALYSIS

My analysis revealed that ROYAL CARIBBEAN CRUISES LTD. did not operate the *HARMONY OF THE SEAS* on San Juan, Puerto Rico's local time. The time used on board the incident vessel was one hour behind the local time in San Juan. To provide a sequenced timeline overview, relevant times were converted to San Juan local time

My analysis revealed that RCCL deprived BURGESS the opportunity to reasonably receive shore-based medical care as soon as possible.

---

[13] Deposition transcript of Darren Henze page 103; RCCL Documents – Initial Disclosures GS 1-80 – Cruise Summary– page 6,GS000006, Guest Landed Report, page 47, GS000047, Final Statement page 47, GS000049-52; RCCL Responsive Documents to Pl's Initial R4P, page 2, GR000082

[14] Deposition transcript of Ilene Landrum, page 83; Deposition transcript of Susan Hiatt, page 84, 97

[15] Deposition transcript of Jimmie Landrum, page 121

[16] Med Recs -5.Hospital HIMA San Pablo Caguas, Harmony of the Seas medical Center Case Summary, page 298; Deposition transcript of Darren Henze pages 187,190,197,199

[17] Med Recs -1.Harmony of the Seas Medical Center Case Summary, Triage, page 2

[18] Med Recs -1.Harmony of the Seas Medical Center Case Summary, Physician Orders, page 3

[19] File: ColonD B.pdf, page 2: email 02/21/2019 09:59 am, HM

[20] File: Med Recs -1. SUNNY AMBULANCE, INC.pdf

[21] Med Recs -5.Hospital HIMA San Pablo Caguas, Summary Sheet, page 8

[22] File: ColonD B.pdf, page 19, Port Agent's email Feb 26, 2019, 12:03 pm, GR000104

### 4.1 ***HARMONY OF THE SEAS'* TIME ZONES**

The world is divided in different time zones. Time zones are referenced to Coordinated Universal Time (UTC) per the International Organization for Standardization (ISO).[23] UTC is zero at 0° longitude. A meridian is an imaginary vertical line that connects the North and the South Pole of our planet. 0° longitude is the meridian that runs through Greenwich in the United Kingdom. Time zones are notated as positive or negative offsets from UTC. San, Juan, Puerto Rico, located in the western hemisphere applies a negative offset. The local time in Greenwich is ahead of the local time in San Juan. To derive local time in San Juan, Puerto Rico from UTC time, a certain number of hours needs to be subtracted from UTC. To compare the various times referenced in the BURGESS case, times were analyzed and standardized to San Juan, Puerto Rico local time.

Communications and events took place in locations with differing time zones during the incident cruise. One location was RCCL's cruise ship, the *HARMONY OF THE SEAS.* The other locations were her ports of call. To create a timeline of events to Burgess' incidents between February 17 and 26, 2019, I analyzed relevant times and standardized these to the local time in San Juan, Puerto Rico as shown in Exhibit C.




*Figure 2: Time Zones referenced to the 0° meridian*

[23] ISO 8601

### 4.1.1 FORT LAUDERDALE & MIAMI, FLORIDA TIME (February 17, 2019)

Fort Lauderdale, Florida operated on a local time that had a 5-hour time difference with UTC. Also, the local time in Miami and Fort Lauderdale was one hour behind the local time in San Juan, Puerto Rico.

### 4.1.2 *HARMONY OF THE SEAS* TIME (FEBRUARY 18 AND 19, 2019)

The medical log of the *HARMONY OF THE SEAS* recorded that the vessel operated on a 5-hour time difference with UTC on February 18 and 19, 2019. The vessel operated one hour behind the local time in San Juan, Puerto Rico.

### 4.1.3 SAN JUAN, PUERTO RICO TIME (February 21, 2019)

San Juan, Puerto Rico operated on a local time on February 21 with a UTC time difference 4 hours. The medical log of the *HARMONY OF THE SEAS* recorded that the vessel operated on a UTC -5 hour offset during her port call to San Juan, Puerto Rico on February 21, 2019. The time onboard the *HARMONY OF THE SEAS* was one hour behind San Juan's local time.

**San Juan, Puerto Rico's local time was one hour ahead of the time on the *HARMONY OF THE SEAS*.**

## 4.2 ROYAL CARIBBEAN CRUISES LTD.'s RESPONSIBILITY [24]

RCCL documented their responsibility to BURGESS' safety and wellbeing until his care was transferred to the receiving physician at a shore-based hospital as follows:

> *"It should be noted that anytime a guest or crew member is disembarked from the vessel, the treating physician is responsible for the care of the patient until s/he arrives at a medical facility or is handed over to the care of another physician."*[25]

[24] Exhibit C

[25] RCCL Responsive Documents to Pl's Initial R4P, Chapter 14 – Emergency Medical Disembarkation of Guests or Crew, 14.01 Policy, page 332, GR000412

## 4.3 ROYAL CARIBBEAN CRUISES' FAILURE TO EXPEDITOUSLY PROVIDE BURGESS WITH SHORE-BASED MEDICAL CARE

RCCL self-portrayed an online image of a responsive company to medical emergencies:

A. *In responding to medical emergencies, our goal is to first stabilize emergency patients and, where indicated, evacuate the patient to an appropriately equipped and staffed shore side medical facility as soon as practical."* [26]

The International Maritime Organization (IMO) is the United Nations specialized agency dedicated to maritime safety and security.[27] IMO standards apply to RCCL's *HARMONY OF THE SEAS.* The International Maritime Organization (IMO) [28] coordinates global efforts to provide search and rescue (SAR) services, including medical evacuations.

The IMO published three International Aeronautical and Maritime Search and Rescue Manuals (IAMSAR) which provide guidelines for a maritime approach to organizing and providing SAR services including, but not limited to MEDEVACS. The United States has provided a National Search and Rescue Supplement to the IAMSAR manuals.[29]

IAMSAR addressed medical evacuations at sea. A long-standing maritime tradition and practice is for vessel operators to guarantee the safety of all aboard.

The IAMSAR manual addressed the responsibility of the Captain of the *HARMONY OF THE SEAS*:

*"The masters of ships are ultimately responsible for the health and safety of crew and passengers on board their ships."* [30]

The need for speed during MEDEVACs is well established in the maritime industry. IAMSAR addressed success of an expeditious MEDEVAC:

*"The success of a SAR mission often depends on the speed with which the operation is planned and carried out."* [31]

[26] Royal Caribbean International's website: Frequently Asked Questions
[27] US National SAR Plan 2018, page 1-4, International Maritime Organization (IMO)
[28] The International Maritime Organization is the United Nations global standard-setting specialized agency responsible for the safety and security of shipping and the prevention of marine and atmospheric pollution by ships.
[29] United States National Search and Rescue Supplement to the International Aeronautical and Maritime Se arch and Rescue Manual Version 2.0 April 23, 2018
[30] IAMSAR Manual Vol.1, 2013 edition, Appendix N 1.2.1.1
[31] IAMSAR Manual Vol.II 2016 edition, Chapter 1- The search and rescue system, Paragraph 1.6.1

**ROYAL CARIBBEAN CRUISES LTD. had a responsibility to coordinate an evacuation of BURGESS and provide him with medical care at a shore-based hospital as soon as possible.**

While the *HARMONY OF THE SEAS* was docked in San Juan, BURGESS believed he was suffering a stroke at approximately 10 am while in the suite lounge on deck seventeen. BURGESS was admitted to the ship's medical center at 10:25 am following a 911 call.[32] RCCL's Case Summery classified his condition as urgent and recorded at 10:55 am that BURGESS needed to receive medical care at a shore-based hospital in Puerto Rico. [33] RCCL arranged an ambulance at 10:59 am.[34] The ambulance arrived at the pier at 12:54 pm, approximately 2 hours after being requested, and departed with BURGESS at 1:08 pm.[35] The ambulance covered 21.9 miles at an average speed of approximately thirty-three miles per hour in 40 minutes. The ambulance arrived at a local hospital at 1:50 pm, approximately 3 hours after RCCL determined that BURGESS needed to be hospitalized ashore.

**ROYAL CARIBBEAN CRUISES LTD.'s inaction to the unreasonable ambulance arrival time at the *HARMONY OF THE SEAS*, deprived BURGESS the opportunity to receive shore-based medical care as soon as possible.**

## 4.4 ROYAL CARIBBEAN CRUISES LTD.'s FAILURE TO ACT ON BURGESS' UNREASONABLE MEDICAL EVACUATION PROCEEDINGS

RCCL had several safeguards in place on paper, to arrange, and monitor, the coordination of BURGESS' medical emergency.

RCCL's so called CareTeam, a team of trained specialists, had the duty to provide professional logistical support for BURGESS.[36] The CareTeam was required to consult with the port agent to arrange ground transportation and relevant additional coordination for BURGESS. RCCL's CareTeam knew when BURGESS' ambulance was requested but failed to act on the delayed arrival.[37]

---

[32] Jimmie Landrum Exhibit 3, page 1 – Case Summary

[33] Med Recs -1.Harmony of the Seas Medical Center Case Summary, Physician Orders, page 3

[34] File: ColonD B.pdf, page 2: email 02/21/2019 09:59 am, HM

[35] File: Med Recs -1. SUNNY AMBULANCE, INC.pdf

[36] RCCL Responsive Documents to Pl's Initial R4P, CareTeam Manual, Chapter 0-Introduction,page 106, GR000186

[37] RCCL Responsive Documents to Pl's Initial R4P, page 7, GR000087 and page 8, GR000088 ; Colon D B.pdf, page 3, GR000089, Harmony of the Seas medical Center Guest Landed Report.

RCCL's policy, referenced the function of a CareTeam Associate (CTA) and stated that the CTA is there to provide logistical support in a coordinated manner. RCCL described the CTA's benefit and the importance of RCL's response time:

> *"The greatest benefit the CareTeam Associate (CTA) role provides is the ability to be engaged immediately following an emergency. Through continued feedback, we have learned that the Company's response time is equally as important as the type of assistance received."*[38]

Despite RCCL's awareness of the benefits BURGESS would receive, RCCL did not assign a CTA. A CTA did not disembark with BURGESS.[39]

**ROYAL CARIBBEAN CRUISES LTD. violated their own policy by not assigning a CareTeam Associate to BURGESS.**

**ROYAL CARIBBEAN CRUISES LTD. did not receive feedback from a CareTeam Associate on BURGESS' logistics to the shore-based hospital.**

ROYAL CARIBBEAN CRUISES LTD.'s policy stated that a CareTeam Associate would have been able to provide support and communicate with both the *HARMONY OF THE SEAS,* and RCCL's head office, in the event BURGESS required greater support or assistance. Based on my specialized experience, training, and knowledge, BURGESS' approximate 40 minute, and slow, 31 mph, ambulance journey to the hospital warranted a request for greater support or assistance.

Continental Shipping was the company which managed port agent operations in accordance with the Port Agent Agreement between Continental Shipping and RCCL. The Port Agent Agreement described the port agent as RCCL's representative, tasked with protecting the interests of RCCL in all matters involving the safety of guests.[40] The port agent was tasked with arranging BURGESS' ambulance. The ambulance was arranged through a private company which provided means to receive status updates:

> *"Well with the private we have direct lines to their supervisors and dispatch, so we can constantly call and find out, you know, what's the status? What's going on? Where is the ambulance? We are not seeing anything."*[41]

**ROYAL CARIBBEAN CRUISES LTD. knew, or should have known, that BURGESS' ambulance travelled at approximately 31 mph for 40 minutes on the 22-mile drive to the shore-based hospital.**

---

[38] RCCL Responsive Documents to Pl's Initial R4P, page 115, GR000195

[39] RCCL Responsive Documents to Pl's Initial R4P, page 10, GR000090

[40] Port Agent Agreement, page 3, Exhibit A, Port Agent Services Description, GR000117

[41] Deposition transcript of Daniel Threadgill-Colon, page 32

**ROYAL CARIBBEAN CRUISES LTD. failed to act on BURGESS' 40-minute long, and 31 mph, ambulance drive to the shore-based hospital.**

## 5.0 CAPTAIN HENDRIK J. KEIJER'S FINDINGS

Within the bounds of reasonable operational maritime certainty, and subject to change if additional information becomes available, it is my opinion that:

**5.1 San Juan, Puerto Rico's local time was one hour ahead of the time on the *HARMONY OF THE SEAS*.**

**5.2 ROYAL CARIBBEAN CRUISES LTD. had a responsibility to coordinate an evacuation of BURGESS and provide him with medical care at a shore-based hospital as soon as possible.**

**5.3 ROYAL CARIBBEAN CRUISES LTD.'s inaction to the unreasonable ambulance arrival time at the *HARMONY OF THE SEAS*, deprived BURGESS the opportunity to receive shore-based medical care as soon as possible.**

**5.4 ROYAL CARIBBEAN CRUISES LTD. violated their own policy by not assigning a CareTeam Associate to BURGESS.**

**5.5. ROYAL CARIBBEAN CRUISES LTD. did not receive feedback from a CareTeam Associate on BURGESS' logistics to the shore-based hospital.**

**5.6 ROYAL CARIBBEAN CRUISES LTD. knew, or should have known, that BURGESS' ambulance travelled at approximately 31 mph for 40 minutes on the 22-mile drive to the shore-based hospital.**

**5.7 ROYAL CARIBBEAN CRUISES LTD. failed to act on BURGESS' 40-minute long, and 31 mph, slow ambulance drive to the shore-based hospital.**

I hereby certify that this report is a complete and accurate statement of my opinions to date and the bases and reasons for them, to which I will testify under oath.

Captain Hendrik J. Keijer
Marine Expert