UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RICHARD BURGESS, Individually, and by and through DARREN HENZE as Guardian of the Person and Estate of Richard Burgess, incapacitated and as agent under that certain durable power of attorney dated November 20, 2006.

CASE NO: 1:20-cv-20687-OTAZO-REYES

Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian Corporation d/b/a
ROYAL CARIBBEAN CRUISE LINE and/or
ROYAL CARIBBEAN INTERNATIONAL,
JOAO PEREIRA,
MICHIEL ADRIAAN ETSEBETH.

Defendants.
_______________________________/

**DEFENDANT ROYAL CARIBBEAN CRUISE LTD.'S**
**REBUTTAL EXPERT WITNESS DISCLOSURE**

Defendant, ROYAL CARIBBEAN CRUISE LTD., by and through its undersigned counsel, hereby serves its Rebuttal Expert Witness Disclosure and states as follows:

1. **Captain Rick Kenin [Logistics]**
   **97 Strawberry Hill Road**
   **Acton, MA 01720**

Captain Rick Kenin served over thirty (30) years in the United States Coast Guard as a maritime response practitioner, coordinator, and leader. In addition to piloting over 5000 hours of rescue helicopter and fixed wing aircraft rescue missions, he has commanded two Coast Guard air stations and also served as Chief of Staff of the Seventh Coast Guard District overseeing Search and Rescue Operations. Captain Kenin is expected to testify consistently with his summary report and any deposition testimony. He reserves the right to alter or supplement his report upon ongoing discovery and investigation. Royal Caribbean also reserves the right to ask Captain Kenin to respond to any issues raised by Plaintiff's experts. His opinions are based upon his knowledge, training and experience, along with his review of Plaintiff's Complaint, the RCCL medical chart,

the RCCL ship logs, Plaintiff's expert reports, as well as deposition testimony completed in the case. Further information concerning his opinions are provided in his summary report, along with a copy of his Curriculum Vitae, fee schedule, billing invoice and testimonial history attached as Composite Exhibit A. **Captain Richard Kenin is available for the taking of his deposition on May 19th, 22nd [after Noon] and May 26th.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 12th day of May, 2023 by electronic mail to John H. Hickey, Esq., Sarah A. Lobel, Esq., Hickey Law Firm, P.A.. hickey@hickeylawfirm.com, slobel@hickeylawfirm.com.

Respectfully Submitted,

GRAYROBINSON, P.A.
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745

By: */s/ Michael J. Drahos*
Michael J. Drahos
Florida Bar No. 0617059
W. Cooper Jarnagin
Florida Bar No. 0117767
Ashley Genoese
Florida Bar No. 1019357
*michael.drahos@gray-robinson.com*
*cooper.jarnagin@gray-robinson.com*
*ashley.genoese@gray-robinson.com*

# EXHIBIT "A"

# Rebuttal Report by
# Captain Richard M. Kenin, USCG (retired)
# *Burgess v. Royal Caribbean Cruise Line*

References

(a) Expert witness testimony by Captain Hendrick J. Keijer on 11/18/2022

Experience: As a retired Captain in the U.S. Coast Guard, I have over 30 years of active-duty experience as a maritime response practitioner, coordinator, and leader. Having piloted over 5000 hours in rescue helicopters and fixed-wing aircraft, I have participated in hundreds of search and rescue missions, including medical evacuations from vessels and land. I completed formal training in search and rescue (SAR) planning including the Search and Rescue Supervisors' course taught at the National SAR School in Yorktown, VA. In addition to flying Coast Guard rescue aircraft in the Caribbean, Gulf of Mexico, and Northwest Pacific, I have commanded two Coast Guard air stations where I managed SAR activities over large areas of responsibility. While commanding Coast Guard Air Station Miami, FL, I initiated a highly successful medical evacuation (medevac) training program with Royal Caribbean Cruise Lines, whereby shipboard medical personnel were taught helicopter medevac policies, procedures, requirements, and limitations. This training program has now been accepted industry-wide and continues as a model for government-industry cooperation to benefit the cruising public. In my final Coast Guard assignment, I served as Chief of Staff of the Seventh Coast Guard District where I oversaw the most active SAR region in the world, completing over 4000 cases, including an average 80 cruise ship medevacs per year.

Qualification:
I am qualified to provide an informed opinion on the facts of the case based on my extensive experience in the field of helicopter emergency response and maritime search and rescue management.

Review of Testimony:
In reviewing Captain Keijer's expert witness testimony in this matter, I find a significant area in which his statements and opinions do not conform to federal law, as well as current U.S. Coast Guard operational procedures and/or policy.

On pages 58 through 61 of the testimony transcripts, Captain Keijer repeatedly responds to questions from the defendant's attorney regarding alternative methods of transport for Mr. Burgess from the moored *Harmony of the Seas* to a shore-based medical facility. He specifically refers to the option of using a United States Coast Guard helicopter to transfer this patient from the ship to a hospital. This option is not allowable nor plausible on several levels and identifies Captain Keijer's complete lack of expertise in maritime search and rescue.

Under Title 14 of the U.S. Code, the primary duties of the United States Coast Guard are defined to include establishing "....rescue facilities for the promotion of safety on, under, and over the high seas and waters subject to the jurisdiction of the United States..." This is later defined as "maritime search and rescue." The event described in this case would be defined as "non-maritime search and rescue" because the vessel was moored within state waters and the patient was no longer in the maritime environment. The U.S. Coast Guard does not participate in non-maritime search and rescue activities unless there is a declared Stafford Act natural disaster or, in certain situations where isolated, rural locations dictate federal intervention. The Port of San Juan is clearly not one of those situations.

Further, the United States Coast Guard is specifically prohibited from competing with commercial salvage or search and rescue companies, to include medical transport providers, unless all commercial entities decline to provide the service in a timely manner. Clearly, in this case, there were commercial operators available to transport this patient to an appropriate medical facility in a timely manner.

In his testimony that the United States Coast Guard could have provided a helicopter to transport this patient, Captain Keijer ignores stated Coast Guard response time standards and appears ignorant to the location of helicopter resources available in Puerto Rico. With the nearest Coast Guard helicopters based over 60 miles away from the Port of San Juan and using the Coast Guard's planning and response time standards, a helicopter evacuation would have been at least 90 minutes away from the *Harmony of the Seas*.

And finally, Captain Keijer's assertion that a Coast Guard helicopter transport of Mr. Burgess would have been a plausible option because "There is a Coast·Guard base right at the Port of San Juan. Five-minute walk away, 10-minutes walk from pier number 3." This statement is uninformed as the Coast Guard Base adjacent to the Port of San Juan is home to small response boats and Coast Guard cutters. As stated above, the nearest Coast Guard Air Station is 60 miles away on the western end of the island of Puerto Rico.

Opinion:

During my six years commanding search and rescue helicopters and directing search and rescue operations in the Seventh Coast Guard District, which includes Puerto Rico, the Coast Guard never conducted a patient transport, by helicopter from the Port of San Juan to a hospital. Captain Keijer's assertion that this option could even be considered in this case demonstrates a complete lack of understanding for search and rescue and medical patient transport operations.

Summary

While I appreciate Captain Keijer experience in cruise ship operations, unfortunately his statements regarding alternate patient transport options in this case are mistaken. Had a request come forward from the *Harmony of the Seas* to medically evacuate this patient using a Coast Guard helicopter, the Coast Guard would have declined the request in favor of the patient being transported by ground ambulance.

CAPT Richard M. Kenin, USCG (retired)

# Prosecution Expert Witness / Consultant Fee Schedule
# For
# Captain Richard M. Kenin, USCG (Retired)
# January 2023

| | |
|---|---|
| Retainer upon commencement of case analysis (non-refundable minimum fee) | $2100 |
| Off-site research, report writing, conference calls, etc. (billable in 30-minute increments) | $700/hour |
| Deposition or testimony in vicinity local area (Boston, MA) (flat rate up to 3 hours; hourly rate applies thereafter) | $2800 |
| Local travel time office to location of testimony (min 1 hour) | $150/hour |
| Deposition or testimony outside vicinity local area (Boston, MA) (flat rate 8 hour day, hourly rate applies thereafter; days of departure and return are prorated) | $5600/day |
| Travel Expenses | |
| Meals & incidentals | $150/day |
| Transportation expenses | actual incurred |

- Billable hours will be invoiced on the 1st of each month, or as necessary, and payable upon receipt.
- Billings for services performed or expenses incurred will be charged against the retainer until such time as it is exhausted.
- Travel expenses will be invoiced upon completion of travel and payable upon receipt.
- Deposition fee is due at least 72-hours prior to scheduled time of deposition and non-refundable if deposition is cancelled thereafter.
- Fees and rates, once a retainer is received, will remain constant for a period of one year, even though fees or rates may change for new casework. Twelve months after being retained, fees may change to the current-year fee schedule rates.

# Richard M. Kenin

Marine Safety Consultant

Invoice No.: 23-01

Invoice Date: 05-10-2023

Case: Burgess v. Royal Caribbean Cruise Line

Bill To:

GrayRobinson, P.A.
Northbridge Centre
515 N. Flagler Drive, Suite 1425,
West Palm Beach, Florida 33401
Tel: 305.913.0539

| Item | Quantity (hrs) | Description | Unit Price | Total |
|---|---|---|---|---|
| 1 | N/A | Retainer | 2100 | 2100 |

R. M. Kenin 5/10/23

| | |
|---|---|
| Retainer Balance: | $0.00 |
| Total this period: | $2100.00 |
| Balance Due: | $2100.00 |

# Testimony Provided by Richard Kenin

2017 Herbert Maze and Karen Maze v. Carnival Corporation
Defending Counsel: Michael Drahos
(Southern District of Florida; Case No. 1:16-cv-21012)

2017 Evan Morris Johnson v. Carnival Corporation
Defending Counsel: Anthony Tinelli
(Southern District of Florida; Case No. 1:16-cv-23157

2019 David Disler v. Royal Caribbean Cruise LTD.
Defending Counsel: Michael Drahos
(Southern District of Florida; Case No. 1:17-cv-23874)

Carolyn Baker v. Carnival Cruise Line
Defending Counsel: Michael Drahos
(Southern District of Florida; Case No. not available)

2020 Joy Hamilton v. Royal Caribbean Cruise Lines
Defending Counsel: Jerry D. Hamilton
American Arbitration Association

2021 Mary Godwin v. Royal Caribbean Cruise Lines
Defending Counsel: Michael Drahos
(Southern District of Florida; Case No. 19-cv-24672-MGC)

## Dolores Martinez

| | |
|---|---|
| **From:** | Lilia R. Parker <Lilia.Parker@gray-robinson.com> |
| **Sent:** | Friday, May 12, 2023 4:36 PM |
| **To:** | Sarah Lobel; John Hickey |
| **Cc:** | Dolores Martinez; Michael Drahos; Cooper Jarnagin; Ashley Genoese |
| **Subject:** | SERVICE OF COURT DOCUMENT; 1:20-cv-20687-Otazo-Reyes |
| **Attachments:** | RCCL Rebuttal Expert Witness Disclosure.pdf |

| | |
|---|---|
| Court: | United States District Court for the Southern District of Florida |
| Case No: | 1:20-cv-20687-Otazo-Reyes |
| Parties: | Burgess v. Royal Caribbean Cruise Ltd. |
| Title of Document: | ***Royal Caribbean's Rebuttal Expert Witness Disclosure*** |
| Sending Attorney: | Michael J. Drahos<br>561-268-5727 |

**Lilia R. Parker**
Legal Assistant

**T** 561.268.5726
**F** 561.268.5745

GrayRobinson, P.A. ▪ Northbridge Centre, 515 N. Flagler Drive, Suite 650, West Palm Beach, Florida 33401

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.