IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:20-cv-20687- OTAZO-REYES

**CONSENT CASE**

RICHARD BURGESS, individually and by and through DARREN HENZE as guardian of the Person and Estate of Richard Burgess, incapacitated and as agent under that certain durable power of attorney dated November 20, 2006,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation d/b/a ROYAL CARIBBEAN CRUISE LINE and/or ROYAL CARIBBEAN INTERNATIONAL, et al.,

Defendant.

_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE (DE 147)**[1]

Plaintiff Richard Burgess, individually and by and through Darren Henze as guardian of the Person and Estate of Richard Burgess ("Plaintiff"), hereby files this Response in Opposition to the Defendant's Motion to Bifurcate the Trial into Two Phases (DE 147), filed by Defendant Royal Caribbean Cruise, Ltd. ("Defendant"). For the reasons set out below, the motion should be denied.

**A. Overview of Defendant's misplaced bifurcation arguments**

Defendant has just filed an eleventh-hour motion to bifurcate - with the trial set to begin in just over two weeks, on June 5, 2023. Defendant's bifurcation motion makes a conclusory – and

[1] The record citations in this Response are to docket entry, with page references where appropriate. Unless otherwise indicated, all emphasis herein has been supplied by undersigned counsel.

completely incorrect – statement that "bifurcation will not lead to repeat presentations of the same witnesses and evidence" because "the liability and damages issues are separate and distinct and there will be little overlap." (DE 147, p 3). In fact, as detailed below, there are ***eight witnesses*** who have been scheduled to travel to Miami from around the country (thanks to the forum selection clause Defendant places into its passengers' ticket contracts requiring all passenger suits to be brought only in the Southern District of Florida) whose testimony goes to ***both liability and damages*****.** All of these witnesses would have to appear for both of Defendant's proposed "two phases" of the trial if this Court were to grant Defendant's motion.

Defendant also argues that bifurcation is appropriate because the severity of Plaintiff's injuries may generate sympathy that could affect the jury's liability determination – an argument that has been specifically rejected by other courts in this District, including in a case cited in ***Defendant's*** motion. *See Lima v. Wal-Mart Stores, Inc*., 2008 WL 11334149, *1 (S.D. Fla. Mar. 25, 2008) (denying a motion to bifurcate and stating "Defendant's reference to jury sympathy is unpersuasive because there is an element of jury sympathy in every case"). Finally, Defendant suggests that bifurcation will somehow "further judicial economy," without explaining how that could possibly be the case when eight witnesses would have to appear in two different phases of the trial and the jury could have to conduct two sets of deliberations. *See Krug v. Celebrity Cruises, Inc*., 2017 WL 5640729, *2 (S.D. Fla. Apr. 13, 2017) (denying a motion to bifurcate and stating "Although bifurcation would promote judicial economy if a jury finds that Celebrity is not liable for negligence, it would result in unnecessary delay if Celebrity is found to be liable").

After an initial discussion of applicable bifurcation principles, Plaintiff responds to Defendant's arguments below, setting out the authorities demonstrating why the Court should deny bifurcation based on the facts of this case.

**B. Principles of law applicable to bifurcation motions**

In denying a motion to bifurcate in *Krug*, this Court provided a good overview of the general legal principles to be employed in considering such a motion:

> As set forth in Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(b) "confers broad discretion on the district court," permitting bifurcation when it furthers convenience…. The predominant consideration is a fair and impartial trial through a balance of benefits and prejudice. ***The party seeking bifurcation bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties.***

2017 WL 5640729, at *1 (internal quotation marks and citations omitted). *See also, e.g.*, *Southeastern Metals Mfg. Co. v. Stampco, Inc.*, 2014 WL 12615697, *1 (M.D. Fla. Oct. 23, 2014) (denying motion to bifurcate and stating "The moving party has the burden of establishing that bifurcation is appropriate"); *Baratta v. Homeland Housewares, LLC*, 2008 WL 10989539, *4 (S.D. Fla. Oct. 28, 2008) (denying motion to bifurcate and stating "The party requesting bifurcation has the burden to show that it is warranted in that particular case").

While bifurcation is left to the discretion of district courts, it has been cautioned that bifurcation should not be routinely ordered:

> The decision of whether to bifurcate a trial is left to the sound discretion of the district court. [cites omitted]. However, bifurcation is not routinely granted. See State of Ala. v. Blue Bird Body Co., Inc., 573 F.2d 309, 318 (5th Cir. 1978) (cautioning that "separation of issues is not the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice"); Fed. R. Civ. P. 42(b), Advisory Committee Notes (recognizing that bifurcation should not be ordered routinely).

*Bandsuch v. Werner Enterprises, Inc.*, 2007 WL 9706002, *1 (M.D. Fla. Dec. 20, 2007). *See*

*also, e.g.*, *Lima*, 2008 WL 11334149, at *1 (denying motion to bifurcate and stating that "separation of issues for trial is not to be routinely ordered").

**C. Legal discussion as to why Defendant's bifurcation motion should be denied**

**1. Courts routinely reject arguments for bifurcation based on concerns about juror sympathy**

Defendant's perfunctorily presented main argument is that Defendant "is concerned that the jury's sympathy for the Plaintiff based on his injuries will taint or unfairly influence their view of the liability issues." (Motion, p 2). Defendant identifies no exceptional features about this case that makes it different from other personal injury cases, and Florida federal District Courts reject such arguments as a matter of course. Typical discussions on this issue are set out below.

> The Defendant has not shown that the injuries in this case present a special or unique risk of prejudice such that any risk outweighs the additional inconvenience, expense, and delay that would result from bifurcation.
>
> Under the Defendant's theory, every personal injury case that involves severe injuries should be bifurcated into two trials. District courts in the Eleventh Circuit have noted that a civil case "almost always involves the dual issues of liability and damages. Following [Defendants'] argument to its logical conclusion, every civil trial should therefore be conducted in two phases.... Clearly, this is an untenable proposition." Campbell v. Pirelli Tire, LLC, No. 12-21153, 2013 WL 12092519, at *2 (S.D. Fla. Feb. 12, 2013) (Rosenbaum, J.) (quoting Dzafic v. Geovera Specialty Ins. Co., No. 08-cv-0026, 2008 WL 3874602, at *1 (M.D. Fla. Aug. 15, 2008)).

*Krug*, 2017 WL 5640729, at *2.

> Upon due consideration, the Court declines to hold separate trials on the issues of liability and damages. While Defendants contend that they will be prejudiced if the jury hears evidence regarding both the liability and damages issues, the Court notes that ***this same prejudice exists in any wrongful death action, and Defendants have not presented the Court with any information demonstrating that the instant action is of an exceptional nature***. *See Brown v. Advantage Engineering, Inc*., 732 F. Supp. 1163, 1171 (N.D. Ga. 1990) (noting, in denying a defendant's motion to bifurcate a trial on the issues of liability and damages, that the defendant's argument that a jury would be unable to objectively consider the liability issue after hearing testimony regarding the plaintiff's extensive injuries "would support bifurcation in any negligence action brought by a sympathetic plaintiff.").

*Bandsuch*, 2007 WL 9706002, at *2. *See also Lima*, 2008 WL 11334149, at *1 (denying motion to bifurcate and noting "Defendant's reference to jury sympathy is unpersuasive because there is an element of jury sympathy in every case.").

The *Baratta* case, another decision from this District that Defendant inexplicably cites in its Motion, contains a particularly apt discussion of this point, given that Plaintiff in this case has been waiting for more than 2½ years for this trial:

> "Avoid[ing] prejudice" is one of the reasons provided for a decision to bifurcate under Fed. R. Civ .P. 42(b). Here, the issue of prejudice weighs heavily for denying Defendant's motion to bifurcate. Defendant asserts that it will be prejudiced without bifurcation, because presentation of damages during the trial will taint the jury to assume liability is present and because the jury will begin deliberations with damage issues fresh in their minds. However, the same could be said of every civil action that involves liability and damages. On the other hand, the additional significant delays in this action that would arise from bifurcation would severely prejudice Plaintiff, who has been waiting over three years for this litigation to move forward.

2008 WL 10989539, at *4.

Defendant here has asked for bifurcation into two "phases" of trial rather than two trials. But, given the logistics, discussed below, of managing eight witnesses who would have to testify in both

phases (and the need for two sets of jury deliberations if liability is found), bifurcation could well result in the having to delay the trial – to the complete prejudice of Plaintiff.

In sum, the Court should reject Defendant's jury sympathy argument. Defendant has identified nothing exceptional in this case that warrants bifurcation based on Plaintiff's injuries. Defendant has failed to present the Court with a proper basis for bifurcation, and the Motion should be denied for that reason alone.

**2. Defendant's judicial economy argument is conclusory and contradicted by the facts**

Judicial economy is also a factor in deciding whether bifurcation is appropriate. Defendant makes two bald, conclusory comments on this subject—one completely lacking in substance, and the other completely inaccurate. Defendant first argues that "Bifurcation would also further judicial economy," followed by a vague citation to a treatise that says that separation of liability and damages in a personal injury case may save time. (*See* Motion, p 3).[2] Next, Defendant argues: "[B]ifurcation will not lead to repeat presentations of the same witnesses and evidence." (Motion, p 3). This is not only conclusory, but entirely inaccurate and contradicted by the facts. There are, in fact, eight witnesses whose testimony are expected to address both liability and damages:

(1) **Darren Henze**. Mr. Henze is Plaintiff's husband, guardian, and caretaker. Mr. Henze went on the subject cruise with Plaintiff, and was a direct witness to the delays Defendant generated in arranging for emergency medical treatment for Plaintiff after he had been diagnosed on the ship as a stroke victim. Mr. Henze is also a first-hand before-and-after witness to the full life that Plaintiff lived before the catastrophic delay in stroke treatment and Plaintiff's pitiful circumstances now due to his catastrophically debilitating injuries. Mr. Henze lives in York, Pennsylvania, with Plaintiff, where he acts as Plaintiff's full-time caretaker. Every day that Mr. Henze is away from Plaintiff is an extreme hardship for them both, and engenders the costly expense of a substitute caretaker, which they can ill afford now that they are living exclusively on Mr. Henze's dwindling savings. (*See* DE 100-3 (Henze Dep.)).

[2] The treatise has only a less-than-helpful reference to a ***1963*** law review article, which indicated that statistical studies at that time - ***60 years ago*** - showed that trials in which liability was separated from damages took 20% less time. (Motion, p 3).

(2) **Dr. Camilo Gomez**. Dr. Gomez is a board-certified vascular neurologist and a professor of neurology at the University of Missouri in Columbia, Missouri. Dr. Gomez will offer testimony establishing how Defendant's conduct fell below the standard of care in conducting the medical disembark of Plaintiff on February 21, 2019. Dr. Gomez will also offer testimony relevant to damages by discussing Plaintiff's medical condition and prognosis as a result of Defendant's negligence. (*See* DE 87-3 (Gomez Dep.); DE 105-1 (Gomez Expert Report); DE 105-2 (Gomez Declaration); DE 105-3 (Gomez Rebuttal Expert Report)).

(3) **Dr. David Nidorf**. Dr. Nidorf is a board-certified emergency room physician who practices at Northern Dutchess Hospital in Rhinebeck, New York. Dr. Nidorf will offer testimony establishing how Defendant's conduct fell below the standard of care in conducting the medical disembark of Plaintiff on February 21, 2019. Dr. Nidorf will also offer testimony relevant to damages by discussing Plaintiff's medical condition and prognosis as a result of Defendant's negligence. (*See* DE 87-2 (Nidorf Dep.); DE 114-2 (Nidorf Expert Report).

(4) **Dr. Mehul Desai**. Dr. Desai is a board-certified, fellowship-trained neuroradiologist who practices in Miami, Florida. Dr. Desai will offer testimony explaining the medical images regarding the stroke, evolution of the stroke, as well as the ultimate permanent injury. This testimony is relevant to issues related to the Defendant's conduct which fell below the standard of care, the Plaintiff's evolving medical condition, and ultimate damages.

(5) **Susan Hiatt**. Susan Hiatt is Plaintiff's cousin and lives in Vincent, Alabama. Mrs. Hiatt was one of several family members who accompanied Plaintiff and his husband, Mr. Henze, on the subject cruise. Mrs. Hiatt was present throughout most of Plaintiff's hours-long stay in the shipboard medical facility on February 21, 2019, and witnessed how Defendant treated and medically disembarked Plaintiff. Mrs. Hiatt also will offer testimony relevant to damages as a before-and-after witness, based on her relationship and familiarity with Plaintiff's condition before and after he suffered the debilitating injuries aboard Defendant's ship. (*See* DE 100-6 (S. Hiatt Dep.)).

(6) **Joseph Hiatt**. Joseph Hiatt is married to Susan Hiatt (Plaintiff's cousin) and also lives in Vincent, Alabama. Mr. Hiatt was one of several family members who accompanied Plaintiff and his husband, Mr. Henze, on the subject cruise. Mr. Hiatt was present throughout most of Plaintiff's hours-long stay in the shipboard medical facility on February 21, 2019, and witnessed how Defendant treated and medically disembarked Plaintiff. Mr. Hiatt also will offer testimony relevant to damages as a before-and-after witness, based on his relationship and familiarity with Plaintiff's condition before and after he suffered the debilitating injuries aboard Defendant's ship. (*See* DE 100-8 (J. Hiatt Dep.)).

(7) **Jimmie Landrum**. Jimmie Landrum is married to Ilene Landrum (Plaintiff's cousin) and lives in Cropwell, Alabama. Mr. Landrum was one of several family members who accompanied Plaintiff and his husband, Mr. Henze, on the subject cruise. Mr. Landrum was present throughout most of Plaintiff's hours-long stay in the shipboard medical facility on February 21, 2019, and witnessed how Defendant treated and medically

disembarked Plaintiff. Mr. Landrum also will offer testimony relevant to damages as a before-and-after witness, based on his relationship and familiarity with Plaintiff's condition before and after he suffered the debilitating injuries aboard Defendant's ship (*See* DE 100-9 (J. Landrum Dep.))

(8) **Ilene Landrum**. Ilene Hiatt is Plaintiff's cousin and lives in Cropwell, Alabama. She is Susan Hiatt's sister and Jimmie Landrum's wife. Mrs. Landrum was one of several family members who accompanied Plaintiff and his husband, Mr. Henze, on the subject cruise. Mrs. Landrum was present throughout most of Plaintiff's hours-long stay in the shipboard medical facility on February 21, 2019, and witnessed how Defendant treated and medically disembarked Plaintiff. Mrs. Landrum also will offer testimony relevant to damages as a before-and-after witness, based on her relationship and familiarity with Plaintiff's condition before and after he suffered the debilitating injuries aboard Defendant's ship. (*See* DE 100-10 (I. Landrum Dep.)).

The fact that some witnesses may have to testify as to both liability and damages weighs heavily against bifurcation, as recognized in the case law.

> Plaintiff also notes that bifurcation would not be more convenient and would not preserve judicial resources, but rather it would create unnecessary delay and expense, because "many of the same witnesses would be testifying on facts relating to both [liability] and damages." Dkt. 37 at 5. This district has recently held that bifurcation is inappropriate in this instance. *See, e.g., Lankhorst [v. Indep. Sav. Plan Co.*, 2013 WL 5671303, at *1–2. (M.D. Fla. Oct. 17, 2013)].

*Southeastern Metals Mfg. Co., Inc. v. Stampco, Inc.*, 2014 WL 12615697, *2 (M.D. Fla. Oct. 23, 2014).

> [T]he Court concludes that the bifurcation of the instant action would not accomplish Defendants' goal given counsel for Plaintiff's representation at the status conference that he will be calling Plaintiff and her daughters to testify regarding both liability and damages. Finally, ***bifurcation would neither be expeditious nor would it further the interest of judicial economy as the parties acknowledged that some of the same witnesses would be called to testify on both the issues of liability and damages, thus, unnecessarily extending the ultimate resolution.***

*Bandsuch*, 2007 WL 9706002, at *2. *See also Baratta*, 2008 WL 10989539, at *4 (denying a motion for bifurcation, in part, because several of the same witnesses would be called to testify about issues of both liability and damages).

Here, as listed above, there are eight witnesses who have testimony to offer concerning both liability and damages. Darren Henze is the only one who is planning to attend the entire trial. But, as noted, any lengthening of the trial due to bifurcation would work extreme hardship on Mr. Henze and on Plaintiff. The other six witnesses would be forced to travel back and forth twice to the bifurcated trial, with the attendant burdens of multiple travel arrangements and doubling of expenses. In the cases of Dr. Gomez and Dr. Nidorf, and as Defendant well knows, it would be virtually impossible – if not flat out impossible – for them to appear at two different phases of the trial. Scheduling with doctors is already extremely difficult, given their medical responsibilities to patients, hospitals, and colleagues, but asking them to travel hundreds of miles from their homes and practices to appear twice at a single trial, is just not feasible. Bifurcation would thus cause extreme prejudice to Plaintiff, who could be forced to forego his medical experts' testimony on liability or damages, destroying his case.

A further factor that counters Defendant's judicial economy argument is that the jury could be required to conduct ***two sets of deliberations***, as noted above. *See, e.g.*, *Krug*, 2017 WL 5640729, at *2 (denying motion to bifurcate and stating "Although bifurcation would promote judicial economy if a jury finds that Celebrity is not liable for negligence, it would result in unnecessary delay if Celebrity is found to be liable"); *Baratta*, 2008 WL 10989539, at *5 (denying motion to bifurcate and stating "bifurcation will not save significant resources in this case unless there is no finding of liability").

In short, Defendant has not shown that its proposed bifurcation would promote judicial economy, or that it could be accomplished without insurmountable prejudice to Plaintiff. Bifurcation should be denied for this additional reason.

**3. Defendant's motion also comes too late**

Plaintiff further noes that Defendant has waited far too long to seek bifurcation. This case was filed on October 10, 2020. (DE 1). The trial is now set to begin in just over two weeks. The parties have spent more than 2½ years preparing this case for a single-track trial. The plans and schedules have been arranged for the witnesses' attendance at trial. Defendant has known for years about the extent of Plaintiff's injuries. If Defendant really believed that Plaintiff's injuries should require the trial to be bifurcated, then it should have moved for bifurcation long ago so that the Court could have ruled and the parties could have planned their discovery and trial preparation accordingly. In *Stampco*, the court denied bifurcation based, in part, on the defendant's delay, stating:

> Lastly, Defendant's delay in bringing the present motion supports the argument that bifurcation would create delay and additional expense, especially considering that all discovery—relating to both liability and damages—is to be completed by November 3, 2014. *See* [*Lankhorst*, 2013 WL 5671303,] at *2 ("The case has proceeded to date on a single track and the Court finds no reason to change course at this late date."). Until this motion, both parties have prepared this case for a single trial. Bifurcation would be prejudicial to Plaintiff, and Defendant has not met its burden of demonstrating that the benefits of bifurcation outweigh this prejudice.

2014 WL 12615697, at *2. *See also Baratta*, 2008 WL 10989539, at *5 (denying bifurcation motion and criticizing its late filing three years into the litigation).

For this additional reason, the Court should deny Defendant's motion to bifurcate.

**4. None of the authorities cited in Defendant's motion support bifurcation in this case**

Other than cases discussing boilerplate propositions about bifurcation principles, with which Plaintiff does not disagree, just three cases are of note. The *Lima* case from the Southern District of Florida and the *Baratta* case from the Middle District of Florida are discussed at length above. In both cases, bifurcation was denied, and both decisions fully support denial of bifurcation here. The third case cited by Defendant, *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, No. CIV.4-95-739, 2001

WL 228427, at *5 (D. Minn. 2001), granted bifurcation in a very fact-specific case involving a dispute over whether there had been a warranty of future performance of a wood preservative. The case is neither helpful nor instructive here, as the issues involved therein have nothing at all to do with the issues in this case.

## Conclusion

Based on the foregoing facts and authorities, Plaintiff respectfully submits that Defendant's Motion to Bifurcate should be denied.

Respectfully submitted,

HICKEY LAW FIRM, P.A.
hickey@hickeylawfirm.com
slobel@hickeylawfirm.com
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
Telephone (305) 371-8000
Facsimile (305) 371-3542
-and-
RUSSO APPELLATE FIRM, P.A.
e-service@russoappeals.com
7300 North Kendall Drive, Suite 600
Miami, Florida 33156
Telephone (305) 666-4660
Facsimile (305) 666-4470

*Counsel for Plaintiff*

By: /s/ Paulo R. Lima
ELIZABETH K. RUSSO
Florida Bar No. 260657
ekr@russoappeals.com
PAULO R. LIMA
Florida Bar No. 0064364
prl@russoappeals.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 18th day of May, 2023, I have filed a copy of the foregoing with the CM/ECF System, which will generate notices of Electronic Filing to counsel for Defendant listed below and all parties who have appeared in this matter.

/s/ Paulo R. Lima

| | |
|---|---|
| **John H. Hickey, Esq.** (FBN 305081)<br>hickey@hickeylawfirm.com<br>federalcourtfilings@hickeylawfirm.com<br>**Sarah A. Lobel, Esq.** (FBN 88716)<br>slobel@hickeylawfirm.com<br>dmartinez@hickeylawfirm.com<br>**HICKEY LAW FIRM, P.A.**<br>1401 Brickell Avenue, Suite 510<br>Miami, FL 33131-3504<br>Telephone: (305) 371-8000<br>Facsimile: (305) 371-3542<br><br>**Elizabeth K. Russo, Esq.** (FBN 260657)<br>ekr@russoappeals.com<br>yvonne@russoappeals.com<br>**Paulo R. Lima, Esq.** (FBN 0064364)<br>prl@russoappeals.com<br>**RUSSO APPELLATE FIRM, P.A.**<br>e-service@russoappeals.com<br>7300 North Kendall Drive, Suite 600<br>Miami, Florida 33156<br>Telephone (305) 666-4660<br>Facsimile (305) 666-4470<br><br>*Attorneys for Plaintiff* | **Michael J. Drahos, Esq.** (FBN 0617059)<br>Michael.drahos@gray-robinson.com<br>Lilia.parker@gray-robinson.com<br>**W. Cooper Jarnagin, Esq.** (FBN 117767)<br>Cooper.jarnagin@gray-robinson.com<br>**GRAY ROBINSON, P.A.**<br>515 North Flagler Drive, Suite 650<br>West Palm Beach, FL 33401<br>Telephone: (561) 268-5727<br>Fax: (561) 268-5745<br><br>**Randy S. Ginsberg, Esq.** (FBN 185485)<br>rginsberg@rccl.com<br>**ROYAL CARIBBEAN CRUISES LTD.**<br>1080 Caribbean Way<br>Miami, Florida 3312<br>Telephone: (305) 539-6327<br>Alt. Tel. (305) 539-4457<br>Fax (305) 539-6561<br><br>*Attorneys for Defendant* |